28. Upon information and belief, Defendant Family Dollar Services, Inc. is a corporation organized and existing under the laws of the State of North Carolina, with a place of business at 10401 Monroe Road, Matthews, North Carolina 28105.

29. Upon information and belief, Defendant The Cato Corporation is a corporation organized and existing under the laws of the State of North Carolina, with a place of business at 8100 Denmark Road, Charlotte, North Carolina 28273.

30. Upon information and belief, Defendant Belk, Inc. is a corporation organized and existing under the laws of the State of North Carolina, with a place of business at 450 Seventh Avenue, New York, New York 10123.

31. Upon information and belief, Defendant Dillard's, Inc. is a corporation organized and existing under the laws of the State of Nevada, with a place of business at 1600 Cantrell Road, Little Rock, Arkansas 72201.

32. Upon information and belief, Defendant Nordstrom, Inc. is a corporation organized and existing under the laws of the State of Washington, with a place of business at 1700 Seventh Avenue, Seattle, Washington 98101.

33. Upon information and belief, Defendant Beall's Department Stores, Inc. is a corporation organized and existing under the laws of the State of Florida, with a place of business at 1806 38th Avenue East, Bradenton, Florida 34208.

34. Upon information and belief, Defendant Sears Brands, LLC is a limited liability company organized and existing under the laws of the State of Illinois, with a place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

35. Upon information and belief, Defendant Marshalls of MA, Inc. is a corporation organized and existing under the laws of the State of Massachusetts, with a place of business at 770 Cochituate Road, Framingham, Massachusetts 01701.

36. Upon information and belief, Defendant Bob's Stores, LLC is a limited liability company organized and existing under the laws of the State of New Hampshire, with a place of business at 160 Corporate Court, Meriden, Connecticut 06450.

37. Upon information and belief, Defendant Dollar General Corporation is a corporation organized and existing under the laws of the State of Tennessee, with a place of business at 100 Mission Ridge, Goodlettsville, Tennessee 37072.

38. Upon information and belief, Defendant Target Corporation is a corporation organized and existing under the laws of the State of Minnesota, with a place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

39. Upon information and belief, Defendant Urban Outfitters, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with a place of business at 5000 South Broad Street, Philadelphia, Pennsylvania 19112.

## JURISDICTION AND VENUE

40. This Court has subject matter jurisdiction over the federal claims in this action pursuant to 15 U.S.C. §1121 of the Lanham Act and 28 U.S.C. §§1331, 1338(a) and 1338(b). The Court has supplemental subject matter jurisdiction over the New York state law claims in this action pursuant to 28 U.S.C. §1367(a).

41. This Court has personal jurisdiction over Defendants pursuant to New York Civil Practice Law and Rules, §§301 and 302(a), because, upon information and belief: (i)

Defendants transact business in New York and contract to supply goods or services in New York; (ii) Defendants have committed acts outside of New York which have caused injury to Plaintiff in New York; and/or (iii) Defendants regularly conduct or solicit business in New York and/or derive substantial revenue from the sale of goods or services in New York.

42. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because, upon information and belief, Defendants are subject to personal jurisdiction in this district, a substantial part of the events which give rise to this action have occurred in this district, and Plaintiff has suffered harm from Defendants' conduct in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A. Plaintiff's Establishment of HYBRID and HYBRID & COMPANY Trademarks**

43. In or around 1996, Young Girl, Inc. ("Young Girl") began to sell, offer for sale, market, promote, advertise, distribute and manufacture a wide array of clothing items, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits, displaying the trademarks HYBRID and HYBRID & COMPANY. Through this use in commerce, Young Girl established common law rights in the trademarks HYBRID and HYBRID & COMPANY.

44. In or around 1998, Young Girl transferred its common law rights in the trademarks HYBRID and HYBRID & COMPANY to YG Designs, Inc. ("YG Designs").

45. Beginning in or around 1998, YG Designs sold, offered for sale, marketed, promoted, advertised, distributed and manufactured a wide array of clothing items, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits, displaying the trademarks HYBRID and HYBRID & COMPANY.

46. In or around 2002, YG Designs transferred its common law rights in the trademarks HYBRID and HYBRID & COMPANY to U.S.A. Design, Inc. ("USA Design").

