UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
THE FASHION EXCHANGE LLC,
:
:
Plaintiff, : 14-CV-1254 (SHS) (OTW)
:
-against- : **MEMORANDUM**
: **OPINION & ORDER**
HYBRID PROMOTIONS, LLC, et al., :
:
Defendants. :
-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

This dispute centers around the October 30, 2018 deposition of Jack Saadia.[1] Defendants seek sanctions from Plaintiff and Plaintiff's counsel, Mr. Zarin, alleging that Mr. Saadia was unprepared for the deposition and that Plaintiff's counsel frustrated the deposition through numerous speaking objections and instructions to not answer. (ECF 280 at 1-2). As a result, Defendants seek recovery of attorney's fees and costs for Mr. Saadia's October 30 deposition and for bringing their sanctions motion. *Id*. For the reasons discussed below, Defendants' motion is **GRANTED** in part.

I. **Background**

Plaintiff The Fashion Exchange LLC ("Plaintiff") brought suit on February 26, 2014[2] against Hybrid Promotions, LLC ("Hybrid") and a number of retailers (collectively "Defendants")[3] for infringing on Plaintiff's trademark "Hybrid & Company." (ECF 2 through ECF

---

[1] Jack Saadia is also known by his legal name Yakoub Saadia, as indicated in the deposition transcript. Saadia Deposition ("Dep.") at 7:11-15.
[2] The operative complaint is the Second Amended Complaint, which contains in substance the same allegations as the initial complaint. (ECF 134 through ECF 134-3).
[3] Retailer defendants include, *inter alia*, Urban Outfitters, Inc., Macy's Retail Holdings, Inc., Dollar General Corp., Kohls Department Stores, Inc., Wal-Mart Stores, Inc., and Nordstrom, Inc.

2-3).[4] Plaintiff alleges that Defendants marketed and sold clothing that contained the mark "Hybrid" which would mislead consumers into believing that the clothing was related to Plaintiff's mark. Compl. ¶¶ 72-74. Plaintiff brings claims of copyright infringement and unfair competition, seeking both monetary damages and permanent injunctive relief. Compl. at ¶¶ 17-23.

On July 23, 2014, because of concerns that full-blown discovery may be premature if Plaintiff had not yet established infringement, Judge Stein stayed discovery against the retailer defendants except as to discovery on the subject of confusion. (ECF 90). On November 17, 2017, Judge Stein permitted discovery against Hybrid regarding "actual confusion and sales" and limited discovery against eight particular retailer defendants, as chosen by the parties. (ECF 215).

At the June 28, 2018 discovery conference before me, Defendants raised concerns that Plaintiff had failed to respond to discovery requests regarding royalties received from its licensee, Fame Fashion. June 28, 2018 Tr. (ECF 249) at 46:1-14. Defendants argued that because Plaintiff's claim for damages includes lost profits, Defendants were entitled to documents showing those lost profits. *Id*. at 48:11-15. After being ordered to produce financial documents, Plaintiff informed the Court on September 27, 2018 that Plaintiff did not have any such documents[5] but had instead created a spreadsheet with the royalty amounts. (ECF 254). Plaintiff's counsel further represented at the October 4, 2018 discovery conference that information regarding the amount of royalties collected had been lost due to "computer issues"

---

[4] For reasons unknown, the Complaint ("Compl.") was filed in three parts, ECF 2, ECF 2-1, ECF 2-2, and ECF 2-3.
[5] The potential spoliation dispute regarding Plaintiff's royalty documents is the subject of another motion for sanctions pending before this Court, ECF 302, but is not covered by this order.

2

and that the recently-created spreadsheet reflected Plaintiff's attempt to "reconstruct the information." Oct. 4, 2018 Tr. (ECF 264) at 6:8-17. Although Defendants expressed frustration that Plaintiff lacked *any* documents reflecting royalty payments, *e.g.*, ledgers, cancelled checks, Mr. Zarin averred that his client did not possess any documents pertaining to royalties other than the aforementioned spreadsheet. *Id*. at 6:18-21.

In response, Defendants sought production of Plaintiff's tax returns, reasoning that because Plaintiff's sole business is licensing, its royalties could be deduced from the income listed in Plaintiff's tax returns. *Id*. at 8:17-25. The Court ultimately granted Defendants' request to compel production of the tax returns and ordered Defendants to schedule a Rule 30(b)(6) deposition of Plaintiff for questioning regarding royalties. *Id*. at 26:17-21. In ordering the 30(b)(6) deposition, the Court warned both parties that such depositions require advance preparation of the witnesses on "knowledge that can be imputed to the entire organization, not just their personal knowledge." *Id*. at 27:20-25.

