**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
               :

THE FASHION EXCHANGE LLC,      :
               :
          Plaintiff,    :      **14-CV-1254 (SHS) (OTW)**
               :
      -against-     :      **<u>OPINION & ORDER</u>**
               :
HYBRID PROMOTIONS, LLC, et al.,    :
               :
         Defendants.   :
               :
---------------------------------------------------------x

      **ONA T. WANG, United States Magistrate Judge:**

      Plaintiff The Fashion Exchange LLC ("Plaintiff") brings suit against Hybrid Promotions,

LLC ("Hybrid") and a number of retailers (collectively "Defendants")[1] for infringing on Plaintiff's

trademark "Hybrid & Company." Complaint ("Compl.") (ECF 2 through ECF 2-3).[2] Plaintiff

alleges that Defendants marketed and sold clothing that contained the mark "Hybrid" which

would mislead consumers into believing that the clothing was related to Plaintiff's mark. Compl.

¶¶ 72-74. Plaintiff brings claims of copyright infringement and unfair competition, seeking both

monetary damages and permanent injunctive relief. Compl. ¶¶ 17-23.

      Before me now is Defendants' motion for sanctions, including terminating sanctions, for

Plaintiff's loss of documents relating to Plaintiff's actual damages, *e.g.*, profits and royalties. For

the reasons below, I find that Plaintiff and Plaintiff's counsel should be sanctioned in the form

of attorney's fees and costs, but deny the request for more severe sanctions.

---

[1] Retailer defendants include, *inter alia*, Urban Outfitters, Inc., Macy's Retail Holdings, Inc., Dollar General Corp., Kohls Department Stores, Inc., Wal-Mart Stores, Inc., and Nordstrom, Inc.

[2] The operative complaint is the Second Amended Complaint, which contains in substance the same allegations as the initial complaint. (ECF 134 through ECF 134-3).

## I.     Background

### A.     Events Leading to the Sanctions Motion

At the June 28, 2018 discovery conference, Defendants raised concerns that Plaintiff had failed to respond to discovery requests regarding financial statements and failed to produce any documents showing royalties received from its licensee, Fame Fashion. June 28, 2018 Tr. (ECF 249) at 46:1-14, 48:11-15. Defendants argued that because Plaintiff's claim for damages includes lost profits, Defendants were entitled to documents showing those lost profits. *Id.* at 48:11-15. Although Plaintiff initially refused to produce its financial documents because they would provide "a snapshot of the company's entire profits, [], and revenue," the Court directed Plaintiff to produce those financial documents. *Id*. at 48:17-21; 49:5-7. Plaintiff's counsel agreed at the conference to produce documents regarding "royalties and how the plaintiff gets paid from the licensee." *Id*. at 47:3-7. At the August 2, 2018 discovery conference, Plaintiff's counsel informed the Court that Plaintiff would complete any outstanding document production (including, presumably, the financial documents) by August 24, 2018. Aug. 2, 2018 Tr. (ECF 251) at 2:10-14.

In a September 27, 2018 letter, Defendants informed the Court that despite Plaintiff's counsel's representation that financial documents would be produced, Plaintiff only produced a single quarter-page summary of its royalty income without producing any of the documents and/or data used to create that summary. (ECF 253). That summary is reproduced, with the monetary figures redacted, below (ECF 345-2):

| | Royalty Income from Fame | | | |
|------|-------------------------|-----|-----|-----|
| | Q1 | Q2 | Q3 | Q4 |
| 2009 | $ (REDACTED —) | $ | $ | $ |
| 2010 | $ | $ | $ | $ |
| 2011 | $ | $ | $ | $ |
| 2012 | $ | $ | $ | $ |
| 2013 | $ | $ | $ | $ |
| 2014 | $ | $ | $ | $ |
| 2015 | $ | $ | $ | $ |
| 2016 | $ | $ | $ | $ |
| 2017 | $ | $ | $ | $ |

In response, Plaintiff's counsel stated that Plaintiff lacked any "financial documents and profit and loss statements" but would produce the documents underlying the produced royalty summary before October 4, 2018. (ECF 254). Just one week later at the October 4, 2018 conference, Plaintiff's counsel then represented that Plaintiff was no longer in possession of any royalty-related documents due to "computer issues" "at some point in the last few years," and that the produced summary had been an attempt to "reconstruct the information." Oct. 4, 2018 Tr. (ECF 264) at 6:8-17. Although Defendants expressed frustration that Plaintiff apparently lacked *any* documents reflecting royalty payments, such as ledgers or cancelled checks, Plaintiff's counsel averred that his client did not possess any documents pertaining to royalties other than the aforementioned spreadsheet. *Id*. at 3:16-22, 6:4-7.

