```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE FASHION EXCHANGE LLC,

              Plaintiff,

         v.                           14 CV 1254 (OTW)

HYBRID PROMOTIONS, LLC,

              Defendant.

------------------------------x
                                      New York, N.Y.
                                      January 21, 2020
                                      3:00 p.m.

Before:

                    HON. ONA T. WANG,

                                      District Judge

                        APPEARANCES

ZARIN & ASSOCIATES, P.C.
     Attorneys for Plaintiff The Fashion
BY:  SCOTT R. ZARIN

TARTER KRINSKY & DROGIN, LLC
     Attorneys for Defendant Hybrid
BY:  MARK J. ROSENBERG
JOEL H. ROSNER
```

1              (Case called)

2              MR. ZARIN:  Scott Zarin, for plaintiff, Fashion,

3     judge.

4              MR. ROSENBERG:  Mark Rosenberg, for defendants.

5              MR. ROSNER:  Joel Rosner, for defendants.

6              THE COURT:  All right.  I have the proposed agenda and

7     I think I might take them a little bit out of order because

8     it's been a while since I've seen you all.  And I know that

9     while you have been living the case for more than five years, I

10    have not been as refreshed and this case started before I took

11    the bench.

12             So, I understand the defendants wish to move for

13    summary judgment.  Can you just give me a little bit of a

14    proffer on what your motion would be on and what you would use

15    to show it because I think that might help when we start

16    talking about plaintiff's requests to reopen or get additional

17    discovery.

18             MR. ROSENBERG:  So the motion would be limited to

19    damages and willfulness.  And willfulness would only for

20    Hybrid's motion.

21             As to damages for plaintiffs to prevail on a lost

22    royalty, it has to show a history of licensure and because of

23    all the issue I have been on before, there is no history of

24    licensing.  It disappeared.  And we don't believe -- what has

25    been produced does not show any history of licensing, at least

1  a license with a royalty.  If it has been a license it's been

2  royalty.  So therefore, there could be no lost royalty.  So

3  that's the damages aspect to summary judgment.  And without the

4  history of licensing there cannot be lost royalty damages.

5  That is where we are there.

6        With respect to Hybrid's willfulness, this is really a

7  document-based motion that I think it's undisputed that my

8  client learned of the plaintiff's registered Hybrid and company

9  mark in approximately 2012 when Hybrid received trademark

10 office action when trying to obtain its own trademark

11 registration for Hybrid.  Hybrid promptly filed -- the

12 registration said first used 2006.  My client filed cancelation

13 proceeding to cancel the Hybrid trademark, Hybrid and company

14 trademark owned by plaintiff in a response to a motion for a

15 default judgment.  Plaintiff took the position that nobody has

16 rights in the mark "Hybrid".  It's a generic term that no one

17 has rights to.

18       So since that time there's been no evidence that

19 plaintiff has used the Hybrid and company mark or Hybrid mark

20 in commerce before my client started using it.  We then filed.

21 We took discovery.  No evidence.  And my client has not stopped

22 using it based on everything that's seen so far.  We filed a

23 motion for summary judgment before Judge Stein on the issue

24 priority between the two parties, two sides rather, a foot

25 worth of papers.  And the judge said issues of fact, he could

1  not tell who came first.  Our position is if a judge can't tell
2  who came first, I think it's Hybrid cannot be willful if no one
3  knows who the prior user of the mark is.
4          The other issue is plaintiff's trademark registration
5  still says first used 2006 and has never taken, made an effort
6  to amend it.  And so based on everything that exists so far,
7  it's our position there cannot be willful infringement if
8  there's a question of who came first.  And if there's a
9  question of who came first, that cannot be willful.
10          THE COURT:  Going back on your proposed motion for
11  summary judgment on damages, so you're saying that because
12  there's no history of licensing on plaintiff's part, there's no
13  lost royalties.  Is there another way to get damages even in
14  the absence of a history of licensing?
15          MR. ROSENBERG:  Well, it is our understanding that in
16  terms of plaintiff's lost profits royalties, the only type of
17  damages they're seeking are lost royalties.  They're seeking
18  Hybrid's and the retailers' profits but that's a separate
19  issue.  That would not be part of the motion.
20          THE COURT: OK.  All right.  Sorry.  Anything you want
21  to say specifically on motion for summary judgment?  We'll get
22  to the proposed discovery later.
23          MR. ZARIN:  Yes, your Honor.  I would like to make a
24  brief comment.  Having seen the Court's order on sanctions a
25  couple weeks ago, I was very perturbed that there was

