```
                        UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK

In re:                               :

THE FASHION EXCHANGE, LLC,           :
                                           Docket #14cv1254
                Plaintiff,           :     1:14-cv-01254-SHS-OTW

        - against -                  :

HYBRID PROMOTIONS, LLC,              :   New York, New York
                                         November 17, 2017
                Defendant.           :

-------------------------------:

                        PROCEEDINGS BEFORE
                   THE HONORABLE SIDNEY STEIN
               UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For Plaintiff:            ZARIN & ASSOCIATES P.C.
                          BY:  SCOTT ZARIN, ESQ.
                          244 West 102nd Street, #3B
                          New York, New York 10025
                          (212) 580-3131


For Defendant:            TARTER KRINSKY & DROGIN LLP
                          BY:  MARK JON ROSENBERG, ESQ.
                          1350 Broadway
                          New York, New York 10018
                          (212) 216-8000




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

```
 1                                                          6
 2              THE COURT:   All right.  Go ahead.
 3              MR. ZARIN:   And they are -- I'll just recite
 4    them briefly.  Strength of the marks, similarity of the
 5    marks --
 6              THE COURT:   You talking about Polaroid?
 7              MR. ZARIN:   Yeah, Polaroid.
 8              THE COURT:   Got it.  Next?
 9              MR. ZARIN:   My point is that a number of those
10    factors, namely the proximity of the products in the
11    marketplace, whether there has been actual confusion,
12    whether there's a bridging of the gap, whether the
13    defendants acted in good faith and --
14              THE COURT:   You're going through the factors.
15    I understand the factors.
16              MR. ZARIN:   Okay.  Those factors require
17    discovery of the retailer defendants.  They require
18    documentary evidence to be produced.  They require
19    deposition to be taken based upon that documentary
20    evidence.  So unless plaintiffs can take that discovery,
21    there can't be a --
22              THE COURT:   But isn't a lot of that going to be
23    in the hands of the primary defendants, one, and, two, you
24    don't need to question all 31 defendants for that.  It
25    seems to me, first of all, we could take a sample.
```

Secondly, we could narrow the requests.  You don't give me
a comfort by -- it's been a while, but my recollection is
when I stayed discovery it was because of the breadth of
your original requests to these retailers.

MR. ZARIN:  Well, to -- to --

THE COURT:  In other words, it certainly
supported the view of the defendants, that you were out to
cause the retailers a fair amount of trouble for very
little, very little gain for the plaintiffs.

MR. ZARIN:  Well I don't believe that's so but,
you know, that's a matter of judgment Your Honor can make.
But with respect to your two points, the first point is --
that he made was that there is a, you know, it could be a
sample.  Well there's -- what the Court seems to be saying
is that we can take -- it's true that some of their
discovery would be in the hands of the primary defendants
Hybrid Promotions.  But that discovery may or may not be
biased.

In other words, it may be contradicted by this
evidence that's in the possession of the retailer
defendants, either testimonial evidence or documentary
evidence.  So it's only fair to plaintiffs that they'd be
able take the discovery of the retailer defendants to see
whether there's any contradiction between what those

8

1

2  retailers say or the documents that they produce, and the

3  evidence that the primary defendants produce.  I mean,

4  that's largely at trial, you know, at any trial, there's

5  the right of one party to introduce evidence that

6  contradicts evidence that's produced by the other party.

7  And if here, if only retailer -- only the primarily

8  defendants are permitted to produce evidence, then we as

9  the plaintiffs will have no ability to mostly likely to

10 contradict that evidence with other evidence.

11         THE COURT:   I'm not saying -- I'm not taking

12 the position that the only evidence you're going to get is

13 against the primary -- is by asking questions for the

14 primary defendants.  But some of the answers you're

15 seeking are going to be in the hands of the primary

16 defendant.  And more importantly, I guess, is that I

17 really don't understand the value of your deposing and

18 asking voluminous document demands against 31 of the --

19 including the largest retailers in the United States.

20         MR. ZARIN:   Well with respect to depositions, I

21 can't know what depositions I need to take until I receive

22 documents.  With respect to documents, for example, actual

23 confusion.  Actual confusion is, you know, whether or not

24 there was any evidence that somebody, a consumer, was

25 confused into believing that the plaintiff's product was

9

1  the defendant's product.

2        Now, it is entirely possible, in fact it's
3  probable, that the primary defendants Hybrid Promotions
4  will not have that evidence.  That if a consumer
5  complained or a purchaser complained, they would be
6  complaining to the retailer.  So unless I request every
7  single retailer to produce documents related to actual
8  confusion, I can't know whether there was any actual
9  confusion.  If I take, for example, the evidence from 10
10  of those retailers, but not 31 of those retailers, it may
11  be that those 10 did not receive any complaints or where
12  there was no confusion.  But the other 1 or 2 or 10 of the
13  other 21 might have.  And I can't --

14        THE COURT:   What about -- so your having the
15  ability to take a representative sample or a selected
16  sample that you and the defendant get together and choose?
17  I'm going to give you full opportunity; I always have.

18        MR. ROSENBERG:   Okay.  I just want to correct
19  something for Your Honor.

20        THE COURT:   Yes.

21        MR. ROSENBERG:   In the first phase of the case
22  there was discovery of actual confusion that Mr. Zarin and
23  the plaintiff served document requests and interrogatories
24  on this very issue.  That was one of the limited issues,

