UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE FASHION EXCHANGE LLC,

     Plaintiff,

  v.

HYBRID PROMOTIONS, LLC, *ET AL.*,

     Defendants.

14-Cv-1254 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

 Defendants Hybrid Promotions, Jarrod Dogan, Gavin Dogan, Jeff Caldwell, (collectively, the "Hybrid defendants"), and defendant retailers ("Retailer Defendants") have moved for summary judgment against plaintiff The Fashion Exchange with respect to its claims for monetary relief and common law unfair competition. That motion is granted.

### I. Statement of Facts

 Plaintiff The Fashion Exchange ("TFE") is a New York company founded by its former principal Jack Saadia. It asserts common law rights in the marks HYBRID and HYBRID & COMPANY (the "Asserted Marks") through a series of New York companies owned, operated, and managed by Saadia and his brothers: Young Girl Inc., YG Designs, and USA Design.

 Young Girl, YG Designs, and USA Design each allegedly sold apparel under the Asserted Marks prior to the founding of TFE in 2006. (Plaintiff's Local Civil Rule 56.1 Statement ("Pl. 56.1") ¶¶ 4–5, ECF No. 160.) By 2008, TFE had issued an exclusive license to Fame Fashion House, Inc. ("Fame Fashion") to manufacture, market, and sell apparel under the Asserted Marks. (*Id.* ¶ 7.) At that point, TFE ceased selling apparel. (Plaintiff's Memorandum in Opposition ("Pl. Mem."), ECF No. 381 at 1.) It is undisputed that TFE and Fame Fashion have been commonly owned by Saadia family members and that the two entities share a computer network. (Defendants' Local Civil Rule 56.1 Statement ("Defs. 56.1") ¶ 3, ECF No. 379; see Plaintiff's Counter Statement to Defs. 56.1 ("Pl. 56.1 Counter Stmt.") ¶ 3, ECF No. 381.)

 In 2009, the U.S. Patent and Trademark Office ("USPTO") granted TFE's application to trademark "HYBRID & COMPANY." (Declaration of Jack Saadia dated Oct. 27, 2015, "Saadia Decl.", ECF No. 172 Ex. Y.) TFE now owns U.S. Trademark Reg. No. 3,723,220, which states that "the mark consists of the word 'HYBRID' with decorative elements consisting of features and fanciful scrolls together with '& COMPANY' in smaller and less

1

prominent stylization." (Declaration of Scott Zarin dated Sept. 28, 2015, ECF No. 160 Ex. N.) Neither TFE nor any of its predecessors policed use of the HYBRID and HYBRID & COMPANY trademarks. (Dep. of Jack Saadia dated May 12, 2015 at 46:23–47, 54:19–23, 60:2–5, 66:5–13, 76:7–77:4, Ex. 1 to Decl. of Mark Rosenberg dated Sept. 28, 2015 "Rosenberg Decl.", ECF No. 156; Dep. of Mark Hanono dated May 13, 2015 at 48:17–21, 48:25–49:5, Ex. 2 to Rosenberg Decl.)

Defendant Jarrod Dogan founded Hybrid Promotions ("Hybrid") in 1998 and began doing business under the mark HYBRID PROMOTIONS. (Defs. 56.1 ¶ 4.) In 1999, Hybrid began placing the HYBRID mark on the neck labels of its apparel, and has also used the marks HYBRID PROMOTIONS, HYBRID TEES, HYBRID APPAREL, AND HYBRID JEM. (*Id.* ¶ 8.) Despite engaging in the practice of so-called "comp shopping" in order to discover competitors, Hybrid did not become aware of TFE or its registered trademark in HYBRID & COMPANY until 2011, when, while applying to register its HYBRID mark, it received an office action from the USPTO concerning TFE's trademark. (*Id.* ¶¶ 15–16.)

The USPTO ultimately denied Hybrid's trademark application on the ground that there was a likelihood of confusion with plaintiff's "HYBRID & COMPANY" mark. (Pl. 56.1 ¶ 49.) Plaintiff first learned of defendants' use of its Asserted Marks in November 2011 after Hybrid filed a petition with the USPTO to cancel plaintiff's registered trademark. (Saadia Decl. ¶¶ 92–94.) Hybrid's Petition for Cancellation alleged that plaintiff began using its HYBRID mark after Hybrid's use of the mark; in response, plaintiff asserted that "[Hybrid] has no right to the generic descriptive term Hybrid" and that, due to the word's genericity, "[TFE] cannot be considered to have committed anything other than 'nominal fair use' of the word Hybrid which has been in the public domain for years." (Defs. 56.1 ¶¶ 28–29.)

