UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE FASHION EXCHANGE LLC,

                Plaintiff,

      v.

HYBRID PROMOTIONS, LLC, *ET AL.*,

                Defendants.

14-Cv-1254 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiff The Fashion Exchange ("TFE") and Defendants Hybrid Promotions, Jarrod Dogan, Gavin Dogan, Jeff Caldwell, (collectively, "defendants") and 32 defendant retailers have cross-moved for summary judgment with respect to the issue of likelihood of confusion between plaintiff's "HYBRID" and "HYBRID & COMPANY" marks (the "Asserted Marks"), and defendants' "HYBRID," "HYBRID TEES," and "HYBRID APPAREL" marks (the "HYBRID Marks"). Because this Court finds that the use of defendants' marks is not likely to cause confusion with plaintiff's marks, plaintiff's motion for summary judgment is denied and defendants' motion is granted.

## I. BACKGROUND

### A. Facts

    Plaintiff The Fashion Exchange is a New York company founded by its former principal Jack Saadia. TFE asserts common law rights in the Asserted Marks through a series of New York companies owned, operated, and managed by Saadia and his brothers: Young Girl Inc., YG Designs, and USA Design. TFE also asserts its rights in the registered trademark HYBRID & COMPANY.

    Young Girl, YG Designs, and USA Design each allegedly sold apparel under the Asserted Marks prior to the founding of TFE in 2006, and as early as 1996. (Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶¶ 1–12, ECF No. 427.) By 2008, TFE had issued an exclusive license to Fame Fashion House, Inc. ("Fame Fashion") to manufacture, market, and sell apparel under the Asserted Marks. (*Id.* ¶¶ 16-18.) At that point, TFE ceased selling apparel under its marks. (ECF No. 381 at 1.)

    In December 2009, the U.S. Patent and Trademark Office ("PTO") granted TFE's application to trademark HYBRID & COMPANY. (Pl.'s 56.1 ¶ 61.) TFE now owns U.S. Trademark Reg. No. 3,723,220, which states that "the mark consists of the word 'HYBRID' with decorative elements consisting of features and fanciful scrolls together

1

with '& COMPANY' in smaller and less prominent stylization." (Declaration of Scott Zarin dated Sept. 28, 2015, ECF No. 161-25, Ex. N.) Neither TFE nor any of its predecessors policed use of the Asserted Marks at any time. (Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶ 131, ECF No. 452.)

Defendant Jarrod Dogan founded Hybrid Promotions in 1998 and began doing business under the mark HYBRID PROMOTIONS. (*Id.* ¶ 119.) In 1999, Hybrid Promotions allegedly began placing the HYBRID mark on the neck labels of its apparel. (*Id.* ¶ 120.) Since 1999, Hybrid Promotions has sold its goods through numerous national retailers. (*Id.* ¶ 39.) In addition to the HYBRID mark, Hybrid Promotions has used various other marks following its inception, including HYBRID PROMOTIONS, HYBRID TEES, HYBRID APPAREL, and HYBRID JEM. (*Id.* ¶ 120.)

TFE and Hybrid Promotions both sell clothing and, moreover, sell their clothing through similar channels, and have been doing so for approximately two decades. Both TFE and Hybrid Promotions have operated booths at MAGIC, a prominent fashion trade show conducted in Las Vegas, NV. (Pl.'s 56.1 ¶ 47; Defs.' 56.1 ¶ 118.) Apparel bearing plaintiff's Asserted Marks was exhibited at MAGIC starting in 1998 through 2016. (Pl.'s 56.1 ¶ 47.) Hybrid Promotions began similarly operating a booth at MAGIC in 2004 and has continued to increase its presence at MAGIC since then. (Defs.' 56.1 ¶ 118.) Moreover, TFE acknowledges that the mark HYBRID TEES was used by Hybrid Promotions sometime after April 2003. (Pl.'s 56.1 ¶¶ 31-33.) In addition, both TFE and Hybrid Promotions sell goods directly to consumers through storefronts on Amazon.com. Plaintiff alleges that it has sold apparel bearing the Asserted Marks through its Amazon storefront since 2014. (Pl.'s 56.1 ¶ 25.) Hybrid Promotions has likewise operated an Amazon storefront selling branded apparel, namely clothes bearing the HYBRID APPAREL mark, since at least May 2021. (Pl.'s 56.1 ¶ 103; Defs.' 56.1 ¶ 103.) TFE and Hybrid Promotions sell their apparel through some of the same retailers, including TJ Maxx, Macy's, JC Penney, Kohl's, Walmart, and Hot Topic. (Pl.'s 56.1 ¶ 20; Defs.' 56.1 ¶ 39.)

Despite engaging in the practice of so-called "comp shopping" in order to discover competitors, Hybrid Promotions did not become aware of TFE or its registered trademark in HYBRID & COMPANY until May 2011, when, after applying to register its HYBRID mark, it received an office action from the PTO concerning TFE's trademark in HYBRID & COMPANY. (Defs.' 56.1 ¶¶ 127, 129.)

Subsequently, in November 2011, Hybrid Promotions filed a petition with the PTO's Trademark Trial and Appeal Board ("TTAB") to cancel TFE's registered trademark in HYBRID & COMPANY. (Defs.' 56.1 ¶ 132.) It was at this time that TFE first learned of Hybrid Promotions' use of marks allegedly infringing upon its Asserted Marks. (*Id.*; ECF No. 457 ¶ 132.) Hybrid Promotions' Petition for Cancellation alleged

that TFE began using its HYBRID & COMPANY mark after defendants' use of the HYBRID mark. (Defs.' 56.1 ¶ 134.) In response, plaintiff asserted that "[Hybrid Promotions] has no right to the generic descriptive term Hybrid" and that "no reasonable person would think that [Hybrid Promotions'] goods or services are produced, endorsed, or otherwise affiliated with [TFE] or any of its subsidiaries" because the word "Hybrid" has existed in the public domain for years. (*Id.* ¶ 135.)

