**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE FASHION EXCHANGE LLC,

                Plaintiff,

     v.

HYBRID PROMOTIONS, LLC, *et al.*,

                Defendants.

No. 1:14-cv-01254 (SHS)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

---

Joel H. Rosner
Mark J. Rosenberg
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone:  212-216-8000
Facsimile:  212-216-8001
mrosenberg@tarterkrinsky.com
jrosner@tarterkrinsky.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     LEGAL STANDARD.................................................................................... 3

III.    THIS IS AN EXCEPTIONAL CASE BECAUSE OF  PLAINTIFF'S
        UNREASONABLE LITIGATION CONDUCT ............................................. 5

        A.      Defendants are the Prevailing Parties ................................... 5

        B.      Plaintiff has Litigated This Case in an Unreasonable Manner ............................. 5

                1.      Failure to Produce Evidence of Damages,  Misrepresentations, and
                        Sanctions Imposed  Concerning the Destruction of Damages
                        Documents ............................................................ 5

                2.      Sanctions Imposed for Deposition Interference.......................................... 9

                3.      Plaintiff's Failure to Show Actual Confusion or Likely Confusion .......... 9

                4.      Plaintiff Harassed Multiple Uninvolved Parties ....................................... 11

                5.      Plaintiff's Excessive Motions Challenging Court Rulings ...................... 12

                6.      Overall Assessment.................................................................. 13

IV.     CONCLUSION............................................................................................ 14

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Carter v. Inc. Vill. Of Ocean Beach*,
    759 F.3d 159 (2d Cir. 2014)......................................................................................3

*Cognex Corp. v. Microscan Sys., Inc.*,
    No. 13-CV-2027, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) ...................................13, 14

*Focus Prod. Group Int'l, LLC v. Kartri Sales Co.*,
    No. 15-Civ. 10154, 2023 WL 3815276 (S.D.N.Y. June 5, 2023) ...........................................13

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017).............................................................................................4

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)..............................................................................................3, 4

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018)......................................................................................4

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................2, 3, 14

28 U.S.C. § 1927......................................................................................................2, 4, 14

Pursuant to Federal Rule of Civil Procedure 54(d)(2), Defendants[1] submit this memorandum in support of their motion for an award of attorney fees and costs against Plaintiff The Fashion Exchange LLC ("Plaintiff").

## I.    PRELIMINARY STATEMENT

Plaintiff's and its counsel's litigation conduct in this case has been markedly unreasonable. As the Court is well aware, Plaintiff and its counsel have filed repeated meritless objections and motions for reconsideration—even a motion for reconsideration of an order denying reconsideration—that have needlessly prolonged this case and caused Defendants to incur massive fees and costs.  Plaintiff has failed to produce evidence concerning the key issues pertaining to Plaintiff's in this case, namely, its damages, the likelihood of confusion, actual confusion, or the alleged willfulness of Defendants.  And Plaintiff and its counsel have behaved in a demonstrably improper way.  Plaintiff and its counsel twice have been sanctioned in this case for discovery misconduct.  First, Plaintiff's counsel was sanctioned for egregiously interfering with a Rule 30(b)(6) deposition of Plaintiff.  Second, Plaintiff and its counsel were sanctioned for their conduct in connection with the claimed destruction of all of Plaintiff's documents concerning its damages. In addition, both this Court and Magistrate Judge Wang have threatened Plaintiff and its counsel with additional sanctions concerning their litigation misconduct.  After Plaintiff began serially moving for reconsideration or objecting to court orders, Magistrate Judge Wang warned Plaintiff and its counsel that if they "only repeat[ed] the arguments in [Plaintiff's] prior letter, ECF 290, or if the Court finds Plaintiff's Motion for Reconsideration is not substantially justified," Magistrate Judge Wang would consider awarding fees to Hybrid and the Retailers under Federal Rule of Civil

---

[1] Defendants consist of Defendant Hybrid Promotions, LLC, Jarrod Dogan, Gavin Dogan, and Jeff Caldwell (collectively, "Hybrid"), and the "Retailers," who are all the active corporate defendants in this matter other than Hybrid and Sears Brands, LLC.