47. Beginning in or around 2002, USA Design sold, offered for sale, marketed, promoted, advertised, distributed and manufactured a wide array of clothing items, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits, displaying the trademarks HYBRID and HYBRID & COMPANY.

48. In or around 2006, USA Design transferred its common law rights in the trademarks HYBRID and HYBRID & COMPANY to Plaintiff.

49. In or around 2006, Plaintiff began to sell, offer for sale, market, promote, advertise, distribute and manufacture a wide array of clothing items, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits, displaying the trademarks HYBRID and HYBRID & COMPANY.

50. Young Girl, YG Designs and USA Design are the predecessors-in-interest of Plaintiff. Plaintiff and its predecessors-in-interest are privately held entities with common ownership.

51. Through its predecessors-in-interest, Young Girl, YG Designs and USA Design, Plaintiff has been selling, offering for sale, marketing, promoting, advertising, distributing and manufacturing clothing items, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits, displaying the trademarks HYBRID and HYBRID & COMPANY since at least as early as 1996.

52. Since in or around 1996, Plaintiff and its predecessors-in-interest have invested a substantial amount of time, effort and money to develop and promote their clothing under the

trademarks HYBRID and HYBRID & COMPANY. As a result of these efforts, the trademarks HYBRID and HYBRID & COMPANY have achieved substantial goodwill and success in the marketplace for clothing and consumers throughout the United States have come to associate this trademark with high quality clothing sold by Plaintiff.

53. In June 2008, Plaintiff filed an application with the U.S. Patent and Trademark Office (USPTO) seeking a federal registration for the trademark HYBRID & COMPANY, in International Class 25, for use in association with clothing, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits.

54. In or around December 2009, the USPTO granted Plaintiff's application and issued it a trademark registration, Registration No. 3,723,220, for the word and design mark HYBRID & COMPANY for use in association with clothing, including but not limited to coats, jackets, dresses, sweaters, shirts and bathing suits. (Exh. A)

B. Hybrid Promotions' Adoption and Defendants' Use of HYBRID, HYBRID TEES, HYBRID APPAREL and HYBRID JEMS Trademarks

55. Upon information and belief, sometime after Plaintiff's predecessors-in-interest first established common law rights in the trademarks HYBRID and HYBRID & COMPANY, Hybrid Promotions adopted the trademark HYBRID and began to sell, market, promote, advertise, distribute, produce and manufacture clothing, including but not limited to tank tops, t-shirts and sweatshirts, under this trademark.

56. Upon information and belief, in or around 2003, Hybrid Promotions adopted the trademark HYBRID TEES and began to sell, market, promote, advertise, distribute, produce

11

and manufacture clothing, including but not limited to tank tops, t-shirts and sweatshirts, under this trademark.

57. Upon information and belief, in or around 2009, Hybrid Promotions adopted the trademark HYBRID APPAREL and began to sell, market, promote, advertise, distribute, produce and manufacture clothing, including but not limited to tank tops, t-shirts and sweatshirts, under this trademark.

58. Upon information and belief, sometime after 2009, Hybrid Promotions adopted the trademark HYBRID JEMS and began to sell, market, promote, advertise, distribute, produce and manufacture clothing, including but not limited to tank tops, t-shirts and sweatshirts, under this trademark.

59. Upon information and belief, Hybrid Promotions began to sell, market, promote, advertise, distribute, produce and manufacture clothing displaying the trademarks HYBRID, HYBRID TEES, HYBRID APPAREL and HYBRID JEMS with full knowledge that Plaintiff's predecessors-in-interest were selling clothing under the trademarks HYBRID and HYBRID & COMPANY and therefore had established common law rights in these trademarks, and with the intent to capitalize on the goodwill Plaintiff's predecessors-in-interest had established in these trademarks.

60. Upon information and belief, Jarrod Dogan, Hybrid Promotions' CEO, Jeff Caldwell, Hybrid Promotions' Executive Vice President, and Gavin Dogan, Hybrid Promotions' Chief Marketing Officer, have actively participated in selling, marketing, promoting, advertising, distributing, producing and manufacturing clothing displaying the trademarks HYBRID, HYBRID TEES, HYBRID APPAREL and HYBRID JEMS and have