After Mr. Saadia was deposed in his capacity as the Rule 30(b)(6) witness on October 30, 2018, the parties appeared before the Court for another discovery conference due to Defendants' contentions that their Rule 30(b)(6) deposition of Plaintiff was obstructed and that Plaintiff still refused to produce key documents regarding Plaintiff's royalty figures. (ECF 270). Defendants referenced the discrepancy between the tax returns' income figures and the produced spreadsheet's royalty figures, and noted that Mr. Saadia was unprepared to testify about the tax returns despite being designated Plaintiff's 30(b)(6) witness. *Id*. The Court again reminded the parties that a Rule 30(b)(6) witness should be prepared to answer questions on behalf of the entity, not just based on their personal knowledge, and ordered a second 30(b)(6)

3

deposition of Plaintiff. Nov. 29, 2018 Tr. (ECF 276) at 14:22-24, 33:8-14. In an attempt to encourage the parties to exercise greater civility in conducting the 30(b)(6) deposition, the Court ordered that the second deposition be held in the Court's jury room. *Id*. at 33:19-34:3. Defendants subsequently were granted leave to file their motion for sanctions regarding the first 30(b)(6) deposition of Plaintiff, which has now been fully briefed and is before this Court.

II. **Discussion**

Defendants argue that Plaintiff's counsel repeatedly offered speaking objections and engaged in prolonged debates with Defendants' counsel to the point that Plaintiff's counsel was testifying in Mr. Saadia's place. (ECF 280 at 6). By the Court's count, Plaintiff's counsel speaks in approximately 75% of the pages in the deposition transcript, <u>excluding</u> re-direct and simple one-sentence objections. Plaintiff contends that the speaking objections were necessary to provide "clarity" to Defendants' questions. (ECF 289 at 8). Despite the existence of improper conduct, ultimately, "[t]he decision to impose sanctions is at the discretion of the court." *Cordero v. City of New York*, No. 15-CV-3436 (JBW) (CLP), 2017 WL 2116699, at *5 (E.D.N.Y. May 12, 2017) (analyzing sanctions under Rule 30(d)(2)). Defendants offer three bases for imposing sanctions on Plaintiff, each of which will be discussed below.

A. **Frustrating the Deposition (Rule 30(d))**

Defendants seek sanctions under Rule 30(d)(2) for Plaintiff's counsel's impeding and frustrating the deposition. (ECF 280 at 5). Rule 30(d)(2) does not require a showing of bad faith but authorizes sanctions for conduct that "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Defendants argue that the deposition was impeded by

4

Plaintiff's counsel's repeated improper speaking objections and instructions to not answer. (ECF 280 at 6).

Although not every improper objection warrants sanctions, sanctions are appropriate where the attorney's conduct "essentially destroys a deposition." *See Cameron Indus., Inc. v. Mothers Work, Inc.*, No. 06-CV-1999 (BSJ) (HBP), 2007 WL 1649856, at *5 (S.D.N.Y. June 6, 2007) (quoting *Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, No. 96-CV-0799 (AGS) (JCF), 1997 WL 482518, at *8 (S.D.N.Y. Aug. 21, 1997)). In the first half of the deposition, Plaintiff's counsel repeatedly made speaking objections, engaging in debates with Defendants' counsel about the question. This is improper because "it is not counsel's place to interrupt if a question is perceived to be potentially unclear to the witness. Rather, the witness should make the determination . . . ." *Phillips v. Mfrs. Hanover Tr. Co.*, No. 92-CV-8257 (KTD), 1994 WL 116078, at *4 (S.D.N.Y. Mar. 29, 1994). Some of the more egregious examples are provided below.

In one colloquy, Plaintiff's counsel improperly suggested a manner for Mr. Saadia to answer the question:

> Q. Okay. Did you receive any money from The Fashion Exchange when your brother obtained your shares in The Fashion Exchange?
>
> MR. ZARIN: Objection. Irrelevant. You just asked that question.
>
> MR. ROSENBERG: No, I did not.
>
> A. Can you repeat the question, please.
>
> Q. Did you receive any consideration, money, from The Fashion Exchange when your shares in The Fashion Exchange were transferred to Joe?
>
> MR. ZARIN: Objection. Irrelevant. Again, Mark, what -- what difference would it make whether he received a million dollars or $1? If they were transferred they were transferred.