As an alternative method of determining Plaintiff's royalty income, Defendants then sought production of Plaintiff's tax returns, reasoning that because Plaintiff's sole business is licensing, its royalties could be deduced from the income listed in Plaintiff's tax returns. *Id*. at 8:17-25. The Court granted Defendants' request at the October 4, 2018 conference, after which Plaintiff subsequently produced its tax returns.[3] *Id*. at 26:17-21. Defendants then noted the

---

[3] Defendants dispute the authenticity of these tax returns, produced on October 25, 2018, pointing out that other than the 2008 return, the returns from 2009 through 2017 were unsigned and provided no indication that they

discrepancy between the income figures listed in Plaintiff's tax returns and the summary spreadsheet's royalty figures. (ECF 270).

On October 30, 2018, Defendants deposed Plaintiff's 30(b)(6) witness, Mr. Jack Saadia, Plaintiff's former co-owner and then-vice president. Mr. Saadia testified that, contrary to Plaintiff's counsel's prior representations, Plaintiff created financial documents such as profit statements and balance sheets "every year." Saadia Tr. at 67:20-68:16. Mr. Saadia further testified that at the time of the deposition, October 30, 2018, Fashion Exchange's IT consultant had already been searching for relevant documents for the past "couple of months or so." Saadia Tr. at 99:21-25.

At the Court's direction, Plaintiff subsequently produced a second 30(b)(6) witness, Marc Hanono,[4] to testify regarding Plaintiff's computer issues after Plaintiff's initial 30(b)(6) witness, Mr. Saadia, was unprepared to testify on the loss of documents. (ECF 270 at 3; ECF 318 at 13). At his deposition, Mr. Hanono testified that in early October 2018, one of Plaintiff's employees discovered that the hard drive for Plaintiff's and Fame Fashion's shared server was "fried," causing Plaintiff to lose access to all of its documents.[5] Hanono Tr. (ECF 345-1) at 11:2-12:6. Mr. Hanono was unable to define what constituted a "fried" server other than that "it doesn't work anymore." *Id*. at 132:25-133:2. Mr. Hanono confirmed that when the server

---

were ever filed. (ECF 304 at 13). When asked why Plaintiff failed to produce the electronic signatures for the 2009-2017 tax returns, Plaintiff's counsel replied, "It wasn't asked for." Hanono Tr. at 63:12-14.

[4] Mr. Hanono owns a 25% ownership interest in Fashion Exchange and is the brother-in-law of Jack Saadia. Hanono Tr. at 94:23-25; 100:22-101:8

[5] Plaintiff claims to have also suffered an earlier issue with its server in 2015 but was able to recover the documents from a back-up computer. Hanono Tr. at 21:4-14. This means that Plaintiff should have been in possession of responsive documents before its server was "fried."

"fried," all documents related to Plaintiff's lawsuit were "lost." *Id*. at 20:24-21:3. When asked

how he was able to create the royalty summary spreadsheet on September 7, 2018 if the data

was lost, Mr. Hanono explained that he had created the spreadsheet before the server "fried"

at the "[e]nd of September or October" 2018, using sales data that Fame Fashion had provided

to Fashion Exchange over the years. *Id*. at 22:6-10, 22:24-23:9; *see also* Saadia Tr. at 126:12-

127:16 ("Basically Fame sent us what -- what [sic] they sell, I think, quarterly or annually or

maybe both."). Although Plaintiff retained an outside IT consultant to attempt to retrieve the

lost data, Mr. Hanono admitted that nothing was able to be retrieved. *Id*. at 12:12-18 (A. "Right

now we're unable to retrieve any data. Q. None at all? A. No."). Mr. Hanono did not know

whether the "fried" server's data was backed up on any other server or computer. *Id*. at 14:19-

21.

### B. Defendants' Sanctions Motion

Defendants seek sanctions under Federal Rule of Civil Procedure 37(e) for failure to

produce, and subsequent spoliation of, financial statements, sales records, and royalty reports

that support Plaintiff's damages claim. (ECF 304). Defendants argue that terminating sanctions

are appropriate here because: (1) Plaintiff willfully destroyed the damages documents and

(2) without these documents, Defendants are prejudiced in mounting a defense against

Plaintiff's claim for actual damages. (ECF 304 at 22). In the alternative, Defendants seek the

lesser sanctions of either precluding Plaintiff from introducing any damages evidence,

permitting an adverse inference that Plaintiff incurred no damages, or at a minimum, imposing

monetary sanctions. (*Id*. at 27-28).