1   indication in there that the Court might believe that I made
2   any misrepresentations to the Court.  I just would like to say
3   that I never have made any knowing misrepresentations to this
4   Court or to any court that I've ever appeared before.  I have
5   comported myself with the utmost of integrity before this Court
6   and any other court I've ever appeared before.  And if anything
7   I've ever represented to this Court or any Court turned out to
8   be factually incorrect, it was not because I knew that when I
9   was making any kind of the statement.  Having said that, I'll
10  move on to address the points that Mr. Rosenberg just made.
11          With respect to damages, the plaintiff in the
12  trademark case is not required to elect the type of damages he
13  or she might want to pursue until immediately before trial.
14  There are three different options in any trademark case for
15  damages.  One is the plaintiff's lost profits.  In this case
16  those would be the lost royalties as the Court is aware of in a
17  case of this issue and the disputes around it.  The second, is
18  a reasonable royalty.  A reasonable royalty has nothing to do
19  with the plaintiff's actual lost royalties.
20          Now, Mr. Rosenberg mentioned the history of licensing.
21  There is some case law this Second Circuit which indicates that
22  a history of licensing is typical in cases when a reasonable
23  royalty is sought, but there are other cases which say both in
24  the Second Circuit and elsewhere that it is not required that
25  you can recover a reasonable royalty whether or not there is a

1  history of licensing by the plaintiff.

2  Now, in this particular case there in fact has been
3  licensing by the plaintiff, by my client, both of the marks at
4  issue in this case and of a couple of other marks.  And during
5  Mr. Satia's deposition -- not this time around but several
6  years ago -- Mr. Rosenberg asked him about those other license
7  opportunities and he talked about them.  So that's the second
8  measure of possible damages.

9  The third measure of possible damages is the
10 defendant's profits.  Defendant's profits would be available --
11 and Mr. Rosenberg correct me -- if there is willfulness.
12 Willfulness though, now there are a number of different types
13 of fact scenarios which would enable a plaintiff to demonstrate
14 willfulness.  One, as Mr. Rosenberg indicated, would be how
15 much due diligence he or she conducted at the beginning before
16 they started using the trademark, which is something that I did
17 ask defendants in one of their depositions about.  But another
18 very important fact pattern which enables a plaintiff to
19 recover defendant's profits and establish willfulness is the
20 course of the conduct of the defendant over time with respect
21 to the trademark.  Now, there are many cases which talk about
22 this.  There are many courts in which plaintiffs which have
23 asserted have put forth evidence of conduct that went on after
24 the defendant was on notice that there was an infringement and
25 I could cite some of them for you if you'd like.

1    produce that.  So under Second Circuit case law you have to
2    have something.  The reasonable royalty is really a patent idea
3    more so than a trademark idea.  And in the Second Circuit at
4    least it is rarely applied and there's always evidence that
5    supports that why it would be reasonable is because the
6    plaintiff has some type of history or tried to at least license
7    the trademark, not other trademarks which really are irrelevant
8    for purpose of the instant trademark.
9         THE COURT:  For example, I have found in, I think in
10   some copy right cases, that in the instance of a defendant's
11   default, that a plaintiff who is say a photographer who takes
12   lots of photos will show what their typical license fee or
13   royalty fee would be for similar photographs, right?  And what
14   you are saying, Mr. Rosenberg, is that because plaintiff can't
15   show that there is been any licensing that I don't know how you
16   would find a reasonable royalty.
17        MR. ROSENBERG:  That's correct.
18        MR. ZARIN:  And I disagree with that.
19        THE COURT:  OK.  Stop.  So let's try to cabin the
20   issues.  OK?
21        Mr. Zarin, do you have a case that basically says
22   that?  You can disagree all you want but I need law.  I need
23   support because right now it's troubling me.  How do you figure
24   out what a reasonable royalty would be if a plaintiff has never
25   licensed anything and never gotten a royalty?