```
 1                                                         10
 2  that discovery gets all 31 retailers were permitted to go
 3  forward.
 4          THE COURT:   And did I allow there to be
 5  responses to that?
 6          MR. ROSENBERG:   Yes.
 7          THE COURT:   There was a stay at some point.
 8          MR. ROSENBERG:   Yes, we responded to
 9  interrogatories and produced documents.  The answer was
10  there was none, not documents, relevant documents, were
11  found and no one, none of the retailers was aware of any
12  instances of actual confusion --
13          THE COURT:   But wait just a moment.  Let me
14  make sure I understand you.  Are you telling me that at
15  the beginning of the case, the plaintiff asked document
16  demands, sent out document demands, and you say
17  interrogatories, is that correct?
18          MR. ROSENBERG:   Yes, Your Honor, on these --
19          THE COURT:   To all 31 defendants on the issue
20  of likelihood of confusion?
21          MR. ROSENBERG:   Actual confusion.
22          THE COURT:   Of actual confusion, sorry.
23          MR. ROSENBERG:   Yes, Your Honor.
24          THE COURT:   And that you're telling me those
25  were responded to?
```

```
 1
 2              THE COURT:   On actual confusion.
 3              MR. ZARIN:   On actual confusion, right.
 4              THE COURT:   And your adversary is rigorously
 5   shaking his head no.  So the record will show whether, you
 6   know, what exactly is there.
 7              MR. ROSENBERG:   I can easily send Mr. Zarin
 8   some samples of interrogatory responses and document
 9   responses where those issues is addressed.
10              THE COURT:   Please do that.
11              MR. ROSENBERG:   Okay.  But he should have them,
12   but I'll send them when I get back to the office.
13              MR. ZARIN:   I appreciate that.  And okay, if I
14   could make another point, though, with respect to the
15   other likelihood of confusion factor --
16              THE COURT:   Yes.
17              MR. ZARIN:   -- there are other factors, such as
18   the proximity of the products, for example.  The
19   likelihood of --
20              THE COURT:   You mean if they're sold together
21   is a physical proximity or proximity in marketing?  What
22   is the proximity?
23              MR. ZARIN:   Proximity means the proximity in
24   the marketing -- in the venues that they're sold in and
25   proximity of the products of themselves.  In other words -
```

```
 1                                                          17

 2 -

 3           THE COURT:   On the shelves.

 4           MR. ZARIN:   No, not physical proximity, meaning

 5 on the shelves.

 6           THE COURT:   All right.

 7           MR. ZARIN:   But meaning the types of products

 8 meaning, you know, if my clients sold T-shirts and

 9 defendants sold pants, you know, how likely is it that one

10 of the -- either the plaintiff or defendant will leap to

11 start to sell the other type of products or similar types

12 of products.

13           Now in order to determine if that's the case

14 with respect to retailer defendants, I need to make

15 requests and find out whether retailer defendants intend

16 to sell the same products as plaintiff is selling.  And

17 it's true that primary defendants, meaning Hybrid

18 Promotions, can tell me that, can tell plaintiffs that,

19 except why would I -- they -- it's in their interest to be

20 not forthcoming in this respect.  And so to find out the

21 truth, I would need to propound document requests with

22 respect to the sales of the specific products that were

23 made by each of the retailer defendants or else I don't

24 know that.  So again, taking a sample --

25           THE COURT:   They would know what their sales
```

```
 1                                                    18
 2  were to each of the retailer defendants.
 3           MR. ZARIN:   Again, I believe that plaintiffs
 4  are entitled to gather evidence from all the defendants,
 5  the retailer defendants and primary defendants, to know
 6  whether the evidence that the primary defendants will be
 7  producing is in fact correct, or whether they're
 8  withholding documents, or being in some other way not
 9  scrupulously truthful.
10           THE COURT:   Okay.  What about what I was
11  thinking of, and that is rather than go to 31 of the
12  largest retailers in the United States, a limited number
13  of document demands and interrogatories to eliminate the
14  number of retailer defendants, a sampling process or a
15  random.
16           MR. ZARIN:   I understand, Your Honor.  Again, I
17  think that the problem is the same.  If the random sample
18  is to 10 of 31 and those 10, you know, the documents
19  produced by those 10 of 31 are in sync with the documents
20  produced by the primary defendants, that will support the
21  primary defendant's allegations.  But it may be that the
22  other 21 retailer defendants have contradictory documents,
23  and we won't know that.
24           THE COURT:   Yes, but there's such a thing as
25  proportionality under the new rules.
```

19

1

2          MR. ZARIN:   Well it's proportionality of any

3   given defendant.   In other words, you know, it may be --

4          THE COURT:   No, there are plenty of cases that

5   it can be proportionality between defendants as well.

6   What about -- and I'm trying to get a consensus here,

7   which I think is a full Zarin, but I'm trying something

8   along the lines of you get to select, or the two of you

9   get to choose, which of the retailer defendants the

10  discovery will go against.

11         MR. ZARIN:   Again, I would object on the ground

12  that it's going to, it's potentially going to leave out

13  and prevent discovery of conceivably contradictory

14  evidence from retailer defendants but --

15         THE COURT:   No, no, we're only talking about

16  discovery at this point, although the discovery from

17  retailer defendants.

18         MR. ZARIN:   No, I'm saying they could leave out

19  -- if --

20         THE COURT:   Well if there are stones unturned,

21  yes.   But in the context of this case, and 31 retailer

22  defendants, look.   What you did, is you named every major

23  retailer in the United States and some I didn't even know

24  about.   I don't know that there was a basis for doing so

25  and I'm concerned about that.   So what I'm trying to do is