## II.   Procedural Posture

Plaintiff brought this action in 2014 seeking judgment against Hybrid declaring that plaintiff has common law rights in the trademarks HYBRID and HYBRID & COMPANY and that its trademark registration for HYBRID & COMPANY is valid and enforceable. (Second Amended Complaint ("SAC") at ¶ 74, ECF No. 134.) The complaint further alleges against the Hybrid defendants and more than two dozen Retailer Defendants claims of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and unfair competition in violation of both the Lanham Act, 15 U.S.C. § 1125(a) and New York common law. (SAC ¶¶ 78–98.) TFE seeks declaratory and injunctive relief, as well as monetary relief including its own damages and defendants' profits. (*Id.* at 22–24.) In response Hybrid asserted the affirmative defense of laches as well as five counterclaims, including for a declaratory judgment as to the superiority of its rights in the Asserted Marks, for unfair competition pursuant to the Lanham Act and New York law, and for cancellation of TFE's HYBRID & COMPANY trademark registration. (Answer, ECF No. 135.)

The Court later stayed all discovery against the Retailer Defendants except on the issue of confusion. (ECF No. 90.) The Court subsequently enlarged that stay to cover essentially all discovery against the Retailer Defendants. (See ECF Nos. 95–99, 110.) The Court also limited summary judgment motions to the issues of ownership of rights and laches – threshold issues whose resolution, if in defendants' favor, would remove any need for further discovery. (ECF No. 110.) TFE and the Hybrid defendants filed cross-motions for summary judgment in September of 2015. (ECF Nos. 153, 158.)

This Court subsequently denied defendants' motion for summary judgment and denied in part plaintiff's cross motion for partial summary judgment. (ECF No. 200; Transcript at ECF No. 202-1.) The Court also denied defendants' motion for reconsideration of that decision and directed the parties to submit "an agreed-upon schedule for the remainder of this litigation." (ECF No. 205 at 3.) The parties failed to reach agreement and submitted separate proposals, followed by a flurry of letters disputing various aspects of the record in this case. (ECF No. 208, 209, 211, 212, 213.) In November of 2017, the Court directed the Hybrid defendants to respond to plaintiff's discovery requests as to actual confusion and sales relating to the Retailer Defendants, and allowed limited discovery as to the remaining issues against eight Retailer Defendants chosen by the parties. (Order, ECF No. 215.) The Court later referred this action to Magistrate Judge Ona T. Wang for general pretrial purposes, including discovery. (ECF No. 229.) Pursuant to that referral, Judge Wang directed on August 2, 2018 that all fact discovery shall be completed by November 1, 2018. (Order, ECF No. 248.)

Following her August 2 order, Judge Wang handled additional contentious discovery disputes between the parties. She denied TFE's motion to compel depositions of Jarrod Dogan, Gavin Dogan, and Hybrid's former CFO Brad Shapiro, finding that plaintiff lacked any justification for 1) demanding additional 30(b)(6) depositions when it had already taken two; 2) having failed to depose Shapiro and Gavin Dogan before the close of fact discovery; or 3) deposing Jarrod Dogan a second time. (Order, ECF No. 305.) Later, TFE sought to compel the depositions of certain Retailer Defendants, (see ECF No. 290), but withdrew that motion after a pretrial conference in which Judge Wang made clear her doubts as to the Retailer Defendants' willfulness and her subsequent unwillingness to allow discovery as to those defendants on that issue. (Tr. at 32, ECF No. 374; Letter of Scott Zarin, Esq., dated February 21, 2020, ECF No. 371.) Ultimately, Judge Wang issued two separate orders imposing sanctions on TFE for obstructing defendants' deposition of Jack Saadia and for the spoliation of documents that allegedly would have substantiated plaintiff's damages claims. (ECF Nos. 333, 348; see also this Court's Opinion & Order, ECF No. 408.)

Specifically, TFE was sanctioned for failing to preserve records to substantiate its claims for monetary relief. (See ECF No. 348 at 2–5.) Despite a court order, TFE had failed totally to produce financial documents relating to royalties received from its licensee Fame Fashion; instead, it produced only a single quarter-page summary of its royalty income, which

3

provided conclusory figures with no indication as to how they were calculated or their source. (See *id.* at 2–3.) As an alternative to trying to determine what royalties, if any, were received by TFE, defendants sought production of TFE's tax returns, which Judge Wang granted. (Tr. at 8:17–25, 26:17–21, ECF No. 264.) Plaintiff produced unsigned tax returns with no indication that they were ever filed. (ECF No. 304 at 13.) Moreover, TFE's alleged royalty figures represented in the summary sheet and the income figures listed on TFE's unsigned tax returns were not the same. (ECF No. 270.) The only reason TFE gave for the loss of its financial documents was that the hard drive and server TFE and Fame Fashion shared were "fried" in some unknown fashion. (Deposition of Mark Hanono dated January 29, 2019, Tr. 11:2–12:6, ECF No. 345-1.)