Later that month, Hybrid Promotions requested that the PTO suspend its application to register the mark HYBRID pending the TTAB's resolution of the cancellation proceeding. (Pl.'s 56.1 ¶ 68.) The PTO granted this request. (*Id.*; Declaration of Scott Zarin dated Aug. 19, 2022 ("Zarin Decl."), ECF Nos. 429-20; 429-21.) In a similar vein, in April 2014, TFE requested that the TTAB suspend the cancellation proceeding pending the result of this lawsuit. (TTAB No. 92054855, Dkt. No. 23.) The TTAB granted this request in May 2014. (TTAB No. 92054855, Dkt. No. 24.)

Despite the presence of these suspensions, the PTO issued a Final Office Action on June 4, 2022, in which it denied Hybrid Promotions' trademark application for the HYBRID mark on the ground that there was a likelihood of confusion with plaintiff's HYBRID & COMPANY mark. (Pl.'s 56.1 ¶ 69; Zarin Decl., ECF No. 429-22.) However, this PTO action was grounded upon the premise that the TTAB cancellation proceeding had concluded when, in fact, it had not. (Defs.' 56.1 ¶ 69; Zarin Decl., ECF No. 429-22.) Accordingly, the PTO issued a renewed suspension notice on October 28, 2022, noting that the denial in the June 4, 2022 action cannot be made final until the TTAB cancellation proceeding has been resolved. (Defs.' 56.1 ¶ 69; Declaration of Mark J. Rosenberg dated Dec. 23, 2022 ("Rosenberg Decl."), ECF No. 451-8, Ex. H.)

On September 3, 2021, Hybrid Promotions filed two intent-to-use applications with the PTO to register the mark HYBRID APPAREL for use on "apparel" and "online retail." (Pl.'s 56.1 ¶ 105; Zarin Decl., ECF Nos. 429-57; 429-58.) On June 1, 2022, the PTO, in two separate Nonfinal Office Actions, refused to register both these marks finding, *inter alia*, that a likelihood of confusion exists between goods with the mark HYBRID APPAREL and goods with TFE's mark HYBRID & COMPANY. (Pl.'s 56.1 ¶ 109; Zarin Decl., ECF Nos. 429-59; 429-60.) Both these actions have been suspended pending the resolution of the TTAB cancellation proceeding. (PTO No. 97012014, Dkt. No. 102360.0124T, Doc. No. 10; PTO No. 97012016, Dkt. No. 102360.0125T, Doc. No. 10.)

## B. Procedural Background

### 1. *Underlying Claims and Counterclaims*

TFE brought this action in 2014 seeking judgment against defendants declaring that plaintiff has common law rights in the trademarks HYBRID and HYBRID & COMPANY and that its trademark registration for HYBRID & COMPANY is valid and

3

enforceable. (Second Amended Complaint ("SAC") at ¶¶ 74-77, ECF No. 134.) The complaint further alleges against the defendants and nearly three dozen defendant retailers claims of trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and unfair competition in violation of both the Lanham Act, 15 U.S.C. § 1125(a), and New York common law. (SAC ¶¶ 78-98.) TFE seeks declaratory and injunctive relief, as well as monetary relief including its own damages and defendants' profits. (*Id.* at 22-24.) In response Hybrid asserted nine affirmative defenses—most notably the affirmative defense of laches—as well as five counterclaims, including for a declaratory judgment as to the superiority of its rights in the Asserted Marks, for unfair competition pursuant to the Lanham Act and New York law, and for cancellation of TFE's HYBRID & COMPANY trademark registration. (Answer, ECF No. 135.)

### 2. *Ownership and Laches*

On September 28, 2015, the parties cross-moved for summary judgment. Defendants sought 1) to bar plaintiff's claims on the grounds of laches, 2) a finding that defendants' rights in its HYBRID Marks are superior to plaintiff's rights in its Asserted Marks or in the alternative, that plaintiff, as a matter of law, could not establish superior trademark rights, and 3) dismissal of plaintiff's claims against all of the defendants. (ECF Nos. 153-54.) Plaintiff moved for partial summary judgment on the defendants' counterclaims, seeking findings in its favor that it did not commit fraud on the PTO and dismissing defendants' claims to ownership of HYBRID, HYBRID PROMOTIONS, and HYBRID TEES. (ECF Nos. 158-59.) Plaintiff did not challenge defendants' ownership of the HYBRID APPAREL and HYBRID JEM marks.

The Court subsequently denied defendants' motion on the record (ECF No. 200), as to its laches defense (ECF No. 202-1 at 10-17) and priority of ownership of plaintiff's marks (*id.* at 17-23), and held that issues of fact precluded summary judgment on whether "Hybrid" was an inherently distinctive term protectable under the Lanham Act (*id.* at 23-28). The Court also denied plaintiff's cross-motion for summary judgment, holding that there were genuine disputes of material fact in the record evidence such that plaintiff could not defeat defendants' counterclaim as to ownership of the marks on summary judgment. (*Id.* at 31-32.) The Court also determined that issues of material fact precluded summary judgment on plaintiff's claims that defendants abandoned the HYBRID and HYBRID TEES marks, but held that plaintiff had established defendants had abandoned the HYBRID PROMOTIONS mark. (*Id.* at 32-38.) Finally, the Court found there were issues of fact precluding summary judgment on defendants' claims that plaintiff defrauded the PTO. (*Id.* at 38-42.)

Plaintiff moved again for summary judgment in August 2022 in two separate filings, one on the issues of likelihood of confusion and liability (ECF No. 425), and the other styled as a "renewed motion" on ownership as well as defendants' laches defense

(ECF No. 423). Defendants moved to strike both motions. (ECF No. 430.) The Court imposed a stay on briefing for the summary judgment motions and requested plaintiff's response to defendants' motion to strike. (ECF No. 432.)

On December 30, 2022, the Court denied plaintiff's motion for summary judgment to the extent it was seeking judgment on the issue of laches, and granted defendant's motion to strike plaintiff's renewed motion for summary judgment on ownership, finding that the circumstances leading to its 2017 denial of plaintiff's motion for summary judgment on the same issue had not changed (ECF No. 454). The Court later affirmed those conclusions on a motion for reconsideration from plaintiff. (ECF No. 469.)