Procedure 37(a)(5).  (ECF 307.)  This Court, in February 2023, in an order denying Plaintiff's motion for reconsideration of the Court's previous order denying reconsideration of an earlier order, wrote, "The Court cautions Mr. Zarin [Plaintiff's counsel] that he is at risk of being sanctioned pursuant to 28 U.S.C. § 1927 if he continues to "multipl[y] the proceedings . . . unreasonably and vexatiously" in this manner.  This is not his first warning." (ECF 469.)

It therefore is unsurprising that this case has led to a judgment entered after the Court twice granted summary judgment to Hybrid in large part because of Plaintiff's failure to produce evidence supporting any aspect of its claims.  However, if past is prologue, this case is far from over.   Plaintiff undoubtedly will seek to prolong this litigation by further motions for reconsideration or on appeal, raising a laundry list of perceived slights that Plaintiff will argue entitle it to continue litigating its unprovable claims.  Before making this motion, Defendants asked Plaintiff, at long last, to give up this fruitless lawsuit in view of the conclusive findings by the Court in its decisions on summary judgment.  (Declaration of Joel H. Rosner, dated October 13, 2023 ("Rosner Decl."), ¶ 2.)  Plaintiff's counsel has not responded to this request, except to offer a nebulous promise that he will consult with his client.  (*Id.*)

Consequently, to protect themselves and ensure that the financial harm being inflicted on them finally ends, Defendants now bring this motion for a determination that this is an "exceptional" case and that they are therefore entitled under the Lanham Act, 15 U.S.C. § 1117, to recover the attorney's fees and costs they have incurred in this action.  Such an award is also needed to deter Plaintiff from continuing to engage in similarly unreasonable litigation conduct in the future.

Defendants request, pursuant to Federal Rule of Civil Procedure 54(d)(2)(C), that the Court "decide issues of liability for fees before receiving submissions on the value of services."  Over

the nine and half years of this litigation, Defendants have incurred attorney's fees of $1,249,396.50 and costs of $43,710.25 in this case.  (Rosner Decl. ¶ 3.)  If the Court determines that Defendants are entitled to recover their fees and costs, Defendants will submit an application for a fee award describing the amounts sought and the basis for them.[2]

Accordingly, Defendants respectfully requests that the Court grant this motion and find that they are entitled to recover the fees and costs they have incurred in connection with this action.

## II.   <u>LEGAL STANDARD</u>

The Lanham Act provides that a court "may award reasonable attorney fees to the prevailing party" in "exceptional cases."  15 U.S.C. § 1117(a).  Under a federal fee-shifting statute like 15 U.S.C. § 1117(a), a party is the "prevailing party" when there is a "material alteration of the legal relationship of the parties" and "any action so dismissed could not be brought again." *Carter v. Inc. Vill.  Of Ocean Beach*, 759 F.3d 159, 165–66 (2d Cir. 2014) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum.  Res.*, 532 U.S. 598, 604 (2001)).

The standard for an exceptional case was explained by the Supreme Court in *Octane Fitness*:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  A case only requires satisfaction of one of *Octane Fitness*'s two prongs to be considered "exceptional."  *Id.* Notably, "a district court may award fees in the rare case in which a party's unreasonable

---

[2] The fee application will exclude the $104,812.68 previously recovered by Defendants because of sanctions imposed on Plaintiff for discovery misconduct.  (Rosner Decl. ¶ 4.)

conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 572 U.S. at 555.

In assessing the totality of circumstances to determine whether a case is "exceptional," courts consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 553–54 & n.7; *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530–31 (2d Cir. 2018) (applying the factors listed in *Octane* to an award of fees pursuant to the Lanham Act). "[T]here is no precise rule or formula for making [an exceptional case determination], but instead equitable discretion should be exercised" in light of the above listed factors, and the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. The "exceptional" standard "demands a simple discretionary inquiry; it imposes no specific evidentiary burden." *Id.*

Considering the totality of circumstances, this case is exceptional because of Plaintiff's unreasonable litigation conduct. Further, an award of attorney's fees and costs is also needed to deter Plaintiff from continuing to engage in similarly unreasonable litigation conduct in the future.