5

> MR. ROSENBERG: Scott, I get to ask my questions.
>
> MR. ZARIN: If the witness doesn't know, he doesn't know. He said he didn't know.
>
> MR. ROSENBERG: You're -- now you're suggesting answers.
>
> A. Can you repeat the question, please.
>
> MR. ROSENBERG: Can you read the question, back.
> (Question was read back as follows: QUESTION: Did you receive any consideration, money, from The Fashion Exchange when your shares in The Fashion Exchange were transferred to Joe?")
>
> A. I don't know that -- the question don't make sense to me, so I can't answer it.

Saadia Dep. at 30:18-32:2.

Later, Plaintiff's counsel engaged in a prolonged and unnecessary argument regarding the relevancy of a simple question, which Mr. Saadia ultimately answered:

> Q: Who is Souny Nsiri. S-O-U-N-Y, N-S-I-R-I?
>
> MR. ZARIN: Objection. Irrelevant. But if --
>
> MR. ROSENBERG: That person's name appears on the tax returns. That's the subject of the deposition. Knock it off, Scott. Now you're just --
> (Multiples [sic] speakers.)
>
> MR. ZARIN: Mark --
>
> MR. ROSENBERG: -- interrupting and obstructing the --
>
> MR. ZARIN: No. The subject of this deposition -- and to the extent that the tax returns are relevant, they are relevant for the issue of how much The Fashion Exchange was paid in royalties from Fame Fashion. Nothing else.

6

> MR. ROSENBERG: They're relevant because I want to know if the tax returns are even accurate, and I want to know who these people are.
>
> MR. ZARIN: But you haven't got -- if you want to ask questions about whether the tax returns are accurate, present him with the tax returns -
> (Multiple speakers.)
>
> MR. ROSENBERG: No.
>
> MR. ZARIN: -- and ask him those questions. That's fine.
>
> MR. ROSENBERG: Scott, I get to decide what order I ask my questions in and when I present documents. I'm asking: Who is the person? It's a yes -- it's an easy question. What are you trying to hide here?
>
> MR. ZARIN: But -- but if the questions are irrelevant, then -- then – [sic] which they are in all of these cases with respect to the questions that you have been asking so far, then I'm going to object to them being irrelevant. And I don't think the witness needs to answer those questions that are not at all relevant to this case.
>
> MR. ROSENBERG: Are you instructing the witness not to answer?
>
> MR. ZARIN: I'm not instructing him not to answer. I'm saying he can answer if he knows.
>
> BY MR. ROSENBERG:
> Q. Who is -- who is Souny Nsiri, S-O-U-N-Y, N-S-I-R-I?
>
> A. I think he's one of the partner [sic] in The Fashion Exchange.

Saadia Dep. at 32:17-34:22.

In the following colloquy, Plaintiff's counsel again directed Mr. Saadia

toward an answer:

> Q. Has Fame Fashion ever paid The Fashion Exchange to sell Fame Fashion's products? And by "Fame Fashion's products," I mean products manufactured or created by Fame Fashion.
>
> MR. ZARIN: Objection. There's an underlying assumption that Fashion Exchange has sold products that were manufactured by Fame Fashion. Why don't you ask him --

7

MR. ROSENBERG: That's the --

MR. ZARIN: -- if that's the case or not.
(Multiples speakers.)

MR. ROSENBERG: -- question.

MR. ZARIN: No, it's not. That's not the question you asked.
Does Fashion Exchange -- has it ever since 2008 sold products that were manufactured by Fame Fashion? It's just a yes or no question as -- not if it sold goods manufactured by --

MR. ROSENBERG: Stop – stop suggesting.

MR. ZARIN: -- Fashion Exchange, but if it sold goods manufactured by Fame Fashion.

THE WITNESS: No.

Saadia Dep. at 84:10-85:12.