II.    **Discussion**

    A.  **Legal Standard**

Rule 37(e) of the Federal Rules of Civil Procedure, amended in 2015, governs sanctions

for failure to preserve electronically stored information ("ESI"), and provides as follows:

> (e) **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1)    Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2)    Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A)    Presume that the lost information was unfavorable to the party;
>
>     (B)    Instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C)    Dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

District courts in the Second Circuit have recognized that Rule 37(e) replaces the prior

framework for claims regarding a failure to preserve ESI. *See Lokai Holdings LLC v. Twin Tiger

USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018) ("Rule

37(e) of the Federal Rules of Civil Procedure, as amended in 2015, governs sanctions for failure

to preserve ESI"); *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *7

(S.D.N.Y. Dec. 19, 2017) ("Rule 37(e) amended the traditional spoliation rules as it related to ESI

in a number of ways."). Although the 2015 amendment went into effect after Plaintiff filed suit,

the amendment was in effect by 2018 when the alleged spoliation occurred and is thus

applicable here. *See Distefano v. Law Offices of Barbara H. Katsos, PC*, No. 11-CV-2893 (PKC) (AKT), 2017 WL 1968278, at *4 (E.D.N.Y. May 11, 2017) (noting courts typically look at the rule in effect when the sanctionable conduct occurred and when the sanctions motion was filed).

Sanctions for spoliation are only available under Rule 37(e) where certain threshold elements are met. The Court must first determine: (1) whether Plaintiff had an obligation to preserve its ESI in the anticipation or conduct of litigation; (2) whether the ESI was lost because Plaintiff failed to take reasonable steps to preserve it; and (3) whether the lost ESI can be restored or replaced through additional discovery. Fed. R. Civ. Pro. 37(e). Only if these three elements are met will the Court turn to deciding the appropriate sanction.

Whereas the previous version of Rule 37 permitted severe sanctions for negligent spoliation, pursuant to the amended Rule 37(e), the movant must now show that the non-moving party "acted with the intent to deprive [Plaintiff] of the information's use in the litigation" before the sanctions listed in subsection (2) of Rule 37(e)—*i.e.*, adverse inference, dismissal, or default judgment—are available. Fed. R. Civ. P. 37(e)(2). Absent a showing of "intent to deprive," Plaintiff's relief is limited to sanctions under subsection (1) of Rule 37(e). Fed. R. Civ. P. 37(e)(1). A Rule 37(e)(1) sanction may only be imposed upon a finding of prejudice from the loss of the information, and the sanction imposed may be "no greater than necessary to cure the prejudice." *Id*. When fashioning such a sanction, "[c]are must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

**B.** <u>**Availability of Sanctions Under Rule 37(e)**</u>

The parties do not dispute, nor is there evidence to the contrary, that the lost damages ESI should have been preserved or that Plaintiff failed to take reasonable steps to preserve the ESI.[6] Plaintiff instead argues that Rule 37(e) should not apply because the lost data could have been replaced through reviewing produced tax returns and seeking discovery from Plaintiff's accountant and banks. (ECF 318 at 6).

Tax returns are an insufficient replacement for the royalty data because they are not the same data. As Plaintiff acknowledges, the tax returns show zero royalty income but instead categorize royalty payments as "management fees" and "commission incomes." Saadia Tr. at 205:25-206:17, 225:10-19; *see also* Declaration of Mark J. Rosenberg ("Rosenberg Decl.") (ECF 303) ¶¶ 45-49 (attesting that Plaintiff's Schedule K-1 documents show no royalty income). Defendants further point out that despite Plaintiff's claim that royalties were listed in the tax returns as management fees and commissions, the total amount of management fees and commission incomes were different from the total amount of royalties listed in Plaintiff's produced royalty summary spreadsheet. Rosenberg Decl. ¶ 51. Other financial documents which Plaintiff "lost" also would contain more detailed information regarding Plaintiff's finances than what is typically listed on tax returns.

Nor is it clear whether Defendants could have obtained the same data from Plaintiff's accountant.[7] Mr. Saadia testified that Plaintiff sent copies of royalty reports, bank statements,

---

[6] Indeed, Plaintiff does not even assert that it ever issued a litigation hold for this suit or that it made any effort to ensure that documents would be preserved. Nor can it argue that financial documents should not have been preserved, when it pleaded in its initial complaint that it was seeking actual damages. *See generally* Compl. at 23.