1            MR. ZARIN:  By an expert -- that was my next point --
2    is that experts testify regarding what reasonable royalty is.
3    And with respect to case law --
4            THE COURT:  Right.  But courts can also determine what
5    a reasonable royalty is without an expert, right?
6            MR. ZARIN:  To my knowledge, the case law -- I mean,
7    in order to demonstrate a reasonable royalty you would need an
8    expert to testify what that reasonable royalty is.
9            THE COURT:  Even in the complete absence of licensing
10   history by plaintiff?
11           MR. ZARIN:  Yes.  Because it's an industry thing.  You
12   look at what reasonable royalty is in the industry for this
13   particular good.
14           THE COURT:  But if the market isn't used at all, how
15   do you compare it to what is actually used?
16           MR. ZARIN:  Well, that's the providence of an expert
17   perts.  They'll say there are comparable products.
18           THE COURT:  Yeah.  How do you compare?  Can you cite
19   me a case where -- can you cite a case?  You know what?  We can
20   even expand it outside the Second Circuit if you want.  The
21   Second Circuit is obviously preferred but can you cite me a
22   case where plaintiff has no licensing history, whatsoever, and
23   a Court has found a reasonable royalty, nonetheless?
24           MR. ZARIN:  I don't have it in front of me but I have
25   seen those, yes.  And I can get them.

1  retailers that say asked for any evidence of communication
2  between Hybrid and those retailers or communications about any
3  Hybrid marks?
4           MR. ZARIN:  I don't know the answer to that question
5  standing here.
6           THE COURT:  Mr. Rosenberg or Mr. Rosner, can you shed
7  any light on this?
8           MR. ROSENBERG:  I don't recall.
9           THE COURT:  Was there any order from the Court that
10 precluded plaintiff from seeking document discovery or in any
11 way limited a document discovery as to those seven or eight
12 retailers.
13          MR. ROSENBERG:  I don't think so.  This is several
14 years ago.  I really don't remember.
15          MR. ZARIN:  I believe that there was.  We had a
16 significant discussion about this.  I don't remember exactly
17 what --
18          MR. ROSENBERG:  I recall it had to do with damages,
19 sales, advertising, actual confusion, and I don't know what
20 else.  But it was definitely some of the topics.
21          MR. ZARIN:  I believe the plaintiffs were
22 circumscribed in the questions that, the documents they could
23 request to a very limited number of documents relating to the
24 purchases that the retailers made from Hybrid Promotions.  And
25 the reason for that was because the point of it -- is coming

1  back to me -- the point of it it was the likelihood of

2  confusion factors, which those documents would go to.  So, in a

3  sense, I'm not sure we even had a discussion before those seven

4  retailer discovery requests were made regarding willfulness

5  because willfulness is an issue of damages which the Court

6  prohibited me from going into a number of times over the course

7  of discovery.

8        THE COURT:  OK.  I am looking at Judge Stein's order

9  from November 2017 which is ECF 215.  Paragraph two says:

10        It is hereby ordered that as to the retailer

11  defendants, discovery on the remaining issues besides actual

12  confusion and sales will be permitted against a group of eight

13  retailers.

14        MR. ROSENBERG:  I think it was actually confusion of

15  sales.

16        MR. ZARIN:  I think the order was not as clear as it

17  could be that the dialogue in the transcript is clear.  And I

18  can present a copy to the Court if you would like to read.

19        THE COURT:  OK.  Which transcript is this?  This is

20  the --

21        MR. ZARIN:  November 17, 2017.

22        MR. ROSENBERG:  Your Honor, some of the early

23  conferences before you I think some of the disputes was the

24  sale documents because we couldn't figure out because the

25  retailers don't track it, which goods bore the Hybrid mark and

1   which goods did not.  I think that error has a typo in it.

2               THE COURT:  I now have, I do have part of the

3   transcript.  I think where the Court says I'm going to allow

4   discovery but you are going to have to narrow these requests --

5   the parties will agree on which eight or if they can't agree, I

6   suggest you agree on eight.  The broader document demands but

7   not including actual confusion or sales documents can go

8   through the retailer defendants.