```
 1                                                    20
 2  reverse the burden on those entities to try and find a way
 3  through that will give you what you need without letting
 4  you tie up people in the types of discovery that I
 5  remembered initially, which I thought were overbroad.
 6          MR. ZARIN:   Well I'm not sure, Your Honor, how
 7  much of a burden it is on these defendants.  I mean if
 8  it's in fact the case, as defendant's counsel alleges,
 9  that there are not such documents which, you know, are
10  responsive then it's not burdensome.  You know, but --
11          THE COURT:   No, but if now understand what both
12  of you were telling me a few moments ago, the only
13  discovery that went forward went to actual confusion.  I
14  think that's what Mr. Rosenberg was saying, it was the
15  answer to that, that Mr. Rosenberg I think was saying
16  there were no documents.  Isn't that right, Mr. Rosenberg?
17          MR. ROSENBERG:   Yes, Your Honor.
18          THE COURT:   He wasn't speaking to what I now am
19  told were document demands that did not go forward.
20          MR. ROSENBERG:   Through.
21          THE COURT:   So in other words, I guess what I'm
22  saying in a convoluted fashion or perhaps confusing
23  fashion, is that there may be documents that go to the
24  other Polaroid factors.  It's not that he's saying there
25  are no documents, period.
```

1                                                           21

2              MR. ZARIN:   Yes, and I agree.  There may very

3   well be documents that go to the other Polaroid factors.

4   But my point is that if we choose a random sample of

5   retailer defendants, let's say 10 out of 31, and the other

6   21 have some documents, but the 10 that we choose do not,

7   then --

8              THE COURT:   That's why that may be -- that'll

9   be ameliorated by either you choosing a certain number or

10  the two of you getting together, and again hope springs

11  eternal.  But perhaps you can agree on a selection.  I

12  think what you're telling me, Mr. Zarin, and I hope I'm

13  not backing you into this position.  I need to hear that

14  it is your position.  You want full discovery against 31

15  of the largest retailer defendants in the United States.

16             MR. ZARIN:   I would like that, Your Honor, but

17  I'm also telling you that --

18             THE COURT:   In the context of a case where some

19  of the claims of your client are difficult, but that'll be

20  up to a jury.

21             MR. ZARIN:   I am saying that, Your Honor, but

22  what I'm also saying is that I don't believe that the

23  discovery that's necessary relating to likelihood of

24  confusion is burdensome, is unduly burdensome, on these

25  retailers.

1                                                                22

2              THE COURT:   Okay.  I think I now understand

3    your position.  The position, Mr. Rosenberg, of Mr. Zarin

4    as he wants to depose and ask document demands of the 31

5    retailer defendants, and he thinks anything less than that

6    would not be appropriate.

7              MR. ZARIN:   Well let me make a proposal, and

8    this is just off the top of my head right now.  What I

9    would -- if plaintiffs can propound all the document

10   requests that they'd already propounded.  I mean, their

11   responses are due shortly, to all the retailer defendants

12   --

13             THE COURT:   Is this a new set?  You said the

14   responses are due shortly.  I don't have --

15             MR. ZARIN:   No, you don't.

16             THE COURT:   -- new document demands.

17             MR. ZARIN:   No.

18             THE COURT:   Hand them up.

19             MR. ZARIN:   They're just to the retailer

20   defendants, not to the primary defendants, which I

21   propounded another set to.

22             THE COURT:   You're saying there's another set

23   to the primary defendants?

24             MR. ZARIN:   Yes.

25             THE COURT:   Okay.  Let me take a look at it.

```
 1                                                      23
 2  Old Navy, Lord & Taylor, JCPenney, BJ's, Walmart, Kohl's,
 3  Macy's, Dillard's, Nordstrom, Sears, Marshalls, Dollar
 4  General, Target.  I don't think you left out anybody.
 5  Maybe that was purposeful.  Let me look.  Foot Locker,
 6  Forever 21, Gap.  No, I'm just not going to allow this.
 7  JCPenney, Lord & Taylor, BJ's.  I think I mentioned BJ's
 8  and Walmart and Kohl's and Macy's.  Urban Outfitters.
 9  Well the first date actually looks like they're the same
10  document demand but just for different trademarks.  Is
11  that what you were doing?
12            MR. ZARIN:   Yes, there are different
13  trademarks.
14            THE COURT:   It could've been simplified.
15            MR. ZARIN:   Well if I could just speak to that
16  issue --
17            THE COURT:   No, let me finish reading.  You're
18  really making it look much larger than it is by separating
19  out each mark into a separate question.
20            MR. ZARIN:   I did that, but it's important for
21  a reason I'll explain, Your Honor, if you want me to.
22            (Pause in proceeding on the record.)
23            THE COURT:   All right.  Go ahead.
24            MR. ZARIN:   Okay, Your Honor.  You bring up a
25  very important point which is the different trademarks.
```

24

1

2  At the outset of this case the original complaint only

3  alleged infringement related to the trademark, defendant

4  Hybrid's trademark, Hybrid, just the word Hybrid.

5          Subsequently during discovery, late in

6  discovery, plaintiff discovered that there were other

7  trademarks that defendant was selling under, too.  Those

8  trademarks are as you see in the document requests --

9  Hybrid Ts, Hybrid Apparel and Hybrid Gems.  Now I moved, I

10  think with the consent of defendants, to add those claims

11  related to those other three trademarks as well, and no

12  discovery related to any likelihood of confusion factor,

13  including actual confusion, was conducted related to those

14  other three trademarks.  So these new document requests

15  that I have propounded, both with respect to primary

16  defendants and retailer defendants, request documents

17  relating to any possible actual confusion and related to

18  the other Polaroid factors with respect to these other

19  three trademarks.

20          So to the extent that previously we had been

21  talking about there being past document requests that

22  related to actual confusion, to the extent that was true,

23  it was only related to the Hybrid trademark and not Hybrid

24  Ts, Hybrid Apparel and Hybrid Gems.  So that's the point I

25  would make with respect to that.