In March of 2020, the Hybrid defendants and Retailer Defendants moved for partial summary judgment as to plaintiff's claims for damages and defendants' profits and as to its claim of unfair competition.

### III. Applicable Law

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005); *see also M.T. v. City of N.Y.*, 325 F. Supp. 3d 487, 494 (S.D.N.Y. 2018). To defeat a motion for summary judgment, the non-movant "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998); *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 627 (S.D.N.Y. 2010). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### IV. Discussion

#### A. *Plaintiff's Damages*

The Lanham Act permits a successful plaintiff to recover "subject to the principles of equity, . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The plaintiff's own damages "may include compensation for (1) lost sales or revenue; (2) sales at lower prices; (3) harm to market reputation; or (4) expenditures to prevent, correct, or mitigate consumer confusion." *Int'l*

*Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996), *abrogated on other grounds by Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

i. *Actual Confusion*

"[I]t is well settled that in order for a Lanham Act plaintiff to receive an award of *damages* the plaintiff must prove either actual consumer confusion or deception resulting from the violation, . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992), *abrogated on other grounds by Romag Fasteners*, 140 S. Ct. at 1497 (internal quotation marks and citations omitted). "This requirement must be distinguished from cases brought under the Lanham Act in which only injunctive relief is sought; in those cases the plaintiff need only prove a likelihood of confusion among consumers." *Res. Dev., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).

"Actual confusion" for purpose of the Lanham Act is "consumer confusion that enables a seller to pass off his goods as the goods of another." *The Sports Auth. v. Prime Hospitality Corp.*, 89 F.3d 955, 963 (2d Cir. 1996) (internal citations omitted). TFE must show that Hybrid's use of its marks "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Id.* "In many cases, confusion may be demonstrated by statistical survey evidence showing that actual consumers were confused by the entrance of defendant's mark in the marketplace. While such evidence is not absolutely required, . . . '[t]he lack of survey evidence counts against finding actual confusion.'" *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 523 (S.D.N.Y. 2008) (quoting *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994)). "[T]he relevant confusion is that which affects the purchasing and selling of the goods or services in question." *W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 574 (2d Cir. 1993) (*W.W.W.*) (internal quotation marks and citations omitted). In other words, proof of actual confusion should demonstrate a "potential or actual effect on consumers' purchasing decisions." *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991).

Here, TFE has blatantly misread circuit precedent to argue that actual confusion is not a necessary prerequisite to a damages award under the Lanham Act. (See Pl. Mem. at 6–7.) In *4 Pillar Dynasty LLC v. New York & Co., Inc.*, upon which TFE relies to make this specious argument, the United States Court of Appeals for the Second Circuit rejected defendants' argument that actual confusion was required proof for an award of *profits*. *See* 933 F.3d 202, 211–12 (2d Cir. 2019). In relying on *4 Pillar*, plaintiff has conflated the standards for awarding the plaintiff its own damages and for the disgorgement of the infringer's profits. *4 Pillar* did not discuss, and does not disturb, the "well settled" law that an award of damages requires proof of actual confusion. *See George Basch*, 968 F.2d at 1537.

5

Nonetheless, TFE claims that it has produced evidence of actual confusion between Hybrid's marks and the Asserted Marks. (Defs. 56.1 ¶ 86; Pl. 56.1 ¶ 86.) As proof of actual confusion, it cites to 1) a few emails showing alleged retailer-buyers mistaking TFE for Hybrid and 2) the testimony of Jack Saadia and TFE shareholder Mark Hanono that they believed there was confusion. (Declaration of Scott Zarin dated April 13, 2020, "Zarin Decl.", ECF No. 382 Exs. 4, 5, 7, 8, 28.) The evidence TFE puts forth as to actual confusion is largely inadmissible hearsay, such as Hanono's testimony that, during a phone call with a buyer from TJ Maxx, the buyer had expressed that she had "worked with the Hybrid in California," presumably referring to defendant Hybrid. (Zarin Decl. Ex. 4 at 53). None of TFE's buyers testified, rendering Saadia's and Hanono's deposition testimony about those buyers' alleged confusion inadmissible hearsay.