### 3. *Actual Confusion and Bad Faith*

In March of 2020, defendants moved for summary judgment on trademark infringement damages and plaintiff's unfair competition claim. (ECF No. 380.) This Court granted the motion in September 2022 (ECF No. 440) and denied plaintiff's motion for reconsideration in January 2023 (ECF No. 455). In so doing, the Court found as a matter of law that plaintiff was not entitled to damages because it had failed to present a genuine issue as to any material actual confusion and because it had failed to show that defendants intended to deceive consumers through the use of their marks. (ECF No. 440 at 5-7.) The Court also concluded that plaintiff was not entitled to defendants' profits because it had not demonstrated that defendants' use of the marks has been in bad faith or willful. (*Id.* at 8-9; *see also* ECF No. 455 at 2-3.) In so doing, the Court dismissed the claims to infringement damages against all the defendants including the retailers, and plaintiff's unfair competition claims.

### 4. *Likelihood of Confusion and Liability*

The Court now has before it plaintiff's August 2022 motion for summary judgment as to the issues of likelihood of confusion and liability (ECF No. 447) and defendants' cross-motion for summary judgment on those issues (ECF No. 450).

Specifically, plaintiff seeks a finding that defendants' marks—HYBRID, HYBRID TEES, and HYBRID APPAREL—are likely, as a matter of law, to be confused with its marks—HYBRID & COMPANY, for which it has a trademark registration, and HYBRID, for which it asserts it has common law rights. (ECF No. 425.) Plaintiff also seeks a finding of liability for defendants specifically with respect to the HYBRID APPAREL mark, and for defendant Jarrod Dogan. (*Id.*) Defendants, in their cross

5

motion, seek a finding that the marks to which defendants claim common law rights are *not* likely to be confused with plaintiff's.[1] (ECF No. 450.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When both sides move for summary judgment, courts "are required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). However, "[t]o defeat summary judgment . . . nonmoving parties . . . 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]" to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Likelihood of Confusion

The Lanham Act prohibits the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" where "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "To prevail in a trademark infringement action under the Lanham Act, a plaintiff must prove, in addition to protectability of the mark, 'a probability of confusion, not a mere possibility,' affecting 'numerous ordinary prudent purchasers.'" *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 383 (2d Cir. 2005). "To determine whether there is a likelihood of confusion, we apply the eight-factor *Polaroid* balancing test introduced by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961)." *Id.* at 384; *see also Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 144 (S.D.N.Y. 2022*), motion to certify appeal denied*, 2022 WL 3137131 (S.D.N.Y. Aug. 5, 2022). "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that

---

[1] As a preliminary matter, both parties argue that the other has taken a position on this motion inconsistent with its prior positions in this and other proceedings. This is largely true. However, the Court has discretion as to whether to apply the doctrine of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014). Because both plaintiff and defendants have reversed their positions and neither side has explicitly sought estoppel, no unfair advantage results to either if the Court simply credits the current positions of the parties.

the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Star Indus.*, 412 F.3d 373, 384 (2d Cir. 2005). "[N]o one factor is determinative and the *Polaroid* factors cannot be balanced according to a mathematical formula." *Malletier v. Dooney & Bourke*, 561 F. Supp. 2d 368, 390 (S.D.N.Y. 2008).

The Second Circuit is "one of three circuits, along with the Sixth and Federal Circuits, that consider likelihood of confusion to be a question of law." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 326 n.4 (2d Cir. 2020). "Summary judgment on a trademark infringement claim is appropriate where the *Polaroid* analysis reveals that 'undisputed evidence would lead to only one conclusion.'" *Dooney & Bourke*, 561 F. Supp. 2d at 389-90 (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). However, "[i]f a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996)).

### 1. First Polaroid Factor: The Strength of Plaintiff's Marks.

"The strength of a mark is determined by its tendency to uniquely identify the source of the product. This tendency is strong to the extent that the mark is distinctive, either inherently or by virtue of having acquired secondary meaning." *Star Indus.*, 412 F.3d at 384; *see also State St. Glob. Advisors Tr. Co. v. Visbal*, No. 19-Cv-1719 (GHW), 2023 WL 4053170, at *30 (S.D.N.Y. June 16, 2023) (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995)) ("The term 'strength' refers to a mark's 'tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.'"). "In gauging a mark's strength, a court must consider both the inherent distinctiveness of the mark and the mark's distinctiveness in the marketplace." *NES Baseball & Softball Facility, Inc. v. Ne. Angels Softball, LLC*, No. 22-Cv-9158 (NSR), 2022 WL 17370117, at *8 (S.D.N.Y. Dec. 2, 2022).

#### a. Plaintiff's marks are inherently distinctive.

"Marks are classified, in ascending order of strength, as '(1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful.'" *Star Indus.*, 412 F.3d at 384-85 (quoting *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001)). Suggestive marks are inherently distinctive, and "are not directly descriptive, but do suggest a quality or qualities of the product, through the use of 'imagination, thought and perception.'" *Id.* at 385 (quoting *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999)). "Descriptive marks are those consisting of words identifying qualities of the

product. They are not inherently distinctive, but are protectable provided they have acquired secondary meaning, which we sometimes refer to as 'acquired distinctiveness.'" *Id.* (quoting *TCPIP Holding*, 244 F.3d at 94).

Plaintiff's HYBRID & COMPANY mark is registered with the PTO, which did not require proof of secondary meaning for its registration. "Registration by the PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Capital Mgmt. v. Lane Capital Mgmt.*, 192 F.3d 337, 345 (2d Cir. 1999). The HYBRID & COMPANY mark is therefore presumed to be either suggestive or arbitrary, and thus inherently distinctive. Defendants have failed to rebut this presumption.