The Court is also empowered by 28 U.S.C. § 1927 to require any attorney engaged in "unreasonabl[e] and vexatious[]" conduct to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." And the Court also possesses the inherent authority to manage discovery, including by directing a party and/or its counsel to reimburse the opposing party's attorney's fees and costs incurred due to their bad-faith conduct that delays or disrupts the litigation. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). In light of Plaintiff's counsel's bad-faith conduct in prolonging this litigation, the Court should impose sanctions on counsel as well as on Plaintiff.

III.     **THIS IS AN EXCEPTIONAL CASE BECAUSE OF**
         **PLAINTIFF'S UNREASONABLE LITIGATION CONDUCT**

    A.     **Defendants are the Prevailing Parties**

There is no question that Defendants are the prevailing party in this litigation.  Plaintiff

sued Defendants for trademark infringement and unfair competition under the Lanham Act.  The

Court granted summary judgment to Defendants, dismissing Plaintiff's claims for monetary relief

and unfair competition (ECF 440), then granted summary judgment to Defendants, finding the use

in commerce of Hybrid's trademarks is not likely to cause confusion with Plaintiff's trademarks,

and dismissing all of Plaintiff's claims on that basis.  (ECF 471.)  Final judgment has been entered

in favor of Defendants.  (ECF 472.)

    B.     **Plaintiff has Litigated This Case in an Unreasonable Manner**

A full recounting of the history of Plaintiff's and its counsel's litigation misconduct in this

case would vastly exceed the page limits of this motion.  Defendants therefore summarize

Plaintiff's misconduct below.

            1.     **Failure to Produce Evidence of Damages,**
                   **Misrepresentations, and Sanctions Imposed**
                   **Concerning the Destruction of Damages Documents**

Plaintiff has not produced any evidence it has been damaged at all by Defendants' conduct.

As the Court wrote in granting summary judgment to Defendants regarding Plaintiff's claims for

monetary relief:

> Specifically, TFE was sanctioned for failing to preserve records to substantiate its
> claims for monetary relief.  (See ECF No. 348 at 2-5.) Despite a court order, TFE
> had failed totally to produce financial documents relating to royalties received from
> its licensee Fame Fashion; instead, it produced only a single quarter-page summary
> of its royalty income, which provided conclusory figures with no indication as to
> how they were calculated or their source. (See id. at 2-3.) As an alternative to trying
> to determine what royalties, if any, were received by TFE, defendants sought
> production of TFE' s tax returns, which Judge Wang granted.  (Tr. at 8:17-25,
> 26:17- 21, ECF No. 264.) Plaintiff produced unsigned tax returns with no indication
> that they were ever filed.  (ECF No. 304 at 13.) Moreover, TFE's alleged royalty

> figures represented in the summary sheet and the income figures listed on TFE's
> unsigned tax returns were not the same.  (ECF No. 270.) The only reason TFE gave
> for the loss of its financial documents was that the hard drive and server TFE and
> Fame Fashion shared were "fried" in some unknown fashion.  (Deposition of Mark
> Hanono dated January 29, 2019, Tr. 11:2-12:6, ECF No. 345-1.)

(ECF 440, at 3-4.)

But the sanctions imposed on Plaintiff for its failure to preserve documents was not the

entirety of Plaintiff's litigation misconduct concerning discovery.  Rather, as set forth at length in

Defendants' sanctions motion, from the outset of this case Plaintiff has delayed its document

production, made false claims about purportedly anticipated productions, made false claims about

the existence of documents, all of which prevented Defendants from discovering Plaintiff's

document destruction until 2018.  This litigation misconduct, which was not covered by the

sanctions award concerning Plaintiff's document destruction, included:

- Plaintiff stated in its Rule 26(a) Initial Disclosures that it possessed "Documents regarding Plaintiff's distribution and sales of products bearing the HYBRID & COMPANY trademark" and "Documents regarding revenues and profits generated for Plaintiff by products bearing the HYBRID & COMPANY trademark."  (ECF 304, at 3.)