And yet again, Plaintiff's counsel suggested an answer to the question in the following colloquy:

> Q: To your knowledge, does that mean that The Fashion Exchange did not receive royalties in 2009?
>
> MR. ZARIN: Objection. You're misstating what it says here. This is a -- this page that you are referencing is a Schedule K. And then it says: Partners distributed share.
>
> MR. ROSENBERG: Are you telling me that the full return was not produced?
>
> MR. ZARIN: No, I'm telling you I'm reading what's written here.
>
> MR. ROSENBERG: Right. And what's written there is royalties, the partnership --
>
> MR. ZARIN: Right. But your question was just does this document represent that Fashion Exchange didn't receive royalties because it doesn't have a -- any listing on the royalties. And I'm just saying that it

8

> says partners distributed share. What that means to me is that the
> partners didn't receive the royalties, not that The Fashion Exchange
> didn't receive royalties.
>
> MR. ROSENBERG: Are you a CPA?
>
> MR. ZARIN: No.
>
> MR. ROSENBERG: Then please stop objecting that it's wrong.
>
> MR. ZARIN: Okay. But I'm just telling you -- I'm just reading to you what
> it says on the document.
>
> BY MR. ROSENBERG:
>
> Q. Do you know why Line 7 for royalties is blank?
>
> A. So really, that question is more of a CPA question because I don't
> know how and where every line get plugged in here.

Saadia Dep. at 194:6-195:19. Here, it appears that Mr. Saadia merely responded based on the answer suggested by Plaintiff's counsel, denying Defendants the ability to obtain a response directly from Mr. Saadia, Plaintiff's 30(b)(6) witness.

In addition, Plaintiff's counsel instructed Mr. Saadia multiple times to not answer questions regarding Mr. Saadia's criminal history. *See* Saadia Dep. at 8:24-9:3, 14:13-15:14, 15:21-16:3. Each of those instances, Mr. Saadia followed counsel's instructions and declined to answer the question. *Id*. Rule 30(c)(2) expressly limits the instances in which a deponent can be instructed not to answer a question: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). Absent those situations, "the examination still proceeds; the testimony is taken subject to the objection." *Id*.; s*ee also* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2113, 556 (3d ed. 2010) (noting limitation on

instructions to not answer because of potential disruptiveness); *Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 307 (S.D.N.Y. 1991) (noting the proper procedure for non-privilege objections "is for the attorney who raises the objection to note his objection but to allow the question to be answered."). Here, Plaintiff's counsel did not assert a privilege, a court limitation, or a Rule 30(d)(3) motion. Instead, Plaintiff's counsel instructed Mr. Saadia not to answer based on relevancy grounds, notwithstanding the fact that "it is improper to instruct a witness not to answer a question on the basis of relevance." *See In re Omeprazole Patent Litig.*, No. M-21-81 (BSJ), 2005 WL 818821, at *11 (S.D.N.Y. Feb. 18, 2005); *see also Weinrib v. Winthrop-University Hosp.*, No. 14-CV-953 (JFB) (AKT), 2016 WL 1122033, at *2 (E.D.N.Y. Mar. 22, 2016) ("lack of relevancy is not a proper basis for instructing a witness not to answer deposition questions").[6]

As a result of Plaintiff's counsel's improper conduct, the Court ordered a second 30(b)(6) deposition for Defendants to address the various topics that Mr. Saadia was unprepared to answer and to provide a more "fulsome" deposition. Nov. 29, 2018 Tr. at 23:17-20, 33:8-14. Plaintiff's counsel's conduct, as demonstrated above, unnecessarily extended the length of Plaintiff's first 30(b)(6) deposition and seriously disrupted Defendants' ability to obtain testimony from Plaintiff. Accordingly, sanctions are appropriate here under Rule 30(d)(2).

---

[6] Plaintiff's counsel also repeatedly objected and interfered with the deposition on the basis that the question was outside the scope of the noticed topics. A Rule 30(b)(6) deposition, however, "is not defined by the notice of deposition – instead, Fed. R. Civ. P. 26(1) defines the scope of discovery." *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. 10-CV-3647 (CBA) (MDG), 2012 WL 3536987, at *4 (E.D.N.Y. Aug. 13, 2012).

### B. <u>Failure to Provide a Prepared Witness (Rule 37(d))</u>

Defendants next argue that Plaintiff violated Federal Rule of Civil Procedure 37(d)(1)(A)(i), which authorizes sanctions where the Rule 30(b)(6) witness "fails, after being served with proper notice, to appear for that person's deposition." (ECF 280 at 2). Although Mr. Saadia physically appeared for his deposition, "courts treat the production of an unprepared witness as 'tantamount to a failure to appear.'" *See Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 38-39 (S.D.N.Y. 2009). The party seeking sanctions must show that the deponent's inability to testify was "egregious and not merely lacking in desired specificity in discrete areas." *See Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, No. 94-CV-1942 (DC), 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995).