[7] While Defendants arguably could have sought bank statements from Plaintiff's banks, there is no indication that Plaintiff's banks would have the other financial data, *e.g.*, sales documents and royalty statements.

and other financial documents to its outside accountant to aid in preparing Plaintiff's tax returns. Saadia Tr. at 90:24-91:17. Although Mr. Saadia suggested that sometimes the accountant might forget to return the documents to Plaintiff after completing preparation of the tax returns, this is too speculative to conclude that the accountant is in possession of the relevant data. *Id*. at 92:9-17 ("Sometimes he return [sic] it. Sometimes he doesn't. You just reminded me, he should return it if he doesn't return it."). To the extent that the accountant could have accidentally retained copies of some of the damages data, Plaintiff already precluded such a possibility when it responded to Defendants' discovery requests that it lacked any responsive documents.[8] *See De Vos v. Lee*, No. 07-CV-804 (JBW), 2008 WL 2946010, at *1 (E.D.N.Y. July 29, 2008) ("documents in the possession of a party's accountant are deemed within that party's control for purposes of Rule 34 discovery"). Therefore, Defendants have satisfied the threshold requirements for seeking sanctions under Rule 37(e). The issue is whether sanctions should be awarded under subsection (e)(1) or (e)(2).

### a.  Rule 37(e)(2) Sanctions

To obtain the harsher sanctions under subsection (e)(2), such as terminating sanctions or an adverse inference, Defendants must show an "intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2). An intent to deprive can be found either from a conscious act of destruction or a "conscious dereliction of a known duty to

---

[8] Plaintiff appears to understand that documents held by its accountant are equivalent to documents within Plaintiff's possession, custody, or control because it admits that to comply with the Court's order, "Plaintiff obtained some of the tax returns it produced from its accountant." (ECF 318 at 11). Therefore, because Plaintiff's discovery response is that it lacks additional responsive documents, it is reasonable to infer that the accountant also lacks responsive documents, negating the need for a separate subpoena to the accountant.

preserve electronic data." *See Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018). As the movant, Defendants have the burden to make such a showing by clear and convincing evidence. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (finding "clear and convincing" the proper standard for analyzing an intent to deprive under Rule 37(e)(2)).

This case presents a close call on intent. The Court in *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017), found an intent to deprive by circumstantial evidence where the data loss could not be "credibly explained" other than by bad faith. In *Moody*, a personal injury action involving a train accident, the defendants' foreman uploaded the train's black box data from the incident onto a laptop and then purportedly uploaded the laptop data onto a backup server. *Id*. at 422-23. During discovery, it was learned that the original black box data had since been overwritten, the foreman's laptop crashed and was subsequently recycled by defendants, and the foreman had failed to properly upload the data onto the backup server in the first instance. *Id*. at 429. Because the data contained critical evidence on liability, the court in *Moody* held that the defendants' failure to ensure that the data was properly backed up before overwriting the original data and throwing away the crashed laptop was "so stunningly derelict as to evince intentionality." *Id*. at 432.

While the degree of negligence and/or incompetence in discovery displayed by Plaintiff in this suit is stunning, it does not rise to the level of being "so stunningly derelict" that it is akin to an intent to deprive. Whereas in *Moody*, the defendants actively erased data and disposed of a laptop without ensuring that the data was first properly backed up elsewhere, Plaintiff here allegedly suffered a server crash, an event over which Plaintiff assumedly had no control.

Plaintiff's lackadaisical approach to its discovery obligations has certainly wasted both Defendants' and the Court's time in attempting to ascertain what documents exist and could be produced. While such conduct is sanctionable, it is unclear whether Plaintiff's stalling was to intentionally deprive Defendants of evidence or merely due to gross incompetence. *See Lokai*, 2018 WL 1512055, at *16 (declining sanctions under Rule 30(e)(2) because the record of spoliation was "capable of more than one interpretation"). Throughout this litigation, Plaintiff's counsel has failed to grasp the scope of his client's discovery obligations. *See, e.g.*, Nov. 29, 2018 Tr. (ECF 276) at 11:5-13:23 (explaining to Plaintiff's counsel what a Rule 30(b)(6) witness is and why failing to prepare his 30(b)(6) witness was improper). Nor is it clear if Plaintiff has been accurately conveying information to its counsel regarding what documents it possessed, as evidenced by contradicting representations.[9] Compare ECF 254 (counsel representing that Plaintiff does not have financial statements or profit/loss statements) with Saadia Tr. at 67:20-68:21 (Saadia testifying that Plaintiff has been creating profit/loss statements and balance sheets from 2008 through present); compare Oct. 4, 2018 Tr. at 6:8-17 (counsel describing royalty spreadsheet as an attempted reconstruction of royalty information *after* computer issues prevented access to data) with Hanono Tr. at 22:6-23:9 (Hanono testifying that the royalty spreadsheet was created using sales data *before* the server was "fried").

It is further unclear if the responsive financial documents sought by Defendants *ever* existed. After reviewing Plaintiff's produced documents, including unsigned tax returns, Defendants acknowledge that Plaintiff may have been "merely a tax shelter." (*See* ECF 304 at

---

[9] While making misrepresentations to the Court or in deposition testimony is sanctionable, that offense is distinguishable from spoliation of documents.

19). It is entirely possible that Plaintiff was hiding ( or attempting to hide) the fact that it never maintained proper financial records in the first place.

Defendants' primary argument is that the timing of the server destruction was too convenient to be accidental. There is insufficient evidence, however, that the server malfunction was deliberate. *Cf. Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *22 (S.D.N.Y. June 20, 2019) (rejecting movant's argument of intent "based almost entirely on the timing of the destruction"); *Lokai*, 2018 WL 1512055, at *16 ("this Court will not make a finding of intent to deprive on the basis of suspicion alone"); *CAT3,* 164 F. Supp. 3d at 499-500 (finding intent to deprive where alteration of email was caused by "human action," rather than an "automatic or inadvertent computer process"). Defendants' only cited evidence are Plaintiff's inconsistent statements and Plaintiff's failure to preserve documents. (ECF 304 at 20). This shows that Plaintiff failed to take reasonable steps to comply with its discovery obligations, a requirement of Rule 37(e), but not necessarily an intent to deprive. If Plaintiff's abject failure to take reasonable steps to preserve its ESI was found sufficient to also award sanctions under Rule 37(e)(2), that would render meaningless the separate "intent to deprive" requirement. To the extent that Defendants are asserting that Plaintiff's misrepresentations are evidence of a more malicious intent, without additional evidence, Defendants' claim is too speculative. Accordingly, Defendants' unsupported assertion that Plaintiff "deliberately destroyed" the server with an intent to deprive does not meet the clear and convincing standard necessary for Rule 37(e)(2) sanctions. (*See* ECF 304 at 21).

Even if the failure to impose a litigation hold were held to constitute an intent to deprive, the Court is not required to issue sanctions under (e)(2) if the sanctions are

disproportional to the prejudice. *See Resnik v. Coulson*, No. 17-CV-676 (PKC) SMG), 2019 WL 1434051, at *10 (E.D.N.Y. Mar. 30, 2019). Terminating sanctions would be disproportional to any prejudice incurred here because Plaintiff can still seek relief other than actual loss, such as statutory damages or disgorgement of Defendants' profits.[10] *See* 15 U.S.C. § 1117(a). Similarly, a mandatory inference that the lost financial documents would have been "unfavorable" to Plaintiff is also unnecessary. Because financial documents would only support the amount of damages, not liability, Defendants are essentially seeking an inference that the financial documents reflect that Plaintiff sustained little to no loss in its own profits. This would be unnecessary because the lack of supporting documentation would already be a significant – if not insurmountable – obstacle to Plaintiff's carrying its burden of proving actual damages. *See Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co*., 630 F. Supp. 2d 255, 261 (E.D.N.Y. 2008) (noting an actual damages claim under the Lanham Act typically requires evidence of profits "lost due to the infringing conduct"). Accordingly, terminating sanctions and an adverse inference are both not warranted.[11]

---

[10] This is not necessarily to say that Plaintiff would succeed on these claims, as Plaintiff would still need to provide evidence of infringement and entitlement to damages. *See* 15 U.S.C. § 1114 (1)(a)-(b) (requiring showing that the defendant's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive").

[11] Terminating sanctions and an adverse inference are not appropriate under the Court's inherent authority either. *See CAT3*, 164 F. Supp. 3d at 502 (noting that severe sanctions under both Rule 37(e)(2) and the Court's inherent authority are similar in limiting its use to "extreme circumstances").

### b. **Rule 37(e)(1) Non-Monetary Sanctions**[12]

In the absence of justification for more severe sanctions under Rule 37(e)(2), the Court

can issue sanctions for spoliation under Rule 37(e)(1) that are "no greater than necessary to

cure the prejudice." *See* Fed. R. Civ. P. 37(e)(1). Defendants seek preclusion of any damages-

related evidence by Plaintiff, which is a "drastic remedy."[13] *See Ebewo v. Martinez*, 309 F. Supp.

2d 600, 607 (S.D.N.Y. 2004); *see also Update Art, Inc. v. Modiin Pub., Ltd*., 843 F.2d 67, 71 (2d

Cir. 1988) (noting preclusion of evidence "should be imposed only in rare situations"). Because

all underlying data is lost, Defendants claim they would be prejudiced by being unable to

challenge the accuracy of Plaintiff's claims of royalties. (ECF 304 at 24). This, however, is not

completely accurate. Defendants could challenge the accuracy of the royalty summary

spreadsheet at trial by cross-examining and challenging the credibility of the summary's

creator, Mr. Hanono, or pointing out the lack of any corroborating documents. *See* Rosenberg

Decl. ¶ 37 (noting Plaintiff has "never produced any of the underlying royalty records").

Similarly, Defendants can attack a claim for actual damages by pointing to the lack of financial

documents or data supporting Plaintiff's claims of lost profits.

Although evidence should not be precluded, Defendants should be permitted to present

evidence at trial regarding the spoliation of damages-related ESI and whether such ESI ever

---

[12] Plaintiff misstates that Defendants are only seeking preclusion sanctions under subsection (e)(2). (ECF 318 at 26 n.6). As stated in both Defendants' notice of motion and memorandum of law, Defendants seek sanctions under Rule 37(e) and/or the Court's inherent authority. (ECF 302 at 1; ECF 304 at 16).

[13] Although preclusion of evidence is typically raised under Rule 37(c), as provided for in that subsection, there is nothing prohibiting a court from finding preclusion a proper remedy needed to cure prejudice under Rule 37(e)(1). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (finding preclusion of specific evidence that would not be case-dispositive may be appropriate under 37(e)(1)).

existed in the first place.[14] *See Karsch*, 2019 WL 2708125, at *27 (finding presentation at trial of evidence of spoliation sufficient to address any "evidentiary imbalance" caused by a destroyed server). To the extent that Plaintiff suggests that the royalty spreadsheet is unreliable because it was created recently for the sole purpose of litigation and does not reflect the underlying data, such an issue is more appropriately raised in a pretrial motion *in limine* if Plaintiff seeks to introduce that spreadsheet into evidence.

### c. Rule 37(e)(1) Monetary Sanctions

#### i. Plaintiff

This leaves Defendants' request for monetary sanctions, which include fees and costs incurred attempting to obtain the destroyed ESI and for bringing their sanctions motion. (ECF 304 at 28). The Court finds that monetary sanctions are the appropriate remedy in this case to compensate Defendants for the time and resources spent by Plaintiff's dragging out this issue. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 52-53 (S.D.N.Y. 2010) ("Costs, including attorney's fees are appropriate when a defendant has unjustifiably destroyed evidence that it was under a duty to preserve, 'causing the plaintiff to expend time and effort in attempting to track down the relevant information'"); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 321 (S.D.N.Y. 2008) ("Courts in this Circuit have often awarded attorneys' fees to sanction a party who disregards [its] discovery obligations"); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (finding costs award is intended both to deter spoliation and to compensate the movant for the effort needed to litigate the spoliation issue).

---

[14] The scope of admissible evidence on this point is more appropriately addressed by the trial judge.

Plaintiff's varying stories on how the data was lost, *i.e.*, "fried" server vs. a much-earlier server transfer problem, shows that, at best, Plaintiff did not treat the issue seriously enough to thoroughly investigate the root cause.[15] If Plaintiff had timely produced its documents, been diligent in determining what documents existed, or even took steps to back-up responsive data, the alleged loss of the server months later in 2018 would likely not have prejudiced Defendants. Or, rather than expending the effort to create a new summary spreadsheet on royalty income, Plaintiff could have just produced the underlying data which Plaintiff admits was in its possession until at least September 2018. Instead, Plaintiff's gross negligence in failing to take steps to preserve the relevant documents and failing to timely produce documents has caused Defendants to expend significant resources repeatedly raising the issue before the Court, as summarized below.

- August 30, 2017: Defendants request financial documents.

- June 28, 2018: Plaintiff ordered to produce financial documents, but Plaintiff's counsel admits he does not know if they exist.

- July 26, 2018: Plaintiff's counsel says Plaintiff "will produce [the financial documents] shortly."

- August 2, 2018: Plaintiff's counsel says any document production will be completed by August 24, 2018.

---

[15] Plaintiff's counsel argues that Mr. Saadia's deposition testimony regarding computer issues was consistent with Mr. Hanono's because Mr. Saadia had also testified that Plaintiff had computer problems in September or October 2018. (ECF 318 at 17). The portions of the transcript cited by Plaintiff contradict that assertion. Mr. Saadia only testified regarding the inability to obtain older documents from 2008-2010 due to server upgrade issues. *See* Saadia Tr. at 95:22-96:13. Mr. Hanono, however, made clear that the 2015 server upgrade issue, which resulted in the loss of some documents which were later recovered from a backup computer, was separate from the 2018 "fried" server problem, which resulted in the permanent loss of all of Fashion Exchange's documents. *See* Hanono Tr. at 20:24-21:14. This demonstrates yet another instance of Plaintiff's counsel misrepresenting the facts.

- September 27, 2018: Plaintiff only produced a single quarter-page royalty summary but says it "will be producing" the underlying data by October 4.

- October 4, 2018: At the status conference, Plaintiff's counsel says royalty documents are lost due to "computer issues." The Court directs Plaintiff to produce its tax returns.

- October 17, 2018: Plaintiff produces incomplete and redacted tax returns.

- October 23, 2018: Plaintiff ordered to produce complete unredacted tax returns.

- October 25, 2018: Plaintiff produces unredacted tax returns.

- October 30, 2018: 30(b)(6) deposition of Plaintiff, where Mr. Saadia noted difficulty retrieving older documents due to server upgrade but does not mention any "fried" server or complete loss of documents. Also testifies that Plaintiff has created financial documents for years.

- November 29, 2018: Plaintiff directed to produce another 30(b)(6) witness due to Mr. Saadia's inability to testify as to certain topics.

- January 29, 2019: Follow-up 30(b)(6) deposition of Plaintiff, where Mr. Hanono testified that the server "fried" in September or October 2018, but that he managed to create the royalty summary before Plaintiff lost the server.

As shown above, Plaintiff engaged in a pattern of failing to take its discovery obligations seriously, creating the need for a number of letter motions and conferences. Accordingly, Plaintiff shall be liable for (1) Defendants' fees and costs incurred in preparing their September 27, 2018 letter (ECF 253); (2) half of Defendants' fees and costs incurred in attending the October 4, 2018 discovery conference; (3) half of Defendants' fees and costs incurred in attending the November 29, 2018 discovery conference; (4) Defendants' fees and costs

incurred in preparing for and taking the January 29, 2019 Hanono deposition; (5) and

Defendants' fees and costs incurred in briefing the instant sanctions motion.[16]

### ii. Plaintiff's Counsel

Defendants further request that Plaintiff's counsel, Scott Zarin, be sanctioned for "actively participat[ing]" in the withholding and destruction of damages documents. (ECF 304 at 33). "The Court has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel," especially when both are "equally at fault." *Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *20 (S.D.N.Y. July 18, 2017) (collecting cases).

Although there is no evidence that Plaintiff's counsel played a role in the "fried" server, Plaintiff's counsel repeatedly made misrepresentations to this Court about the status of document production. *See DeCastro v. Kavadia*, 309 F.R.D. 167, 171 (S.D.N.Y. 2015) (sanctioning counsel for "veil[ing] [the party's] misconduct"). For example, Plaintiff's counsel stated that any remaining Court-ordered production would be completed by August 24, 2018. Aug. 2, 2018 Tr. at 2:10-14. That did not happen. There is also no indication that Plaintiff's counsel made *any* effort to ensure that documents were preserved or that a litigation hold was imposed at any time in the last five years since the suit was initiated. *See R.F.M.A.S.*, 271 F.R.D. at 24 (noting both a party and its counsel are responsible for ensuring litigation holds are implemented and

---

[16] The Court already sanctioned Plaintiff and Plaintiff's counsel under Rule 30(d)(2) for Plaintiff's counsel's obstructive behavior during the October 30, 2018 Saadia deposition. (ECF 333). That is different from this order, which awards sanctions based on spoliation and misrepresentations regarding document production. These five events for which Plaintiff is liable relate to litigating the distinct financial/royalty document issue and would not have been necessary had Plaintiff produced its documents before its server "fried" or if Plaintiff had timely disclosed its lack of financial documents, whatever the reason for their absence.

followed); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432-33 (S.D.N.Y. 2004) (explaining counsel's responsibility to "take affirmative steps to monitor compliance" with document search and production).[17]

Mr. Hanono created the royalty summary spreadsheet in September 2018, before the data purportedly was lost, using the data Defendants had been requesting. Hanono Tr. at 22:15-23:9. Rather than attempt to compile all of the responsive data, Plaintiff's counsel repeatedly tried to run out the clock, first stating that documents would be produced by August 24, 2018 and then later confirming that documents would be produced within a few days of his September 27, 2018 letter. It was not until the October 4, 2018 conference that Plaintiff's counsel claimed that Plaintiff experienced computer issues which prevented accessing any documents, albeit citing to Mr. Saadia's reference to earlier "server transfer issues" rather than the more recent purported catastrophic loss of the entire "fried" server. There is no indication that Plaintiff's counsel *ever* sought the royalty data from his client for production. If Plaintiff's counsel had taken the simple step of asking his client how the summary spreadsheet had been created, he would have been on notice of responsive data that could be immediately produced. *See Zubulake*, 229 F.R.D. at 435 (noting counsel's duty to communicate with the client's employees regarding preservation and production of documents). Thus, sanctioning Plaintiff's counsel[18] is necessary both to deter such conduct in the future as well as to compensate for the

---

[17] As Plaintiff's 30(b)(6) witness, Mr. Hanono testified that although Mr. Saadia may have instructed some employees to "retain some documents," Mr. Hanono did not know which employees were instructed, whether an attorney provided any instructions, which documents were instructed to be retained, or whether the instructions to retain were ever carried out. Hanono Tr. at 4:14-5:22.

[18] Mr. Zarin is being sanctioned personally because his actions are indistinguishable from those of his firm, Zarin & Associates, P.C. *See Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 149 (2d Cir. 2012). Mr. Zarin is the sole named

expenses Defendants were forced to incur by Plaintiff's counsel's willful disregard in ensuring that discovery obligations were being met and accurately conveying the status of such to Defendants and the Court.[19]

### C. **Motion to Seal**

Defendants initially did not file the royalty summary spreadsheet produced by Plaintiff due to Plaintiff's designation of the spreadsheet as "confidential" pursuant to the parties' protective order. Rosenberg Decl. ¶ 33. The Court then directed the parties to file the royalty summary spreadsheet provisionally under seal to avoid further unnecessary motion practice. (ECF 344). Having reviewed the document, the Court has determined that redacting the monetary figures on the spreadsheet can avoid any potential prejudice to Plaintiff's competitive concerns.[20] Accordingly, Defendants shall file the royalty summary spreadsheet, provisionally filed under seal as Exhibit B (ECF 345-2), on the docket with only the royalty amounts redacted.

### D. **Conclusion**

For the foregoing reasons, Defendants' motion for sanctions is GRANTED in part and DENIED in part.[21] It is hereby ORDERED that Plaintiff and its counsel, Scott Zarin, shall be jointly

---

partner of his firm, is the only attorney from his firm representing Plaintiff, and was the sole counsel for Plaintiff involved in the proceedings and filings referenced above.

[19] Although this may reimburse Defendants for some of their monetary expenses incurred, it does not address the time and resources expended by the Court that could have been better spent on more productive tasks. Unlike counsel, the Court does not receive more fees the longer a case is drawn out. This case has already been pending for more than five years. Further obstructionist tactics by Plaintiff and Plaintiff's counsel in the future may warrant additional sanctions.

[20] This does not mean that Plaintiff will always be permitted to submit this spreadsheet in redacted form. Because this motion for sanctions is about the production of the document itself, disclosure of the monetary amounts is unnecessary at this time. If/when Plaintiff seeks to prove its damages using the spreadsheet, the Court may revisit this issue of sealing.

[21] Although dismissing the case as a sanction would require a report and recommendation, the decision to deny terminating sanctions is non-dispositive under Rule 72(a) and therefore within the general pre-trial reference. *See*

and severally liable for: (1) Defendants' fees and costs incurred in preparing their September 27, 2018 letter (ECF 253); (2) half of Defendants' fees and costs incurred in attending the October 4, 2018 discovery conference; (3) half of Defendants' fees and costs incurred in attending the November 29, 2018 discovery conference; (4) Defendants' fees and costs incurred in preparing for and taking the January 29, 2019 Hanono deposition; (5) and Defendants' fees and costs incurred in briefing the instant sanctions motion. By **January 3, 2020**, Defendants shall submit their billing records in support of their claim for such reasonable fees and costs. Plaintiff may file any objections to Defendants' fees submission within 7 days from the date of Defendants' filing.

It is further ORDERED that Defendants shall be permitted to present evidence to the jury concerning the loss and potential relevance of the ESI contained in the "fried" server, as well as the issue of whether financial documents ever existed. The scope of this permission shall be determined by the district judge if the case proceeds to trial.

Defendants shall file a redacted version of ECF 345-2, as described above, on the docket within 3 days of the date of this Order.

The Court will hold a Status Conference in this matter on **Tuesday, January 21, 2020 at 3:00 p.m.** in Courtroom 20D.

---

*Khatabi v. Bonura*, No. 10-CV-1168 (ER), 2017 WL 10621191, at *3 (S.D.N.Y. Apr. 21, 2017) (citing 12 Wright, Miller & Marcus, Federal Practice & Procedure § 3068.2, at 342-44 (2d ed. 1997)).

The Clerk is directed to close ECF 302.


**SO ORDERED.**

_s/ Ona T. Wang_
Dated: December 16, 2019                              **Ona T. Wang**
        New York, New York              United States Magistrate Judge