9               I'm not clear on that.  And this is well before I was

10  involved in the case.  What did you all think were going to be

11  the document demands to be propounded on the eight retailer

12  defendants?  Were they supposed to be limited?

13              MR. ZARIN:  Yes, they were clearly limited.

14              Your Honor, if you would give me a chance I will go

15  through the transcript from the February 2017 conference and

16  I'll send you the portions in which that was discussed.

17              THE COURT:  Mr. Rosenberg.

18              MR. ROSENBERG:  I believe it was supposed to be on

19  likelihood of confusion issues, one of them being intent and

20  damages to sales because was what was off limits the first part

21  of the case.  That had to do with actual confusion and then

22  that was the only issue as to retailers was actual confusion.

23  The second phase of the case had to do with likelihood of

24  confusion -- and damages.  That's where your Honor started off

25  with the sales documents.

1          THE COURT: So, I came in sort of the second phase of
2     the discovery?
3          MR. ROSENBERG: Correct. The first phase was before
4     the initial summary judgment motion on --
5          MR. ZARIN: If I could just clarify a bit. So the
6     documents that we were permitted to take in that second phase
7     from Hybrid Promotions was all damages documents and all
8     document related to likelihood of confusion.
9          With respect to the retailer defendants, I argued that
10    to Judge Stein and I think before your Honor also at an early
11    conference, that one of the likelihood of confusion factors,
12    strength of the mark depends upon sales. So I wanted to know
13    what sales documents from Hybrid Promotions and then a check on
14    those to know whether those occurred from the retailers. So,
15    either your Honor or Judge Stein allowed me to take document
16    discovery related to sales made by Hybrid Promotions to the
17    retailers to help determine the likelihood of confusion factor
18    and the strength of the mark.
19         So, the point was not to allow sales made by the
20    retailers to the public which would go to damages. So, I never
21    got any documents of sales by any of the seven retailer
22    defendants to the public.
23         THE COURT: I know. But we're going back to
24    willfulness on the part of the retailer defendants.
25         And, Mr. Zarin, I believe you had said earlier that if

there was some -- that it might depend on what Hybrid told the retailers.  So, I'm looking at the first step of that, which is have there any been any document requests seeking documents relating to what Hybrid told the retailers?

         MR. ZARIN:  I'd have to look.  I don't have an answer right now.

         THE COURT:  Mr. Rosenberg?

         MR. ROSENBERG:  I don't remember.

         THE COURT:  You don't remember either?

         MR. ROSENBERG:  That was a few years ago.

         MR. ZARIN:  What I can say though, your Honor, and what I do have in front of me are the interrogatories which enabled me to determine what witnesses to notice of the seven and those retailer defendants' responses.  And I can see here in all these seven of the retailer defendants, the only responses that were substantive with names that I ultimately noticed with depositions were, I see here Response Interrogatory Number Five in which I asked for identify each officer, director, employee, agent or representative of retailer defendant who was responsible for the purchase from primary defendants from 1999 through the present of all goods bearing the trademark.

         THE COURT:  Mr. Zarin, that's not answering my question.  My point here is that, again, going back to the principles of proportionality, unless there is some shred or

1   nugget or scintilla of evidence that suggest that Hybrid told
2   the retailers something different from what Hybrid is going to
3   say that they did that supports their motion for summary
4   judgment of Hybrid's willfulness, I'm not going to jump ahead.
5   I realize saying "ahead" in the context of this case sounds
6   kind of silly but I'm not going to jump ahead to requiring the
7   depositions of officers of these large retailers without some
8   shred of evidence that there might be something there.
9           So, if neither of you really recalls the document
10  requests that were propounded on the retailers, I am going to
11  direct Mr. Zarin to -- actually, you know, what?  No.
12  Mr. Zarin has a lot on his plate.
13          Mr. Rosenberg, because Hybrid is indemnifying the
14  retailers, your firm basically provided the discovery
15  objections and responses, right, to all of the document
16  requests, can you provide with a copy to Mr. Zarin to the Court
17  all of your discovery responses and objections that you
18  provided on behalf of the retailers.
19          MR. ROSENBERG:  In this phase of the case or both
20  phases?
21          THE COURT:  I'm trying to see --
22          MR. ROSENBERG:  In both the first phase I believe that
23  discovery propounded on all 30 retailers and the second phase
24  was just the eight.
25          THE COURT:  I guess I'm really trying to see if there

1      check.
2              THE COURT:  OK.  You'll have to point to the orders.
3      I get that they might not be clear but you'll have to point to
4      the orders.
5              MR. ZARIN:  By orders, you know there was a lot of
6      hearings and so Judge Stein and your Honor ruled from the
7      bench.  So, there wouldn't be a written order necessarily.  You
8      have transcripts in my case.
9              So, again, this goes back to not every motion that can
10     be made should be made, right?  You want to consider the cost
11     and benefits of every course of action that you are going to
12     take and consider whether it's worth your while.  And that goes
13     back to the principle that I started this whole discussion on
14     willfulness on which is if there is a finding of no willfulness
15     on Hybrid's part or if there can't be a finding that there was
16     willfulness on Hybrid's part, how would discovery from those
17     seven retailers get you anywhere other than running up a big
18     legal bill?
19             MR. ZARIN:  Well, a couple points.  The discovery, the
20     testimony of those seven retailers I believe would likely
21     reflect upon Hybrid Promotions' willfulness itself because
22     those witnesses could testify about what Hybrid Promotions told
23     them.
24             THE COURT:  Again, you are not going to get that if
25     you ask for documents reflecting or relating to communications

1   with Hybrid from those retailers and you didn't get them or you
2   didn't pursue.  Likewise, if you ask for similar, like, if you
3   ask Hybrid, what did you tell the retailers, give us every
4   document where you told the retailers about this lawsuit or
5   anybody related to the Hybrid marks at issue here and either
6   nothing was produced or something was produced, take a look at
7   what was produced and consider whether that supports or doesn't
8   support getting depositions from those individuals.  Again,
9   look very carefully at Rule 26.
10          MR. ZARIN:  OK.  The other point is that with respect
11  to orders, I know because I've tried in the past to get hearing
12  transcripts from some of the early hearings that Judge Stein
13  held and there were none because the recording device had not
14  been working.
15          THE COURT:  This is why we have a court reporter.
16          MR. ZARIN:  That was a problem for me.  So, there were
17  times when I, I know that I remember something occurring at one
18  of those hearings but there is no way I can prove it because
19  there was no transcript.  I'm putting that out there because
20  I'm not saying anything about a particular issue.
21          THE COURT:  OK.
22          MR. ZARIN:  Just for clarity then, me and
23  Mr. Rosenberg are going to discuss these issues and whether or
24  not I want to file a motion to compel.  We're going to write a
25  joint letter to the Court by January --

1            THE COURT:  I was going to give you until February 21.

2            MR. ZARIN:  We'll talk by the 31st of January.

3            THE COURT:  I'm not going to micromanage when you talk

4   or how you talk but I want a joint status letter by

5   February 21st on how you wish to proceed on this issue.

6            MR. ZARIN:  Your Honor is holding off on deciding

7   whether or not defendants can file a motion for summary

8   judgment --

9            THE COURT:  They can file whatever motion they want to

10  file.  I can enter a schedule which I guess I will do now.

11  That motion has not been referred to me and I truly thank Judge

12  Stein for what he has done in the past but I can put you on the

13  schedule.

14           How much time would you need?

15           MR. ROSENBERG:  February 21st, is that a Monday?

16           THE COURT:  The Friday of presidents' week.  The 28th?

17           MR. ROSENBERG:  The 28th.

18           MR. ZARIN:  If I file a motion to compel and the Court

19  grants it, then I would be able to take these depositions.  The

20  testimony that comes out of those depositions will most likely

21  impact my response to that summary judgment motion.  So, I

22  would submit that that motion should be filed after the motion

23  to compel and the depositions maybe.

24           THE COURT:  I think the point here is this is

25  defendant's motion, right.  They believe they have enough at