```
 1                                                                25
 2            Now if I could just go a little bit further and
 3  say I understand the Court's concern about voluminous
 4  discovery against retailer defendants.  I disagree with
 5  that, but I understand it.
 6            THE COURT:  And it's also not as if you're
 7  asking it against John's Department Store.  You're asking
 8  it against Old Navy, or JCPenney or BJ's.  Presumably,
 9  they have to search hundreds if not more locations for all
10  this information.
11            MR. ZARIN:  Well I don't know where they'd have
12  to search.  Defendants would have more knowledge of that
13  than I would.  But what I was going to say is in order to
14  limit that to some extent, limit the possibility of that
15  being a burden on the retailer defendants, which I don't
16  think there is.  But if the Court were to believe that to
17  be the case, I would propose rather than a random sample
18  of defendants, I would -- retailer defendants -- to
19  propound discovery against, I would propose that
20  plaintiffs be able to propound discovery requests, as they
21  already have, as Your Honor sees in front of you, against
22  document requests and interrogatories to all retailers.
23            And once we receive the responses to the
24  document requests, to the extent that there are documents
25  produced by any of the retailers, plaintiffs be permitted
```

```
 1                                                    26
 2  to take depositions of those particular retailers.  And if
 3  there are no documents responsive to the relevant document
 4  requests to any given retailer, then plaintiffs under
 5  those circumstances not be permitted to take depositions
 6  of those retailers because there would be no cause to do
 7  so.  So that would limit significantly the number of
 8  depositions and the amount of discovery against the
 9  retailer defendants.
10          THE COURT:   I'm not sure I understand that
11  because, for example, the number of your series in the 30s
12  are documents limited to purchase orders and invoices that
13  reflect the costs incurred.  If any of them sold any of
14  the products they'd have responsive, they'd have things
15  responsive to those.  And then under your theory, you'd be
16  taking their depositions.
17          MR. ZARIN:   Well that raises another issue,
18  Your Honor, and that is those document requests relate to
19  two things.  They relate to damages, number one.  And
20  number two, they relate to the Polaroid factor of strength
21  of the mark.  And if they relate to strength of the mark,
22  because the strength of the mark depends upon the volume
23  of sales.
24          And so to the extent that those documents, they
25  are relevant documents.  I would be willing to allow those
```

27

1

2  documents with respect to sales to each of the retailer

3  defendants to be produced by only primary defendants,

4  because it's in their best interest to produce documents

5  which suggest a higher volume rather than a lower volume.

6  So, you know, the incentive is for them to be honest with

7  respect to that factor, but not necessarily with respect

8  to the other ones.  So that would eliminate that issue

9  that Your Honor is talking about.

10          THE COURT:   For what category of questions?

11  Actual sales.

12          MR. ZARIN:   For actual sales, yeah.

13          THE COURT:   Then why do you say that it's in

14  the primary defendant's interest to keep those numbers

15  high?

16          MR. ZARIN:   Because in order for a trademark to

17  be strong, the more sales there are the stronger is a mark

18  is.  So it's in primary defendant's --

19          THE COURT:   No, I understand.  I understand.

20  All right.  Let me hear from the defendants.

21          MR. ROSENBERG:   Your Honor, I --

22          THE COURT:   I must say one thing that

23  ameliorates the position that I've been taking, taking as

24  you represent off of the defendants, both the primary and

25  the retailers, so you are able to assist them in

1
2    responding to these -- to any discovery demands that go
3    out.
4              MR. ROSENBERG:   Correct.  Ideally, I believe
5    there's no discovery necessary on any of the retailers at
6    this point.  That Mr. Zarin said that -- yes, I agree that
7    the initial discovery -- let's go back.  To the issue of
8    actual confusion, yes, the initial discovery responses
9    were limited to the Hybrid mark.  However, the information
10   provided was not limited to the Hybrid mark.  It was any
11   product sold by my client.  So, you know, we could -- that
12   is not an issue.  They search for any confusion.  There
13   was no confusion between the two parties, end of story on
14   that issue.
15             The information that the plaintiff is seeking
16   from the retailers really is not necessary for the issue
17   of a likelihood of confusion analysis.  Hybrid has all the
18   information in its possession, custody and control than it
19   is necessary here.  It knows its demographics, it knows
20   its sales, it knows its channels of trade.
21             The plaintiff's position here is based on the
22   supposition that the primary defendants are either going
23   to make improper document -- destroy documents, not
24   produce documents, or provide false testimony.  But
25   there's Rule 11, there's Rules 37 to course inherent power

29

1

2  to sanction if that happens.  We don't need to bother 31

3  retailers on the off chance that Mr. Zarin believes that

4  my client may lie.

5           THE COURT:   So what is it that -- what areas do

6  you think that your primary clients have all the

7  information?

8           MR. ROSENBERG:   The sales channels, target

9  market --

10          THE COURT:   Just a moment.  Yes.

11          MR. ROSENBERG:   Just pull out the factors, Your

12 Honor.  Sales, demographics, similarity of the trademarks,

13 proximity of the products, actual confusion has been done

14 already, bridging the gap.

15          THE COURT:   So you're just going through the

16 Polaroid facts.

17          MR. ROSENBERG:   They have every single --

18          THE COURT:    You're saying they have everything.

19          MR. ROSENBERG:   They have everything.  With

20 respect to advertising, which recovers some of the

21 requests, Your Honor, go back to 1999 in a case file in

22 2014, even though the statute of limitations for trademark

23 claims is six years.  Advertising, the retailers don't

24 typically organize their back advertising; they're thrown

25 in boxes.  So the retailers will have to go through years

```
1                                                      30
2   of advertising to pluck out the Hybrid ads in their own
3   advertising.  The records are --
4        THE COURT:   Well I don't know that for a fact,
5   I mean, but I understand what you're telling me.
6        MR. ROSENBERG:   Having spoken to the retailers
7   about this issue, I can represent that was repeatedly told
8   to me, that the advertising in particular is disorganized.
9   The records, it's not so simple.  It just, it's not a
10  simple computer run, is what I'm saying.  I understand
11  Your Honor would like to allow some discovery of the
12  retailers.
13       And here's what I propose.  Either a -- I think
14  five should be enough and within the 31 retailers, they
15  really -- and why they're using number five, is about five
16  types of retailers.  There's discount retailers such as
17  Walmart --
18       THE COURT:   Just a moment.
19       MR. ROSENBERG:   And I'm using these names as
20  examples.  There's multiple retailers in each of these
21  categories.  So there's discount retailers, such as
22  Walmart;  there's high-end retailers, such as Nordstrom;
23  There are midlevel retailers, such as Target.
24       THE COURT:   Just a moment.  You're saying
25  Nordstrom is high-end, is that it?
```

2                MR. ROSENBERG:   Correct.

3                THE COURT:   And there's discount, which you're

4    saying is Walmart.  Is high-end, which you're saying

5    Nordstrom.  What else?

6                MR. ROSENBERG:   Midlevel, such as Target; and

7    deep-discounting -- I'm making up this term -- such as The

8    Dollar Store; and specialty retailers, such as Spencer

9    Gifts.  That perhaps plaintiff can choose a retailer in

10   each of these categories and take very limited discovery

11   on certain issues from those retailers.

12               THE COURT:   Are these recognized categories or

13   are these Rosenberg categories?

14               MR. ROSENBERG:   I believe other than deep-

15   discounted -- there is a name for it.  I just don't know

16   the exact name.  These are all recognized categories.

17               MR. ZARIN:   Your Honor, if I may?

18               THE COURT:   Yes.

19               MR. ZARIN:   First of all, with respect to the

20   different trademarks, as defendant's counsel has admitted,

21   the responses -- the requests were only related to Hybrid,

22   the trademark Hybrid, not any of the other trademarks.

23   And he says that --

24               THE COURT:   No, no, but we're beyond that, I

25   think, because what we're talking about now is what

```
 1                                                        32
 2   discovery can be taken against how many retailers.  If
 3   discovery has taken place so far, I mean already, as for
 4   the Hybrid mark, nobody's going to be taking that
 5   discovery over again.  Whatever was asked, was asked.  Go
 6   ahead.
 7          MR. ZARIN:   I know, I understand that.  But I'm
 8   just making the point that with respect to those other
 9   three trademarks, no discovery with respect to actual --
10          THE COURT:   I understand that.
11          MR. ZARIN:   And, well, Mr. Rosenberg
12   represented that his clients, plural, search for, you
13   know, responsive documents related to all four trademarks.
14   And I had no indication that that's the case.  There is no
15   writing --
16          THE COURT:   I understand that.  That can be
17   worked out.  You'll either get a legal representation
18   supported under Rule 11 or not.  That's -- I'm not worried
19   about that.  Go ahead.
20          MR. ZARIN:   With respect to the five types of
21   retailers, I don't know that that's the case, but even if
22   we assume that it is, it still does not address the issue
23   that I had raised before.  Which is that a random sampling
24   is not necessarily going to catch all the contradictory
25   evidence that might be out there that --
```

THE COURT:  Well maybe we're using improper terms.  I don't think we can get a random sample in any statistically random sense out of 31.  So we're not -- I'm not talking about a statistically random sample.  I'm talking about not making a federal case out of this federal case.  Put in other ways, there's proportionality that I'm going to allow the discovery that's proportional to the claims here, okay?

I'm not going to have you sitting in the offices of, again, every major retailer in the United States and demanding dozens of -- categories of document demands from them, and depositions of all of them.  You're going to have a selected number of them that you're going to look at.  I repeat, I don't think it's statistically random but it's going to be, under the proportionality rules, an appropriate amount of discovery.

MR. ZARIN:  I understand and I was only making the point again that if it's not all 31, I think it is, retailer --

THE COURT:  Yes, assume it's not all 31.  Go ahead.

MR. ZARIN:  Then even if it were -- and again I'm just, for argument sake, I'm presenting this to the Court.

1

2          THE COURT:   Yes.

3          MR. ZARIN:   Even if it were 30 and those 30

4    retailer defendants had no documents, let's say

5    hypothetically, and the last one, the 31st retailer

6    defendant did have documents, plaintiffs would be deprived

7    of the right to demonstrate for example that there was a

8    lack of proximity, let's say, of the products between the

9    31st and the plaintiff.

10          So you know, in some significant way, plaintiffs

11   would be disadvantaged in presenting they're likelihood of

12   confusion case if not permitted to take at least document

13   evidence against all 31 defendants.  And then again, as I

14   said before, if there are 29 let's say, retailer defendant

15   who produce no documents in response to the document

16   request, then we would be willing to forego taking the

17   depositions of those 29, and just take the depositions of

18   the relevant people of the remaining people who did

19   produce responsive documents.  That would significantly

20   limit the discovery, the necessity of retailer defendants

21   to spend time through their witnesses appearing at

22   depositions, and the amount of time that would be required

23   remaining to take the discovery that's necessary before

24   trial.

25          MR. ROSENBERG:   Well but the problem is as soon

35

1
2   as you ask for sales documents, every single retailer is
3   going to produce a document, which opens the door to 31
4   depositions.
5           MR. ZARIN:   No, but I already --
6           THE COURT:   Wait, wait, just one at a time.  Go
7   ahead, sir.
8           MR. ROSENBERG:   So that doesn't work.  In fact,
9   the sales documents really are not relevant at this stage
10  of the case as to the retailers and as to the likelihood
11  of confusion.  Again, I --
12          MR. ZARIN:   Can I say --
13          THE COURT:   Just a moment.
14          MR. ROSENBERG:   What's -- Hybrid has all the
15  information as to what types of goods and to whom it's
16  sold, whether it sold T-shirts, sweatshirts, pants, jeans,
17  glasses, it knows that.  It has the information.  So if it
18  takes how much money the retailers made selling this
19  apparel is not relevant to the likelihood of confusion.
20  And again, as I said, sales information will trigger a
21  document response from everybody, which opens the door
22  wide open.
23          Now Mr. Zarin wants us to confirm that there was
24  no -- that there was a full search and there was no actual
25  confusion found.  I'm willing to do that from all 31, as

1

2  to actual confusion because that was asked in the

3  beginning of the case.  Under 26(e) my clients have an

4  ongoing obligation to supplement their responses.  So I

5  don't have a problem with the actual confusion issues.

6  But anything beyond that from the retailers is not

7  necessary.  And it's not going to accomplish anything

8  other than inconvenience.

9           And that's exactly what the plaintiff wants to

10 do.  And as Your Honor recognized, is to inconvenience the

11 retailers to put pressure on the primary defendant to

12 settle and the retailer to settle.  And that's what I'm

13 trying to avoid, because this is simply just a litigation

14 strategy and not an effort to really obtain evidence.

15 Hybrid Promotions has the evidence and can produce it.

16           MR. ZARIN:   Okay.  Again, to reiterate a couple

17 points here, with respect to actual confusion and

18 documents, the document requests propounded by plaintiffs

19 at the outset of the case did not request actual confusion

20 documents related to any other trademark, other than

21 Hybrid.

22           THE COURT:   No, but the representation of Mr.

23 Rosenberg is that he will produce those for you on behalf

24 of all of his clients.

25           MR. ZARIN:   Okay.  That's fine but that was

37

1
2  part of my document request.  But with respect to Mr.

3  Rosenberg's other point, I had just indicated to the Court

4  that I would be satisfied requesting sales documents only

5  from Hybrid Promotions because those documents go to

6  strengthen of the mark, and Hybrid Promotions has the

7  incentive to produce the accurate figure.  So there would

8  not be responsive documents related to sales necessary to

9  be produced by all the retailer defendants.  So that is

10 not an issue.

11         So we're not talking about documents related to

12 sale, we're talking about documents related to marketing

13 activities more so.

14         MR. ROSENBERG:  But every retailer engages in

15 marketing activity.  It's just a vicious cycle.

16         THE COURT:  Wait just a second.  But I think

17 the marketing they're asking for is the marketing of the

18 particular products bearing those marks, is that right,

19 plaintiff?

20         MR. ZARIN:  Correct, yes.

21         MR. ROSENBERG:  And that's extremely onerous to

22 find the other --

23         THE COURT:  Wait, wait, wait.  Are you,

24 plaintiff, are you seeking marketing for -- marketing

25 plans for Walmart for jeans and hoodies, is that?  What

```
 1                                                      38
 2  are some of the products?  Jeans and hoodies, what else?
 3            MR. ZARIN:   T-shirts, shorts --
 4            THE COURT:   T-shirts, okay.  Okay.   Are you
 5  asking for their marketing plans for T-shirts, shorts,
 6  hoodies, in general or are you asking for marketing plans
 7  for T-shirts, shorts and hoodies of the marks at issue
 8  here?
 9            MR. ZARIN:   Only the marks at issue.
10            THE COURT:   That should be easier for you, Mr.
11  Rosenberg.
12            MR. ROSENBERG:   But assumably, every single --
13            THE COURT:   My guess is they're not going to
14  have any.  Do you think they mark up -- they have
15  marketing plans to sell Hybrid mark this and Hybrid mark
16  that?
17            MR. ROSENBERG:   I would presume that each buyer
18  for each store who does some type of marketing fund is
19  they don't go in to just purchasing blindly; they're
20  following a plan.  That they're making, you know, hundreds
21  of thousands of dollars of orders in some cases.  That
22  it's not just -- there's a process behind it.
23            THE COURT:   So what is wrong with the plaintiff
24  obtaining those plans if they are indeed for the marks at
25  issue?
```

```
 1                                                    39
 2             MR. ZARIN:   And other advertising material.
 3             THE COURT:   Pardon me?  What?
 4             MR. ROSENBERG:   I can see --
 5             THE COURT:   No, Mr. Zarin, what did you just
 6   say?
 7             MR. ZARIN:   Marketing documents -- not only
 8   marketing plans, but advertising material as well.  So if
 9   for example --
10             THE COURT:   Well put aside advertising, because
11   it may be that they throw a newspaper, as in box; I don't
12   know.  If that's the case, that would be more difficult.
13             MR. ZARIN:   But that's important for our case.
14             MR. ROSENBERG:   You may be looking for boxes in
15   warehouses in that case throughout the country.  You know,
16   that's the other option.  Here's the warehouse; know
17   yourself out.
18             MR. ZARIN:   Well that's another issue, but --
19             THE COURT:   We're going backwards, gentlemen.
20             MR. ROSENBERG:   So if the marketing plans, yes,
21   I can see producing things if the marketing plans
22   specifically relate to Hybrid.  But again, does it need to
23   be through all 31 retailers.  Again it goes back to
24   proportionality.
25             THE COURT:   Just a moment.
```

```
 1                                                      40
 2              (Pause in proceeding on the record.)
 3              THE COURT:   All right.  As I see what we've
 4    done, the primary defendants will make a representation as
 5    to documents concerning actual confusion for all the marks
 6    under oath.  I can be from a, obviously, from a client but
 7    it has to be under oath.  The plaintiff has agreed that
 8    the primary defendants have all the relevant sales
 9    documents that exist.  We've also said that in terms of
10    marketing plans for the specific marks, those can be
11    sought from the retailer defendants.  The number of
12    retailer defendants, we'll talk about in a moment.  What
13    other categories do we have to go -- deal with, Mr. Zarin?
14              MR. ZARIN:   Well marketing is a general term
15    and does not only include marketing plans, but includes
16    advertising materials, too, which we just mentioned which
17    is important for plaintiffs to ascertain.
18              THE COURT:   All right.  Advertising materials,
19    all right?  And again, if they're in boxes, then we'll
20    figure out how to approach it.  What other categories are
21    there?
22              MR. ZARIN:   Well it's important to know which
23    types of products of defendant's, the primary defendant's
24    products, each of the retailer defendants is selling.
25              THE COURT:   We have that in sales documents.
```

```
 1                                                       41
 2   That you'll get.  It'll tell you there are 627 girls tees
 3   that I would assume 247 hoodies, black; 829,000 grey.
 4            MR. ZARIN:  Well the other issue is one of the
 5   Polaroid factors is sophistication of consumers.  And Mr.
 6   Rosenberg just mentioned that there are different
 7   hierarchies, different types, of retailers.
 8            THE COURT:  Yes.
 9            MR. ZARIN:  And there are different types of
10   consumers who --
11            THE COURT:  Yes.  Did you ask for studies of
12   customer confusion in your document demands?
13            MR. ZARIN:  I did, yes.
14            THE COURT:  Pardon me?
15            MR. ZARIN:  I did in my document request.
16            THE COURT:  All right.
17            MR. ROSENBERG:  Your Honor, I think Mr. Zarin
18   was asking --
19            THE COURT:  Consumer confusion studies.
20            MR. ROSENBERG:  No, not confusion studies.  I
21   guess more demographic studies, is that?
22            MR. ZARIN:  Demographic studies.
23            MR. ROSENBERG:  Yeah.
24            THE COURT:  What are those?  What are we
25   talking about?
```

42

```
1
2          MR. ROSENBERG:   Who exactly is each retailer
3   sell it to, whether it's a higher-end customer, lower-end
4   customer, something like that.
5          THE COURT:   But are you talking about studies
6   for these, the products bearing these particular marks?  I
7   take it that's what you're doing, Mr. Zarin.
8          MR. ZARIN:   Well, no, that would be more broad
9   because, you know, well it would be that, but it would
10  also be studies related to who shops at these stores.  I
11  mean --
12         THE COURT:   Well doesn't Walmart -- I assume, I
13  don't know -- I assume Walmart has either, you know, a
14  staff of 428 people or 67 outside agencies doing that 24
15  hours a day, 365 days a year.  Of course I'm making this
16  up but you get the idea.  Walmart doesn't say, oh, let's
17  decide to sell T-shirts in Hackensack, New Jersey.  I
18  would think, given their success, they base it on
19  extensive and continuous demographic information.  And I
20  assume they pull it from, you know, who knows where out of
21  the internet.  Do you want that?
22         MR. ZARIN:   I would like that, yeah, and maybe
23  if I could just illustrate it.
24         THE COURT:   Well you can't -- this case doesn't
25  bear that kind of discovery, one.  And Mr. Rosenberg has
```

1                                                                     43
2   hit upon an alternative defense strategy which used to be
3   used when people did paper discovery.  And that's, we're
4   giving you the keys to these eight warehouses,
5   congratulations.  I mean that's what you're talking about
6   here.
7           MR. ZARIN:  Well let --
8           MR. ROSENBERG:  The other -- oh, sorry.
9           THE COURT:  Go ahead, Mr. Rosenberg.
10          MR. ROSENBERG:  I actually had discussions with
11  my client about this, is Hybrid knows who it's selling to.
12  That it has to design apparel at certain price points
13  given the customer base.  It has that information.  If
14  it's selling to low-end customer it can't sell expensive
15  apparel.  It knows who its customer base is and does for
16  each store because that's what it sells, and that's how it
17  prices.
18          So before we go asking the information from the
19  retailers, why don't we start with the primary defendants
20  who likely have most, if not all, of this information.
21  Because you can't run a successful company if you don't
22  know who the ultimate customer is, and they do know,
23  because that's how they operate their business.
24          MR. ZARIN:  Well I'm -- I'm --
25          THE COURT:  What I want to do is get this

1

2  discovery so that we know where we're going right now

3  rather than have staged discoveries.  Because I want to

4  set an end to discovery and I want to set a trial date.

5          MR. ZARIN:   I mean, another important point

6  here I suppose is --

7          THE COURT:   What about the demographic studies

8  that you're talking about, which I call confusion studies?

9  What Mr. Rosenberg is saying is his client should have

10 those because they're the ones who are concerned about who

11 they target.  That's what his point is.

12         MR. ZARIN:   My response to that is who they

13 target and might be different from who they actually sell

14 to.  And the only people who know who they actually sell

15 to are the retailer defendants.  And if I could just do an

16 illustration, I know --

17         THE COURT:   Well if the primary defendants

18 don't know who they're selling to, they're not going to be

19 around for very long.

20         MR. ZARIN:   Maybe not but I don't -- they have

21 projections or expectations as to who they sell to but --

22         THE COURT:   And you're going to get sales

23 figures so you know if they've been met or not, or

24 exceeded.

25         MR. ZARIN:   Right.  But I'm not talking about

```
 1                                                              45
 2   sales figures.  I'm talking about the Polaroid factor of
 3   sophistication of consumers.  And under that factor, if
 4   consumers are more sophisticated, then it's less likely
 5   they'll be confused.  If they're less sophisticated, it's
 6   more likely they'll be confused.
 7            And what's important, the facts underlying that
 8   which show whether or not under the law a consumer is more
 9   or less sophisticated is the price point.  So, you know,
10   we need to -- plaintiffs need to know that price that each
11   of these products are being sold to the ultimate consumer.
12   And the retailer defendants are the only ones who have
13   this information.  The primary --
14            THE COURT:  Is that so, Mr. Rosenberg?
15            MR. ZARIN:  The -- the --
16            THE COURT:  Is that so?  Just a moment.  Is
17   that so?
18            MR. ROSENBERG:  The answer is I don't know.
19   Although, although, Your Honor, in many situations Hybrid
20   affix the price tag onto the garments before they're even
21   shipped.  So there is some price information that my
22   client has.
23            MR. ZARIN:  Yes, there's a price information
24   manufactured, you know, suggested retail price, but--
25            MR. ROSENBERG:  No, no, no.  It's the actual
```

1

2  label that's scanned in at the register.

3        MR. ZARIN:   But the retailer itself might very

4  well, and often does, sell those garments or those

5  products at a different price from the one that's on the -

6  - on the ticket --

7        THE COURT:   Right.  So they can put a slash

8  through their tag and sell it for less.

9        MR. ZARIN:   Exactly.  Which I'm sure Your Honor

10 is aware of, right.  So that information is critical.  You

11 know, in discount stores or when something is on sale,

12 products are often sold at a much lower price point, in

13 which case, the consumer's a different consumer.  And

14 unless the retailer defendants provide that information,

15 any information related to that that the primary

16 defendants might provide is not relevant, because it's

17 only going to be an expected sale price, and it's going to

18 be the price that they sold the garment to the retailer

19 at, not the price that the retailer sold to the consumer

20 at, which is the important factor here.

21        THE COURT:   All right.  This is what we're

22 going to do.  The primary defendants are going to give

23 that representation as to actual confusion.  The primary

24 defendants are going to give the sales information to the

25 plaintiffs.  I think that's the only place we have an

47

agreement, is that right?  Is there any agreement on

anything else?  Marketing plans, you say no.  Advertising

materials, no.  Consumer demographic studies, no.  So the

primary defendants will do that.

I'm going to allow discovery -- you're going to

have to narrow these requests -- but I'm going to allow

discovery against eight of retailer defendants.  The

parties will agree on which eight, or if they can't agree,

they will each select four.  I suggest what you do is, you

agree on eight.  The broader document demands, but not

including actual confusion or sales documents, can go

through to the retailer defendants.  But again you should

be able to narrow down this.  And it seems to me that if

the four the plaintiff chooses happens to be the four

largest ones, it certainly suggests that you are very

interested in closing problems for putting pressure on the

primary defendants rather than seek, truly seeking,

representative discovery.

I'm going to -- you should get out the -- talk

to each other, agree on the eight retailers within -- well

Thanksgiving is coming up -- by December 1.  Get your

requests out within the next week.  You'll have three

months for that discovery, November -- December 1, January

1, February 1, March 1.  Everything but depositions to be