Another buyer sent an email to a Hybrid employee and apparently inadvertently copied a Fame Fashion employee; this simply does not demonstrate a mistaken purchase of Hybrid goods by an intended Fame Fashion buyer. (Zarin Decl. Ex. 28 at FE46508.) In a separate email thread, a different buyer expresses confusion at the fact that Fame Fashion refers to itself as Hybrid. (*Id.* at FE46498–FE46500.) Taken in the light most favorable to plaintiff, these emails show at the very most some general confusion as to the distinction between TFE and Hybrid, but certainly are not indicative that the buyers were actually confused in regard to "the purchasing . . . of the goods . . . in question." *W.W.W.*, 984 F.2d at 574.

The small number of buyers reflected in the emails and the fact that those buyers did not testify as to whether they were confused militate against a finding of actual confusion. In *Trustees of Columbia University v. Columbia/HCA Healthcare Corporation,* several of the plaintiff's employees testified that third parties thought that defendant's advertisements were connected to the plaintiff. 964 F. Supp. 733, 746–47 (S.D.N.Y. 1997). The district court held that that evidence was de minimis, finding "a difference between isolated expressions of momentary confusion," on one hand, and "confusion that leads to actual purchasing decisions" on the other. *Id.* at 747. Here too, TFE's evidence is de minimis, and does not rise to the level of actual confusion needed to merit a damages award.

Even if plaintiff were able to put forth more examples of general confusion among its buyers, it would likely nevertheless fail to meet the threshold of actual confusion. In *Lang*, plaintiff received approximately four hundred calls and many letters from persons attempting to contact defendant's magazine. 949 F.3d at 582. There, the Second Circuit found that such evidence "obviously reflect[ed] some sort of confusion," *id.*, but nevertheless had "no reason to believe that confusion . . . could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Id.* at 583. There, as here, plaintiff's evidence "fail[s] to demonstrate a genuine issue as to any material actual confusion." *Id.*

6

### ii. *Intent to Deceive*

Although TFE has not demonstrated actual confusion, it may nevertheless be entitled to a rebuttable presumption of confusion if it can show that Hybrid had an intent to deceive. Actual confusion can be inferred if a plaintiff sufficiently shows "that a defendant has intentionally set out to deceive the public." *Res. Dev.*, 926 F.2d at 140. The Second Circuit explained the rationale for the rule as follows: "[g]iven the 'egregious nature' of deliberate conduct, 'we see no need to require [plaintiff] to provide consumer surveys or reaction tests in order to prove entitlement to damages.'" *Id.* (quoting *PPX Ent., Inc. v. Audiofidelity Ent., Inc.*, 818 F.2d 266, 272 (2d Cir. 1987)).

Here, TFE has not offered a *scintilla* of evidence that Hybrid intended to deceive consumers through the use of the Asserted Marks. Accordingly, it is not entitled to a presumption that actual confusion occurred.

### iii. *Reasonable Royalty*

"A plaintiff in a trademark action may recover a 'reasonable royalty' under the heading of actual damages," and here, defendants seek to preclude TFE from doing so. *Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253 (S.D.N.Y. 2012). "Use of a royalty theory of recovery is generally limited to situations where the parties have had a trademark licensing relationship that facilitates computation of the reasonable royalty." *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04-cv-7203, 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006). However, courts may grant reasonable royalty damages even in the absence of a licensing agreement between the parties "if the evidence provides a sufficiently reliable basis from which to calculate them." *Gucci Am.*, 858 F. Supp. 2d at 253. Here, there is no basis whatsoever on which to calculate a reasonable royalty.

First, there is no licensing agreement between TFE and Hybrid from which to calculate a reasonable royalty. Nor is there a "sufficiently reliable basis" from which such an award could be calculated. As set forth above, the sole evidence TFE provides to substantiate its damages claim is a vague, unsupported, bare bones summary of what it claims as royalties and unsigned tax returns. TFE's grossly negligent failure to preserve any documents to substantiate its damages claim along with the speculative nature as to the tax returns' filing status do not suggest reliability in the slightest. Accordingly, summary judgment is granted in favor of Hybrid on the issue of reasonable royalty.

### iv. *As applied to the Retailer Defendants*

The sheer lack of evidence to substantiate an actual damages claim against Hybrid applies with equal force to the Retailer Defendants, whose connection to the alleged infringement here is even more attenuated than that of Hybrid. Accordingly, summary judgment is also granted in favor of the Retailer Defendants as to plaintiff's claim for damages.

B. *Defendants' Profits*

Other than a damages award, a plaintiff whose marks have been infringed may be awarded the defendant's profits as a remedy. 15 U.S.C. § 1117(a). The cornerstone of a profits award is the infringing defendant's mental state. *George Basch Co.*, 968 F.2d at 1540. While willfulness is no longer a prerequisite to an award of the defendant's profits for violations of 15 U.S.C. § 1125(a), "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020). Plaintiff has set forth no evidence, as to defendants' mental state or as to other equitable factors,[1] upon which this Court could justify an award of profits.

TFE has patently failed to demonstrate that Hybrid or the Retailer Defendants acted willfully. A finding of willfulness requires plaintiff to show either "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard . . . or willful blindness." *4 Pillar*, 933 F.3d at 210–11 (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). Plaintiff's sole assertions that Hybrid acted willfully are as follows: 1) in 1999, when Hybrid first began to use the Asserted Marks, it failed to investigate whether the HYBRID mark and its variations were already in use; and 2) upon the USPTO's rejection of Hybrid's trademark applications, it failed to investigate and continued to use the Asserted Marks and a third party's mark. (Pl. Mem. at 17–18.) To start, the "failure to perform an official trade mark search does not, standing alone, prove that [Hybrid] acted in bad faith." *Savin Corp. v. Savin Corp.*, 391 F.3d 439, 460 (2d Cir. 2004) (internal citations and quotation marks omitted). "Nor is prior knowledge of a senior user's trade mark inconsistent with good faith." *Id.* None of the allegations support the notion that Hybrid or the Retailers acted in bad faith. In fact, TFE admits that the only evidence that Hybrid attempted to deceive consumers is the fact that Hybrid uses the HYBRID Mark. (Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14.)

---

[1] Following *Romag Fasteners'* dispensation with the requirement of willfulness for recovery of profits on § 1125(a) claims, on remand the district court applied a series of "principles of equity" factors enumerated in *4 Pillar*, 933 F.3d at 214, and reiterated that "defendant's mental state must be considered in this analysis." *See Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10CV1827 (JBA), 2021 WL 1700695, at *2 (D. Conn. Apr. 29, 2021). Other district courts have since followed suit. *See Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17 CIV 1927, 2020 WL 3564485, at *5-6 (S.D.N.Y. July 1, 2020), *report and recommendation adopted sub nom. Experience Hendrix, LLC v. Hendrix*, No. 17 CIV 1927, 2020 WL 4261818 (S.D.N.Y. July 24, 2020); *Chanel, Inc. v. WGACA, LLC, et al.*, No. 18-cv-2253, 2022 WL 902931, at *13 (S.D.N.Y. March 28, 2022). Although defendants did not discuss the application of these factors in their briefing, this Court has duly considered them and finds that their application, in light of the lack of evidence submitted by plaintiff, presents no issues of material fact as to whether an award of defendants' profits to plaintiff is justified.

8

Given the lack of evidence supporting a profits award, summary judgment is granted in favor of defendants on the issue of profits disgorgement.[2]

### C. Unfair Competition

A claim of unfair competition under New York common law "requires a showing of bad faith or intent." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 699 F. Supp. 2d 585, 598 (S.D.N.Y. 2010), *amended on reconsideration* (Mar. 23, 2010); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("Genesee's state law claim of unfair competition is not viable without a showing of bad faith.") (emphasis removed). Use of a counterfeit mark creates a presumption of bad faith only when the defendant is aware of the counterfeiting. *BKK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 523 (S.D.N.Y. 2019). Because the Court has found that TFE has failed to show bad faith on the part of defendants here, its unfair competition claim must fail. Accordingly, summary judgment is granted in favor of Hybrid and the Retailer Defendants as to plaintiff's unfair competition claim.

## V.   Conclusion

For the foregoing reasons, defendants' motion for partial summary judgment on TFE's claims for monetary relief and unfair competition is GRANTED.

Dated:   New York, New York
         September 29, 2022

SO ORDERED:

*[signature]*

Sidney H. Stein, U.S.D.J.

---

[2] While conceding that fact discovery has long closed, TFE urges the Court to defer deciding whether it is entitled to a profits award until the close of expert discovery. (Pl. Mem. at 12.) What plaintiff does not recognize, however, is that there was never a basis for expert discovery on this issue: there is essentially no evidence that defendants acted willfully, or more broadly, to substantiate an award of their profits at all.