Plaintiff argues that its HYBRID mark, over which it asserts common law rights but which is not registered, is also inherently distinctive and not descriptive because "even where the PTO has not previously considered the particular mark at issue, courts may draw a measure of guidance from the way the agency has classified analogous marks." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 166 (2d Cir. 2016). Plaintiff cites to several third-party applicants who successfully sought to use the term "Hybrid" on apparel and were not denied on the basis that the marks were descriptive, nor required to disclaim the term. (Pl.'s 56.1 ¶¶ 110-17.) Defendants note that several of the registrations were cancelled, but two are active, and none were cancelled on the basis of a reversal of the PTO's finding of inherent distinctiveness; thus, TFE correctly notes that the cancellations of these marks have no bearing on the PTO's determination that "Hybrid" as applied to apparel is inherently distinctive. Defendants' only examples to the contrary are in contexts outside of apparel: one involves the PTO's refusal of registration of "Hybrid" to a company that produces vaporizers, because the primary products produced by the applicant were "vaporizers with hybrid functionality," making the term descriptive. (Rosenberg Decl., Ex. U at 14-15.) Similarly, the PTO found the term "Hybrid" descriptive where a shoe company purported to create multifunctional shoes, and therefore "the applied-for mark merely describe[d] a feature, purpose, and characteristic of applicant's goods." (ECF No. 459-4 at 3.) The PTO has not made similar findings as to the clothing categories disputed here.

The Court therefore finds that defendants have not rebutted the presumption created by the PTO's past registrations of HYBRID & COMPANY and other related "Hybrid" marks that "Hybrid" as applied to apparel is not descriptive, but rather inherently distinctive.

      b.   <u>Plaintiff's marks have not acquired distinctiveness in the marketplace</u>.

"[A]part from the inherent distinctiveness of the plaintiff's mark, the Court must also consider the distinctiveness of the mark in the marketplace." *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 158 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d

8

Cir. 2013). Thus, "[a]lthough a suggestive mark is entitled to protection without a showing of secondary meaning, 'suggestiveness is not necessarily dispositive of the issue of the strength of the mark' without a showing of secondary meaning." *Id.* (citing *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 581 (2d Cir. 1991)). "The burden is on the plaintiff to prove such market distinctiveness with reference to this Circuit's well-established secondary meaning factors: (1) advertising and promotional expenses; (2) consumer studies linking the mark to the source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *NES Baseball*, 2022 WL 17370117, at *8 (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987), *overruled on other grounds by Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 585 (2d Cir. 1993)).

Even viewing the facts in the light most favorable to plaintiff, TFE has not demonstrated a genuine issue of material fact as to its marks' acquired distinctiveness in the marketplace. Despite this Court's 2017 statement that "a reasonable jury could conclude that plaintiff's use of the 'hybrid' mark acquired secondary meaning," (ECF No. 202-1 at 26), plaintiff has presented zero credible evidence in the intervening years of *any* advertising and promotional expenses; *any* consumer studies linking either mark to the source; *any* unsolicited media coverage of the product; *any* attempts to plagiarize either mark; *any* exclusivity of either mark's use; and limited evidence of length of use and sales success.

First, with respect to advertising and promotional expenses, Marc Hanono, a former salesman for TFE and principal at Fame Fashion, testified that TFE provided retailers with a coop advertising allowance to be used to advertise apparel bearing the HYBRID & COMPANY trademark, and stated that those retailers used the allowance to advertise through circulars they created and distributed. (Declaration of Mark Hanono dated Aug. 19, 2022 ("Hanono Decl."), ECF No. 428 ¶ 10; *see also* Zarin Decl., ECF Nos. 429-6 at 42:25–44:6; 429-4 at 27:9–28:23.) However, as has been the case consistently throughout this litigation, TFE has failed to submit any evidence to support its contentions. The record contains no documentary evidence of advertising by plaintiff of this kind—neither an advertisement nor a circular, nor "purchase orders" with "automatic[] deductions for the co-op allowance or advertising allowance" (Zarin Decl., ECF No. 429-4 at 28:8–10)—has been produced despite repeated requests from defendants. (Defs.' 56.1 ¶ 23.) Although Hanono made vague references to "mailers where [they] printed out catalogs, sent it out to customers. Emails, line sheets[,]" as well as "photo shoot samples, either it's online or there is some print advertising" (Zarin Decl., ECF No. 429-4 at 27-28), and "PR companies, some paid magazine ads . . . printing marketing material, sending out flyers," (Zarin Decl., ECF No. 429-6 at 128-29), he could not recall any specifics whatsoever, and plaintiff has inexplicably produced

9

nothing to support these contentions. (*See* Rosenberg Decl. ¶ 44; *see also* Zarin Decl., ECF No. 429-3 at 38, where Saadia, TFE's former principal, similarly testified to sending out "thousands" of catalogs each quarter with no substantiation of that in this record.)

Hanono also testified that Fame Fashion advertises on Amazon, but the single document produced by TFE to support this contention is a spreadsheet labeled "Fame Fashion House LLC Advertising Exp From Jan 2015 to July 2022" showing a series of credit card transactions with no clear affiliation to any goods bearing the HYBRID & COMPANY or HYBRID marks. (Hanono Decl. ¶ 16; ECF No. 428-9.) Even if somehow this were proven to be tied to spending for the HYBRID & COMPANY mark, "showing that a certain amount was spent on advertising provides little support for secondary meaning. It must be shown that there was promotion of the mark as an identifier for the product." *Capri Sun GmbH*, 595 F. Supp. 3d at 150-51 (noting Capri Sun's evidence of many television commercials featuring celebrities and advertising campaigns for which it won awards over decades). Plaintiff's single screenshot of an Amazon search from 2023 (apparently taken the night of plaintiff's filing) showing three sponsored posts is blatantly deficient to support a finding of market distinctiveness. (ECF No. 458-1.)

TFE has also produced limited evidence of length of use and sales success. It produced a spreadsheet showing what purport to be sales from January 1996-December 2002 by YG Designs of apparel bearing the HYBRID and HYBRID & COMPANY marks broken out by customer. (Hanono Decl., ECF No. 428-1.) However, Hanono had no personal knowledge of sales prior to 2002 (Hanono Decl. ¶ 1); the last ten pages purport to show sales made by USA Design in 2005 bearing the marks, but the other evidence provided by TFE does not support sales success since then. "Samples sheets" and "line sheets" do not evidence sales, and the apparel these documents concern does not bear the HYBRID mark, only HYBRID & COMPANY. (Hanono Decl., ECF Nos. 428-2; 428-3.) Fame Fashion's purchase orders to manufacturers for products bearing the HYBRID & COMPANY mark do not show that the goods ordered were sold. Screenshots of plaintiff's Amazon store from August 2022 only show that as of that date, plaintiffs ran an Amazon store, not that *any* sales were actually made from it. (*See* Hanono Decl., ECF Nos. 428-5; 428-6; 428-7; 428-8.) Exhibits 8 and 9 (Hanono Decl., ECF Nos. 428-10; 428-11) allegedly show sales of products bearing the HYBRID or HYBRID & COMPANY marks from 2015-2020 (Hanono Decl. ¶¶ 18-19), but do not list the products as actually bearing these marks. Exhibits 10 and 11 (Hanono Decl., ECF Nos. 428-12; 428-13) allegedly show sales through Amazon from 2020 through 2022, but the entries bear no dates. Moreover, Exhibits 5, 6, 7, 9, 10 and 11 of the Hanono declaration were not produced during discovery and are not being considered on these motions. Plaintiff's only other evidence as to its sales or the length and exclusivity of its use of the marks is the testimony of Jack Saadia and Marc Hanono, who make at best vague, unsupported, and conclusory allegations as to sales.

In sum, plaintiff's limited production of sales records are far from clear on their face as to when they occurred or whether they bore the marks, are largely unsupported by a proper declarant with personal knowledge, and some of which were not produced during discovery. The Court finds that TFE's sales records are of extremely limited value and, in any event, "sales success alone cannot establish secondary meaning." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 284 (S.D.N.Y. 2018).

In addition, TFE has submitted absolutely no evidence of consumer studies linking the mark to the source, which "[c]ourts in this District 'have long held . . . are the most persuasive evidence of secondary meaning.'" *Capri Sun GmbH*, 595 F. Supp. 3d at 152 (quoting *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016)), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017)). "[A]lthough failure to undertake a consumer survey concerning recognition of [its] mark is not by itself fatal to [a] plaintiff['s] assertion of secondary meaning, where the other evidence of consumer recognition is hardly overwhelming, the absence of survey evidence weighs heavily against plaintiff['s] position." *Brown v. Quiniou*, 744 F. Supp. 463, 470 (S.D.N.Y. 1990) (citation omitted). Plaintiff has also shown no evidence of unsolicited media coverage of the product; nor attempts to plagiarize its marks; nor exclusivity of use.

The lack of marketplace distinctiveness here is shown by the problematic TFE sales documents, the lack of advertising and promotional expenses, the complete absence of consumer studies linking either mark to the source, no evidence of unsolicited media coverage of the product, and no attempts to plagiarize either mark. Plaintiff's marks have therefore failed to acquire market distinctiveness and thus weigh heavily against the strength of plaintiff's marks.

  c. <u>Third-party use of "Hybrid" slightly weakens plaintiff's marks.</u>

Finally, the term "Hybrid" has been used frequently in other trademarks, both in the context of apparel brands and other types of products. (Defs.' 56.1 ¶¶ 162-63; Pl.'s 56.1 ¶¶ 112-117.) However, "[t]he significance of third-party trademarks depends wholly upon their usage," *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976), and defendants have presented no evidence that this term has been used in the marketplace or recognized by consumers to the degree required to significantly weaken the strength of plaintiff's marks.

The Court finds that plaintiff's marks, in consideration of all the aforementioned factors, are neutral to relatively weak, and therefore this factor somewhat favors defendants. "A mark may be categorized as arbitrary or fanciful, but may nonetheless lack commercial strength in the marketplace and therefore ultimately be deemed weak." *Dana Braun, Inc. v. SML Sport Ltd.*, No. 03-Cv-6405 (BSJ), 2003 WL 22832265, at *9 (S.D.N.Y. Nov. 25, 2003); *see also Edison Bros. Stores v. Cosmair, Inc.*, 651 F. Supp. 1547,

1555 (S.D.N.Y. 1987) (finding an arbitrary mark to be conceptually strong but considering that it "is not widely recognized in the marketplace and cannot be deemed particularly strong commercially, or analogous to the famous 'designer' trademarks," found the mark not particularly strong overall); *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 486 F. Supp. 414, 420 (S.D.N.Y. 1980) ("the ultimate test of [a mark's] strength is its actual recognition among the consuming public"); *Gameologist*, 838 F. Supp. 2d at 160 (finding that even in circumstances in which "the plaintiff's mark is relatively strong conceptually, [but] the secondary meaning factors weigh heavily against the plaintiff with respect to distinctiveness in the marketplace . . . this *Polaroid* factor is at best neutral for the plaintiff"); *Elizabeth Taylor Cosms. Co. v. Annick Goutal, S.A.R.L.*, 673 F. Supp. 1238, 1245 (S.D.N.Y. 1987) (finding that a suggestive mark with only minimal third-party usage but whose "strength is limited by its restricted market" falls "in the middle ground between strong and weak").

Although "lack of secondary meaning does not preclude a court from finding that an otherwise distinctive mark is strong," *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993), the touchstone of the strength factor is the mark's "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source," *Arrow Fastener Co.*, 59 F.3d at 391, and the Court finds that TFE's marks completely lack that tendency. *See also Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 663 (2d Cir. 1979) ("the crucial question . . . always is whether the public is moved in any degree to buy an article because of its source"); *Del Lab'ys, Inc. v. Alleghany Pharmacal Corp.*, 516 F. Supp. 777, 781 (S.D.N.Y. 1981) ("Although *McGregor* instructs that it is error to require plaintiff to prove secondary meaning once it has established that a mark is at least suggestive, it is not error for the court to consider all evidence which may bear on the 'origin-indicating significance of a mark in the marketplace.'"). There is no evidence in this record that there is a tendency for the public to identify the apparel sold under TFE's marks as emanating from a particular source. In sum, the Court determines that the first *Polaroid* factor—the strength of plaintiff's marks—is weak, or at best, neutral.

### 2. Second Polaroid Factor: The Similarity of the Marks.

"In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Star Indus.*, 412 F.3d 373 at 386 (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993)). The PTO, whose findings this Court is according due weight, concluded in its denial of defendants' trademark registration application issued in a Final Office Action[2] on June

---

[2] As previously noted, although the PTO action is characterized as "final," this denial has been suspended as of October 28, 2022, pending the conclusion of the suspended cancellation proceeding. (Defs.' 56.1 ¶ 69;

4, 2022, that there would be a likelihood of confusion between the marks on the grounds that they are "confusingly similar." (Zarin Decl., ECF No. 429-22 at 4.) Defendants also admitted in their counterclaims that the marks "are nearly identical in appearance and are identical phonetically," (Answer ¶ 18 at 19), and simply contend on this motion that "[t]o the extent that this factor [—similarity of the marks—] favors TFE, it does not do so strongly." (Def. Br. at 16, ECF No. 453.)

In light of the PTO's findings and upon review of the marks in dispute, the Court agrees that they are similar. They both set forth the same primary word—"Hybrid"—in the same format (larger with a much smaller accompanying word below it), and at least one of the HYBRID & COMPANY marks is in all capital letters, as is defendants' "HYBRID APPAREL" mark, in a similar font. Moreover, "a district court must ask not whether differences are easily discernable on simultaneous viewing," as the defendants have presented the marks in their brief, "but whether they are likely to be memorable enough to dispel confusion on serial viewing." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 538 (2d Cir. 2005). The Court finds that the minimal visual differences between the marks would be unlikely to come to mind on serial viewing. The marks are deemed to be similar.

### 3. Third and Fourth *Polaroid* Factors: The Competitive Proximity of the Products and Likelihood of Bridging the "Gap" between Them.

The third *Polaroid* factor, the competitive proximity factor, "focuses on whether the two products compete with each other. To the extent goods (or trade names) serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991). The PTO concluded that plaintiff and defendants "are providing essentially the same goods, namely, various types of clothing," and specifically that "both provide various types of shirt." (Zarin Decl., ECF No. 429-22 at 4.) Defendants have admitted that "the parties sell clothing in the same stores," (Def. Br. at 17-18), and previously stated in their counterclaims that the goods sold bearing defendants' and plaintiff's marks are the "same goods," purchased by the "same or similar consumers" through "identical or similar channels of trade." *(*Answer ¶¶ 14-16 at 19.) Defendants

---

Rosenberg Decl., Ex. H.) Office actions subject to a notice of suspension are considered non-final decisions. *See Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 215 (E.D.N.Y. 2007). In addition, the other two office actions cited by plaintiff are clearly non-final—they are Nonfinal Office Actions. (Zarin Decl., ECF Nos. 429-59; 429-60.) Deference to a PTO decision will be limited if it is not a final decision. *See Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292 (S.D.N.Y. 2012). However, for purposes of the similarity of the marks analysis, the Court gives due weight to the PTO's analysis in its final office action despite the suspension of the denial pending these proceedings.

further admit in their briefings that there is "no meaningful gap to bridge." (Def. Br. at 18-19.)

Defendants do note that they do not sell all the same products as plaintiff, and the clothing they produce bearing their marks is not exactly the same as plaintiff's, in that the merchandise sold by defendant features licensed graphics, (*see, e.g.*, Zarin Decl., ECF Nos. 429-53; 429-54; 429-55; 429-56), whereas TFE's merchandise features "high fashion" patterns and items lacking any type of logo or graphic (*see, e.g.*, Rosenberg Decl., Ex. Z). *See Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, 335 F. Supp. 3d 566, 586 (S.D.N.Y. 2018) (finding that although both parties sell athletic socks, the types of socks as well as the customer bases differ). However, in light of the evidence showing that at least some of the items offered by plaintiff and defendants are priced similarly (Hanono Decl., ECF No. 428-5; Zarin Decl., ECF No. 429-53), and are sold through the same stores (*see* Pl.'s 56.1 ¶ 20[3]; Defs.' 56.1 ¶ 39), there is not enough evidence to conclude as a matter of law that the customer bases for plaintiff's and defendants' products differ to such a degree that the products are not in competitive proximity.

Accordingly, the Court concludes that the products bearing plaintiff's and defendant's marks are in some competitive proximity, though there is not complete overlap in products. In addition, because the "likelihood of bridging the gap" factor relates to the likelihood of competitive proximity in the future and the Court finds that the parties' products are already in competitive proximity, "there is really no gap to bridge, and this factor is irrelevant to the *Polaroid* analysis in this case." *Star Indus.*, 412 F.3d at 387.

### 4. Fifth and Sixth Polaroid Factors: Actual Consumer Confusion and Bad Faith by the Alleged Junior User.

The Court affirms its previous conclusions that were set forth in its September 29, 2022 order (ECF No. 440) and reaffirmed in its January 24, 2023 denial of plaintiff's motion for reconsideration (ECF No. 455): namely, that plaintiff has failed completely to show actual confusion (ECF No. 440 at 5-6), and the evidence is patent that defendants have not acted in bad faith (*id.* at 8-9). Plaintiff has merely regurgitated its previous arguments on these factors and given the Court not the slightest reason to reverse itself.

As to bad faith, plaintiff merely asserts the Court did not consider "bad faith" but rather "willfulness," and that "the evidence related to Defendants' establishment of their store on Amazon.com and the P.T.O.'s findings on their HYBRID APPAREL trademark applications" had not come into evidence at the time of its prior summary judgment order. (ECF No. 456 at 13.) But in fact, the Court did address both of these points in its denial of plaintiff's motion for reconsideration issued three days *before*

---

[3] Importantly, TFE has produced no documentary evidence of any sales to the retailers listed here.

14

plaintiff filed its brief making this claim. (ECF No. 455 at 2-3.) Moreover, the Court did find defendants have not acted in bad faith in its original order for purposes of plaintiff's unfair competition claim. (ECF No. 440 at 9.)

As to actual confusion, "[i]t is well-established that [plaintiff] need not show actual confusion in order to prevail on its claim, but '[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.'" *Dooney & Bourke*, 561 F. Supp. 2d at 385 (citation omitted). "The presence or absence of actual confusion can be highly effective in showing a high, or a low, likelihood of confusion *if there has been ample opportunity for consumer confusion.*" *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999) (italics in original), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003). "If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Nabisco*, 191 F.3d at 228.

Even crediting Hanono's testimony and the emails from retail buyers (ECF No. 455 at 5-6),[4] the Court affirms its previous finding that plaintiff's examples of actual confusion are at the very best *de minimis* (*id.* at 6). Hanono's extremely vague testimony in which he could not recall when the alleged confusion at tradeshows took place, nor the people he spoke to, and six emails received over ten years (and notably only one prior to the commencement of this lawsuit (Hanono Decl., ECF No. 428-14)), do not amount to sufficient evidence of actual confusion to weight this factor in favor of plaintiff. In the case proffered by plaintiff in which "twenty instances" of actual confusion allowed this factor to favor the plaintiffs "only slightly" on the grant of a preliminary injunction, *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-Cv-4945 (JMF), 2019 WL 293329, at *8-9 (S.D.N.Y. Jan. 23, 2019), those twenty instances appear to have occurred in the span of only two months after the alleged infringement took place. Under such circumstances, "where allegedly infringing sales have been minimal to date, to require any proof of actual confusion would unfairly penalize the trademark owner for acting promptly to 'protect its trademark rights before serious damage has occurred.'" *McCarthy on Trademarks & Unfair Competition* 23:12 (5th ed. 2023). Those circumstances are not analogous to those here, in which the parties have allegedly been using their marks concurrently in competitive proximity for approximately two

---

[4] The Court has reviewed its previous findings and agrees that Hanono's testimony is not inadmissible hearsay by virtue of the buyers in question not testifying on their own behalf, since their statements are not being offered for the truth of the matter they asserted but to show their states of mind. *See Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997).

decades.[5] *See supra* p. 2. Here, because consumers have been exposed to allegedly similar marks in the marketplace for a substantial length of time, with no surveys having been presented to the Court by plaintiff, only *de minimis* and ambiguous reports of actual confusion, and absolutely no evidence of bad faith, these two *Polaroid* factors strongly favor defendant.

### 5. *The Seventh and Eighth Polaroid Factors: Respective Quality of the Products and Sophistication of Consumers in the Relevant Market.*

The seventh *Polaroid* factor concerns the quality of the goods bearing the junior user's marks relative to the quality of the senior user's goods. "The quality factor of *Polaroid* 'is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality.'" *Star Indus.*, 412 F.3d at 389 (citing *Sports Auth.*, 89 F.3d at 965).

TFE contends that defendants' and plaintiff's goods are equal in quality, and defendants do not refute this conclusion. Defendants suggest that this indicates a lack of harm to plaintiff's brand should the two marks be confused, but plaintiff argues the similarities in quality suggest it is more likely that confusion between the marks will occur. However, as the Court has found, there has been no material confusion of the marks over the past two decades. Courts in the Second Circuit have held that these competing considerations may serve to neutralize this factor. *See Star Indus.*, 412 F.3d at 389; *Hypnotic Hats*, 335 F. Supp. 3d at 592. Moreover, aside from the parties' vague assertions that their respective goods are of "high quality," there is no "evidence in the record substantiating the high or low quality of defendant's products relative to those of plaintiff." *Dooney & Bourke*, 561 F. Supp. 2d at 389. Therefore, "this factor is neutral as a matter of law." *Id.*; *see also Car-Freshner*, 980 F.3d at 333 (affirming district court's finding that absent an allegation that defendants' products are of a lower quality than plaintiff's, "the evidence does not support a finding that the relative quality of the products plays a significant role in the existence of a likelihood of confusion"). Accordingly, the seventh *Polaroid* factor—the respective quality of the products—is neutral here.

The final *Polaroid* factor—the sophistication of the consumers in the relevant market—"consider[s] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15-Cv-10154 (PAE), 2022 WL 17851810, at *46 (S.D.N.Y. Dec. 22, 2022) (quoting *Star Indus.*, 412 F.3d at 390). "Confusion is thus more likely 'where the

---

[5] The same was true in the other case cited by plaintiff, *Reply All Corp. v. Gimlet Media, Inc.*, No. 15-Cv-4950 (WFK) (PK), 2020 WL 13536220, at *1-2 (E.D.N.Y. Feb. 12, 2020), where the junior user began using the disputed mark less than a year before the suit was filed.

goods are cheap and bought casually.'" *Id.* (citing *Dooney & Bourke*, 561 F. Supp. 2d at 389). In addition, where the plaintiff's argument "rests on allegations of retailer confusion," as in the case here, "retailers are assumed to be more sophisticated buyers and thus less prone to confusion." W.W.W. Pharm. Co., 984 F.2d at 576.

TFE contends that the customers of the two brands are unsophisticated because both parties sell relatively inexpensive clothing items and are therefore more likely to be confused. However, the low cost of the items alone does not necessitate a finding of unsophistication. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 119 (2d Cir. 2009) (noting that although "our case law has associated the purchase of low-cost goods in a supermarket environment with low customer sophistication . . . 'price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer'"); *Hypnotic Hats*, 335 F. Supp. 3d at 592-93 (finding that although the item bearing the parties' marks is a low-cost item and the products are identical, "the record does not reflect that the relevant customers 'are of any particular sophistication level,'" and therefore "this factor is neutral" (citation omitted)); *Life Indus. Corp. v. Star Brite Distrib. Inc.*, 31 F.3d 42, 47 (2d Cir. 1994). In one case cited by TFE, "[t]he magistrate recognized that the products' price suggests that the consumers are unsophisticated, but that the total lack of evidence on this issue militate[d] against giving this factor much, if any, weight." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 79 (2d Cir. 1988). Despite the panel's inclinations that "the relevant consumer group [wa]s unsophisticated," the panel agreed "that the lack of evidence preclude[d] any useful conclusion on this issue." *Id.*

This Court finds that it lacks sufficient evidence to give this factor much weight. Although the cost of the items bearing the parties' marks is relatively low, that is not determinative of this factor; moreover, plaintiff's only allegations of actual confusion here have been on behalf of retailers who are presumed to be sophisticated. Thus, the sophistication factor here is at most neutral.

### 6. *No Reasonable Jury Could Find a Likelihood of Confusion Between the Plaintiff's and Defendants' Marks.*

In balancing the *Polaroid* factors, "[t]he Second Circuit has explained that strength, similarity, and proximity are generally the three most important *Polaroid* factors." *Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't., LLC*, 7 F. Supp. 3d 385, 399 (S.D.N.Y. 2014) (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)). The Court finds that the strength factor is neutral, while similarity weighs in favor of plaintiff and competitive proximity slightly favors plaintiff. The lack of actual confusion over the years of the marks being used in commerce, as well as the complete absence of bad faith, weigh heavily in favor of defendants, and the other factors are neutral. "With

some factors favoring each side, we encounter a question as to which *Polaroid* provides no guidance: how are conclusions as to the eight factors to be considered in the aggregate when some favor each party? No formula is available." *Car-Freshner*, 980 F.3d at 334. "Ultimately, as with most close questions of law, judgment must be exercised to apply the legal standard of likelihood of consumer confusion." *Id.*

On balance, the Court finds that, as a matter of law, there is no likelihood of confusion between defendants' and plaintiff's marks. The lack of any evidence of actual confusion over such a long period of concurrent use of the marks, and the absence of consumer surveys, viewed in the context of highly deficient evidence that plaintiff's marks are distinctive in the marketplace, lead the Court to conclude that TFE has not demonstrated a "probability of confusion . . . affecting numerous ordinary prudent purchasers." *Star Indus.*, 412 F.3d at 383. The undisputed evidence thus warrants the entry of summary judgment in favor of defendants with respect to the Lanham Act claim of infringement of TFE's HYBRID and HYBRID & COMPANY marks.

The Court notes that its conclusion is not inconsistent with those of the PTO, which are to be accorded appropriate weight. *See, e.g., De Beers LV Trademark Ltd. V. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 274 n.24 (S.D.N.Y. 2006); *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998). "[A] district court must resolve the issue of likelihood of confusion 'not by reference to a registration determination by the [US]PTO but by application of the multi-factor balancing test set forth in *Polaroid*.'" *System1 Rsch. Ltd. v. System1 LLC*, No. 21-Cv-8029 (ER), 2022 WL 4585735, at *6 (S.D.N.Y. Sept. 29, 2022) (citation omitted). "Although implicating similar factors, the likelihood-of-confusion analysis that trademark examiners engage in at administrative agencies like the PTO differs from the analysis that courts engage in during litigation . . . in that the former analysis generally is decided upon 'a comparison of the marks in the abstract,' whereas courts assess the market as it actually exists." *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 729 (E.D.N.Y. 2018) (citing *B & B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 161 (2015) (Ginsburg, J., concurring)). "In other words, an administrative agency's finding of a likelihood of confusion for registration purposes does not necessarily mean that a likelihood of confusion has been established for infringement purposes." *Id.* "[I]n the end, the Court is 'not bound' by such an initial determination, and is obligated to ultimately render its own decision on the merits." *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292 (S.D.N.Y. 2012) (citation omitted).[6]

---

[6] Indeed, the cancellation proceeding initiated by defendants in 2011 has been suspended pending a final decision by this Court since 2014, because, as TFE wrote the TTAB, "the Board decision is advisory to the Court," *Black Box Corp. of Pa. and BB Technologies, Inc. v. Better Box Commc'ns Ltd.*, 2002 TTAB LEXIS 253 at *4 (T.T.A.B. 2002) and "to the extent that a civil action in a Federal district court involves issues in common with those in a proceeding before the Board, the decision of the Federal district court is binding

In its Final Office Action issued June 4, 2022 (Zarin Decl., ECF No. 429-22), the PTO compared plaintiff's mark HYBRID & COMPANY to defendants' HYBRID mark for similarity, as well as the goods produced by plaintiff and defendants, and their common trade channels. And as noted above, registration does afford a presumption of inherent distinctiveness that goes to the strength of the mark. But the PTO is not required to consider every factor in its likelihood of confusion analysis. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1310 (Fed. Cir. 2018) (citing *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164 (Fed Cir. 2002)). Moreover, the PTO assesses the likelihood of confusion pursuant to the thirteen *DuPont* factors, rather than the eight *Polaroid* factors used in the Second Circuit. *Fiber-Shield Industries Inc. v. Fabricshield Holdings, LLC*, 20-Cv-6059 (RPK) (SIL), 2023 WL 2734731 (E.D.N.Y. Mar. 31, 2023). Here, the PTO did not purport to consider and weigh the distinctiveness of plaintiff's mark in the marketplace, the sophistication of the consumers, the quality of the products, or importantly, actual confusion in the marketplace or bad faith by the defendants, as this Court must in applying the *Polaroid* factors. On these factors, the Court has made its own determination and finds that while the PTO was correct as to the similarity of the marks and common goods and channels in which they are used, the other factors the PTO did not purport to consider weigh heavily against a finding of likelihood of confusion and lead the Court to conclude such a finding is not warranted here.

### III. CONCLUSION

Because the court finds as a matter of law that the use in commerce of defendants' marks—HYBRID, HYBRID TEES, and HYBRID APPAREL—is not likely to cause confusion with TFE's marks—HYBRID and HYBRID & COMPANY— defendants' motion for summary judgment is granted and plaintiff's cross-motion is denied.[7] Because plaintiff's claims of trademark infringement as well as its claims of unfair competition under the Lanham Act require a finding of likelihood of confusion to proceed, *see EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61-62 (2d Cir. 2000), both claims are dismissed. The Clerk of Court is directed to close this action.

Dated: New York, New York
September 29, 2023

SO ORDERED:

*Sidney H. Stein*

Sidney H. Stein, U.S.D.J.

---

upon the Board, while the decision of the Board is not binding upon the court." *Luv N' Care, Ltd. v. New Vent Designs, Inc.*, 2000 TTAB LEXIS 342 at *8 (T.T.A.B. 2000).

[7] In light of the Court's determination, the question of whether injunctive relief is warranted is moot.