- On August 7, 2014, Defendants served requests for documents concerning Plaintiff's sales and its advertising expenditures.  Plaintiff did not produce documents.  After Defendants moved to compel the discovery, Plaintiff asked the Court for an extension of time to January 30, 2015, claiming it was still searching for responsive documents and had to retain computer experts to assist it in in retrieving documents that had been deleted from Plaintiff's computer server.  The Court granted the extension and directed Plaintiff to produce the requested documents.  But Plaintiff did not produce any documents concerning its own sales or advertising efforts.

- On February 19, 2015, Defendants filed a motion to impose sanctions on Plaintiff for failure to comply with the Court's order.  Plaintiff opposed the motion by contradicting its Rule 26(a) disclosures, stating it had no documents "advertising containing its trademark" or "documents reflecting Plaintiffs sales after 1996."  The Court granted Plaintiff an extension until March 31, 2015, to produce its remaining documents "[b]ased on the representations of plaintiff's attorney with regard to the actions being taken by a third-party computer expert, as well as efforts to be undertaken by plaintiff and plaintiff's counsel."  But the Court warned Plaintiff

6

against further delay, ordering that "the plaintiff is precluded from using in this litigation any documents located and produced after March 31, absent very good cause shown." Nevertheless, Plaintiff did not produce the promised records (its sales, costs, and profits for 2008 (the last year in which Plaintiff sold products) or its income or profits for the years since 2008.the documents it had promised.)

- On May 12, 2015, Plaintiff's Rule 30(b)(6) witness, Jack Saadia, testified that about a year earlier he personally had conducted a search of Plaintiff's old computer systems and backups, encountered no problem in locating responsive documents (without having to search any deleted documents), and had provided them to counsel for production. At his second Rule 30(b)(6) deposition in October 2018, Mr. Saadia claimed that he had encountered problems in his 2015 search and needed to consult an IT consultant, but still acknowledged he was able to obtain documents. Plaintiff did not produce them.

- On August 30, 2017, **Defendants** served requests for documents concerning Plaintiff's claim that it had been damaged by **Defendants'** allegedly infringing conduct, including its sales, costs and expenses, royalties, and profits. But Plaintiff did not produce any documents responsive to that document request. Instead, Plaintiff's counsel falsely represented that Plaintiff did not maintain royalty reports and refused to produce its financial statements, although he promised Plaintiff would produce documents concerning the royalties it received from Fame Fashion and produce sales and purchase records concerning its claim for lost profits in 2008. Plaintiff did not produce the promised documents. (Plaintiff's Rule 30(b)(6) subsequently testified that Plaintiff created and maintained all these categories of documents, including royalty reports.)

(ECF 304, _____.)

The events following this became the subject of Magistrate Judge Wang's December 16, 2019, order imposing sanctions on Plaintiff and its counsel because of the destruction of Plaintiff's documents. Judge Wang found that sanctions were appropriate, as, among other things:

Plaintiff's lackadaisical approach to its discovery obligations has certainly wasted both Defendants' and the Court's time in attempting to ascertain what documents exist and could be produced. While such conduct is sanctionable, it is unclear whether Plaintiff's stalling was to intentionally deprive Defendants of evidence or merely due to gross incompetence . . . Throughout this litigation, Plaintiff's counsel has failed to grasp the scope of his client's discovery obligations. See, e.g., Nov. 29, 2018 Tr. (ECF 276) at 11:5-13:23 (explaining to Plaintiff's counsel what a Rule 30(b)(6) witness is and why failing to prepare his 30(b)(6) witness was improper). Nor is it clear if Plaintiff has been accurately conveying information to its counsel regarding what documents it possessed, as evidenced by contradicting representations. Compare ECF 254 (counsel representing that Plaintiff does not

have financial statements or profit/loss statements) with Saadia Tr. at 67:20-68:21 (Saadia testifying that Plaintiff has been creating profit/loss statements and balance sheets from 2008 through present); compare Oct. 4, 2018 Tr. at 6:8-17 (counsel describing royalty spreadsheet as an attempted reconstruction of royalty information after computer issues prevented access to data) with Hanono Tr. at 22:6-23:9 (Hanono testifying that the royalty spreadsheet was created using sales data before the server was "fried").

(ECF 348, at 11.)  Magistrate Judge Wang held that "monetary sanctions are the appropriate remedy in this case to compensate Defendants for the time and resources spent by Plaintiff's dragging out this issue." (*Id.* at 15.)  "Plaintiff engaged in a pattern of failing to take its discovery obligations seriously, creating the need for a number of letter motions and conferences." (*Id.* at 17.)  As to Plaintiff's counsel, Judge Wang found that, "Plaintiff's counsel repeatedly made misrepresentations to this Court about the status of document production," and "[t]here is also no indication that Plaintiff's counsel made any effort to ensure that documents were preserved or that a litigation hold was imposed at any time in the last five years since the suit was initiated." (*Id.* at 18.)  Similarly, Magistrate Judge Wang found that, "Rather than attempt to compile all of the responsive data, Plaintiff's counsel repeatedly tried to run out the clock, first stating that documents would be produced by August 24, 2018 and then later confirming that documents would be produced within a few days of his September 27, 2018 letter . . . There is no indication that Plaintiff's counsel ever sought the royalty data from his client for production." (*Id.* at 19.)  Judge Wang concluded that "sanctioning Plaintiff's counsel is necessary both to deter such conduct in the future as well as to compensate for the expenses Defendants were forced to incur by Plaintiff's counsel's willful disregard in ensuring that discovery obligations were being met and accurately conveying the status of such to Defendants and the Court." (*Id.* at 19-20.)

As a result of the conduct of Plaintiff and its counsel, Magistrate Judge Wang imposed sanctions of $95,684.08 jointly on Plaintiff and Plaintiff's counsel, an amount later upheld by this Court.  (ECF 400, at 2, 10; ECF 434.)

### 2.  Sanctions Imposed for Deposition Interference

The sanctions for Plaintiff's document destruction were not the only sanctions imposed in this case.  On October 30, 2018, Defendants took a Rule 30(b)(6) deposition of Plaintiff. Magistrate Judge Wang, holding that "sanctions are appropriate where the attorney's conduct 'essentially destroys a deposition,'" imposed them because "In the first half of the deposition, Plaintiff's counsel repeatedly made speaking objections, engaging in debates with Defendants' counsel about the question," Plaintiff's counsel repeatedly improperly "suggested" and "directed" the witness to answer questions in particular way, "Plaintiff's counsel engaged in a prolonged and unnecessary argument regarding the relevancy of a simple question, which Mr. Saadia ultimately answered," and "Plaintiff's counsel instructed Mr. Saadia not to answer based on relevancy grounds, notwithstanding the fact that 'it is improper to instruct a witness not to answer a question on the basis of relevance.'"  (ECF 333, at 5-10.)

As a result of the conduct at the October 30, 2018, deposition, Magistrate Judge Wang imposed sanctions of $9,128.60 jointly on Plaintiff and Plaintiff's counsel.  (ECF 341, at 7.)

### 3.  Plaintiff's Failure to Show Actual Confusion or Likely Confusion

Plaintiff never produced any admissible evidence of actual confusion between its trademarks and those used by Defendants.  And Plaintiff also failed to produce evidence critical to any claim that there was a likelihood of such confusion.  That is, Plaintiff pursued this litigation for more than nine and a half years despite lacking evidence of the fundamental element of its claims for trademark infringement and unfair competition.  As the Court held in its decision

granting summary judgment in favor of Defendants on Plaintiff's claims for monetary relief and unfair competition:

> "[I]t is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992), abrogated on other grounds by *Romag Fasteners*, 140 S. Ct. at 1497 (internal quotation marks and citations omitted). "This requirement must be distinguished from cases brought under the Lanham Act in which only injunctive relief is sought; in those cases the plaintiff need only prove a likelihood of confusion among consumers." *Res. Dev., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).

(ECF 440 at 5.)

Plaintiff certainly knew it had no admissible evidence of actual confusion. While Plaintiff tried to claim a handful of emails constituted evidence of actual confusion, that claim was unreasonable. As the Court has already found, that so-called evidence, was "largely inadmissible hearsay," consisting primarily of phone calls and emails, which might "show at the very most some general confusion" between Hybrid and Plaintiff but "certainly are not indicative that the buyers were actually confused in regard to 'the purchasing ... of the goods . . . in question." (*Id.* at 6.) In short, as the Court found in its order granting summary judgment to Defendants on Plaintiff's claims, "plaintiff has failed completely to show actual confusion." (ECF 471, at 14.) This failure was especially notable considering the parties were in active competition for two decades. (*Id.* at 15-16.)

Similarly, Plaintiff undoubtedly knew it could not demonstrate there was a likelihood of confusion, as, in addition to the complete lack of admissible evidence of actual confusion, Plaintiff had no evidence of bad faith (*id.* at 5), or that its trademark was distinctive in the marketplace. The presence or absence of actual confusion can be highly effective in showing a high, or a low,

10

likelihood of confusion *if there has been ample opportunity for consumer confusion*." (ECF 471, at 15) (quoting *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 228 (2d Cir. 1999)). The Court no evidence Plaintiff's marks were distinctive to consumers, as "[P]laintiff has presented zero credible evidence in the intervening years of *any* advertising and promotional expenses; *any* consumer studies linking either mark to the source; *any* unsolicited media coverage of the product; *any* attempts to plagiarize either mark; any exclusivity of either mark's use; and limited evidence of length of use and sales success. (*Id.* at 9) (emphasis in original). While Plaintiff contended it had evidence of advertising and promotional expenses, the Court rejected that claim. "[A]s has been the case consistently throughout this litigation, [Plaintiff] has failed to submit any evidence to support its contentions." (*Id.*)

### 4. Plaintiff Harassed Multiple Uninvolved Parties

Plaintiff commenced this action against fifty-five defendants. Many of these were retailers with no conceivable involvement in this case, as reflected by the fact that Plaintiff dismissed sixteen of them, nearly a third, soon after this case was commenced. (Each was dismissed after Defendants incurred legal fees and expenses in obtaining declarations from the dismissed parties attesting that they had not sold Hybrid-branded goods.) The Court previously expressed concern that Plaintiff's motivation in suing so many retailer defendants, even those with some connection to Hybrid, "was part of a strategy to inconvenience the retailers so that they would either settle with Plaintiff or put pressure on Hybrid to settle." (ECF 233, at 1.) But Plaintiff enhanced that concern by issuing subpoenas on twenty-three of Hybrid's retailers (the "Subpoenas"). The subpoenaed retailers included most of the dismissed retailers as well as a number of Hybrid's retailers who had not been sued by Plaintiff in this action. (*Id.* at 2.) In other words, this was simply harassment of entities Plaintiff knew to be uninvolved in this case. Magistrate Judge Wang quashed all the subpoenas a day after Defendants moved for that relief and issued an order to

Plaintiff to show cause why its service of the subpoenas had not violated the Court's November 17, 2017, order, which limited discovery to eight Retailer defendants.  (ECF 234.)  At the June 28, 2018, hearing, although declining to issue sanctions, Magistrate Judge Wang found that, "the service of these additional subpoenas was a violation of Judge Stein's November 2017 order, if not the letter of the order, certainly the spirit of the order, particularly where at least a significant number if not the majority of the subpoenas were issued to retailer defendants that had already been dismissed from the action."  (ECF 249, at 54-55.)

### 5.  Plaintiff's Excessive Motions Challenging Court Rulings

Plaintiff moved at least nine different times for orders that expressly sought, or effectively sought, the Court or Magistrate Judge Wang to overturn or reconsider a previous ruling.  (ECF 239, 262, 308, 310, 346, 351, 403, 442, 466.)  Plaintiff spent these motions doing little more than rehashing or rearguing issues, and each motion was largely or entirely rejected by Magistrate Judge Wang or the Court.  (E.g., ECF 263, 343, 434.)

Indeed, both this Court and Magistrate Judge Wang have threatened Plaintiff and its counsel with sanctions concerning their failure to bring valid or even arguable motions for reconsideration.  After Plaintiff began serially moving for reconsideration or objecting to court orders, Magistrate Judge Wang warned Plaintiff and its counsel that if they "only repeat[ed] the arguments in [Plaintiff's] prior letter, ECF 290, or if the Court finds Plaintiff's Motion for Reconsideration is not substantially justified," Magistrate Judge Wang would consider awarding fees to Hybrid and the Retailers under Federal Rule of Civil Procedure 37(a)(5).  (ECF 307.)  In February 23, when Plaintiff moved for reconsideration of the Court's order denying reconsideration of a previous order, the Court chastised Plaintiff and its counsel for their egregious conduct:

> Plaintiff has offered no new evidence, changes in the law, or clear error warranting reconsideration.  The Court considered all of the matters set forth in this repetitious reconsideration motion when it denied plaintiff's previous motion for reconsideration two weeks ago.  (ECF No. 455.) The basis of plaintiff's motion is that it is entitled to have the Court explicitly address in its decision every sentence and every footnote in plaintiff's submissions.  Plaintiff is incorrect.  The Court's decisions have decided the issues raised in the supporting and opposing submissions.  Plaintiff is not entitled to an explicit recitation of the Court's view of every detail raised in its voluminous filings.

(ECF 469.)  The Court continued, specifically addressing Plaintiff's counsel:

> The Court cautions Mr. Zarin that he is at risk of being sanctioned pursuant to 28 U.S.C. § 1927 if he continues to "multipl[y] the proceedings . . . unreasonably and vexatiously" in this manner.  This is not his first warning.  See ECF No. 307 (after magistrate judge ruled on motion that plaintiff insisted was only a letter, magistrate permitted a motion for reconsideration of its ruling, noting that "[i]f Plaintiff's motion only repeats the arguments in its prior letter, ECF 290, or if the Court finds Plaintiff's Motion for Reconsideration is not substantially justified, the Court will consider awarding or apportioning reasonable expenses under Federal Rule of Civil Procedure 37(a)(5) (A)-(C).");  see also ECF No. 333 (plaintiff's counsel sanctioned by magistrate for obstructing deposition);  ECF No. 348 (plaintiff and plaintiff's counsel sanctioned by magistrate for failure to preserve electronically stored information.

(*Id.*)

### 6.  Overall Assessment

Given Plaintiff's "multifaceted and protracted litigation misconduct, this case easily qualifies as an 'exceptional case' when measured against Lanham Act and Patent Act precedents applying that standard."  *Focus Prod. Group Int'l, LLC v. Kartri Sales Co.*, No. 15-Civ- 10154, 2023 WL 3815276, at *7 (S.D.N.Y. June 5, 2023).  "Cases found 'exceptional' based on the unreasonable manner in which the losing party conducted itself in litigation have relied on comparable, and indeed less glaring, records of vexatiousness."  *Id.* (collecting cases).  In *Focus*, for example, the case was found to be exceptional in part because the defendants flagrantly breached their discovery obligations, including by failing to provide sales, revenues, costs, and profits information.  *Id.* at *5.  Similarly, in *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-

13

2027, 2014 WL 2989975 (S.D.N.Y. June 30, 2014), the case was found to be exceptional because "defendants have engaged in unreasonable litigation tactics that have wasted the Court's time and have required plaintiffs to expend significant resources." *Id.* at *4. The court in *Cognex* held that the party engaging in unreasonable litigation tactics "should be required to cover at least the portion of [Defendants'] attorneys' fees related to litigation tactics taken by [Plaintiff] that have contributed unnecessarily to [Defendants'] expenses . . .." *Id.*

IV.   **CONCLUSION**

In view of the foregoing, this Court should declare that this case is exceptional under 15 U.S.C. § 1117(a), and that, pursuant to 15 U.S.C. § 1117(a), 28 U.S.C. § 1927, Federal Rule of Civil Procedure 54(d)(2), Defendants are entitled to recover from Plaintiff and its counsel the attorney's fees and costs Defendants have reasonably incurred in connection with this litigation, in an amount to be assessed based on a follow-up submission by Defendants as to the amount of attorney's fees and costs they have incurred in connection with this litigation.

Dated: October 13, 2023

TARTER KRINSKY & DROGIN LLP
*Attorneys for Hybrid and the Retailers*

By: _____
      Joel H. Rosner
      Mark J. Rosenberg
      1350 Broadway, 11th Floor
      New York, New York 10018
      Tel (212) 216-8000
      Fax (212) 216-8001
      mrosenberg@tarterkrinsky.com
      jrosner@tarterkrinsky.com