Here, Plaintiff admits that Mr. Saadia was unprepared to testify regarding Plaintiff's tax returns because it was Plaintiff counsel's belief that those questions were more properly directed to Plaintiff's accountant.[7] Nov. 29, 2018 Tr. at 10:5-6, 11:5-13. A review of the transcript shows that besides the questions about the tax returns, Mr. Saadia was prepared on other topics and did answer the majority of questions asked at the deposition. A six-hour long deposition,[8] producing a transcript over 200 pages, does not rise to the level of a failure to appear. *See Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *6 (S.D.N.Y. Dec. 19, 2017) (finding not sufficiently egregious where movant only pointed to an

---

[7] As the Court already instructed Plaintiff's counsel at multiple conferences before and after Plaintiff's first 30(b)(6) deposition, this is a mis-reading of Rule 30(b)(6), which requires the witness to be prepared to testify not only "to matters of which the witness has personal knowledge, but extends to all information reasonably available to the responding organization." *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103 (3d ed. 2010).

[8] Defendants also argue that Plaintiff's arriving at the deposition 40 minutes later is sanctionable under Rule 37. (ECF 280 at 4). Defendants provide no case law in support for this proposition. Further, the reason for the delay is not clear from the record.

11

inability to testify as to "scattered topic areas"); *Agniel v. Central Park Boathouse LLC*, No. 12-CV-7227 (NRB), 2015 WL 463971, at *3 (S.D.N.Y. Jan. 26, 2015) (denying Rule 37 sanctions request where deponent was able to testify to six of the nine notice topics, which made the deposition "not wasted"). Because the Court finds that sanctions are appropriate under Rule 30 already and that Mr. Saadia was prepared to answer, and indeed did answer, many of the questions, sanctions under Rule 37(d) are not warranted here.

### C. Bad Faith Conduct (28 U.S.C. §1927)

Defendants also seek sanctions under 28 U.S.C. §1927 and/or the Court's inherent authority, alleging that Plaintiff's counsel's objections were made in bad faith and for the sole purpose of disrupting Mr. Saadia's deposition. (ECF 280 at 7). Section 1927 sanctions are authorized for an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Similarly, the Court has the inherent authority to issue sanctions for behavior that is made in "bad faith, vexatiously, wantonly, or for oppressive reasons." *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). For sanctions under either authority, the court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). Such bad faith can be found where the "actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose." *Id*. (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

As discussed above, the majority of the improper objections were made in the first half of the deposition. Defendants do not provide any evidence for bad faith other than their assertion that Plaintiff's counsel should have known such objections were improper. If every

improper objection is to be inherently considered made in bad faith, this would result in sanctions for every improper objection, a result not contemplated by either authority. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999) (reversing award of sanctions where improper conduct is merely the "result of poor legal judgment"); *Estate of Sauter v. Citigroup, Inc.*, No. 14-CV-5812 (LGS), 2015 WL 3429112, at *4 (S.D.N.Y. May 27, 2015) (requiring a "high degree of specificity in the factual findings" before § 1927 sanctions are warranted). Accordingly, while inappropriate, Plaintiff's counsel's behavior does not reflect a clear showing of bad faith such that sanctions are warranted on that basis. *See Sicurelli v. Jeneric/Pentron, Inc.*, No. 03-CV-4934 (SLT) (KAM), 2005 WL 3591701, at *7 (E.D.N.Y. Dec. 30, 2005) (denying § 1927 sanctions even though counsel's misconduct "significantly frustrate[d] the progress" of the deposition).

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for sanctions, finding that while sanctions were not warranted under Rule 37, 28 U.S.C. §1927, or the Court's inherent authority, Plaintiff's counsel's obstruction of the deposition through repeated speaking objections warrants sanctions under Rule 30(d)(2). As noted above, Defendants' inability to obtain a fair examination of Mr. Saadia necessitated another Rule 30(b)(6) deposition. Nevertheless, Defendants were able to obtain some substantive testimony from Mr. Saadia at his deposition, rendering that deposition not completely wasted.

Accordingly, Plaintiff and Plaintiff's counsel shall be jointly and severally liable for half of Defendants' attorney's fees and costs in taking the October 30 deposition and bringing their motion for sanctions. Within 14 days of this Order, Defendants shall submit their billing records

for the total fees and costs associated with the October 30 deposition and for bringing this motion. If Defendants seek to file their billing records under seal, they shall follow the process outlined in the Court's Individual Practices. The Clerk of Court is directed to close ECF 280.

**SO ORDERED.**

Dated: September 26, 2019
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge